No. 24-2626

# United States Court of Appeals
# for the Ninth Circuit

GOPHER MEDIA, LLC, et al.,
*Plaintiffs, Counter-Defendants, and Appellants*,

*v.*

ANDREW MELONE, et al.,
*Defendants, Counter-Claimants, and Appellees*,

On Appeal from the U.S. District Court
for the Southern District of California
No. 3:21-cv-01909-RBM (VET)
Judge Ruth Bermudez Montenegro

## APPELLANTS' SUPPLEMENTAL BRIEF
## OPPOSING HEARING EN BANC

**MUNCK WILSON MANDALA LLP**
ANTON "TONY" HANDAL
(SBN 113812)
thandal@munckwilson.com
MARINA BOGORAD (SBN 217524)
mbogorad@munckwilson.com
1925 Century Park East, St. 2300
Los Angeles, California 90067
(310) 855-3311
(972) 628-3616 fax

**MUNCK WILSON MANDALA LLP**
CHASE A. COBERN
(SBN 24101633)
ccobern@munckwilson.com
12770 Coit Road, St. 600
Dallas, Texas 75251
(972) 628-3600
(972) 628-3616 fax

*Counsel for Appellants*

December 10, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................i

TABLE OF AUTHORITIES ..........................................................ii

INTRODUCTION.......................................................................1

BACKGROUND .......................................................................1

    A.  California law protects public expression from lawfare. ...................1

    B.  Circuit law protects substantive state anti-SLAPP rights..................2

REASONS FOR DENYING HEARING EN BANC .......................................3

I.  Circuit Precedent Correctly Holds That Federal Courts Must Apply Substantive Anti-SLAPP Rights To California Claims..................3

    A.  This Court correctly classifies anti-SLAPP rights as substantive. ......3

    B.  There is no valid reason to disregard substantive anti-SLAPP rights.  6

        1.  The Federal Rules do not unavoidably conflict with state law.......6

        2.  The Federal Rules cannot preempt substantive state rights. .........9

        3.  The Constitution preserves state sovereignty over state claims..10

II.  Circuit Precedent Correctly Holds That Orders Denying Substantive Anti-SLAPP Rights Are Immediately Appealable Under *Cohen*. ...........11

    A.  Anti-SLAPP rights are "important" enough for direct appeal. .........11

    B.  Anti-SLAPP rights are "independent" enough for direct appeal.......14

CERTIFICATE OF COMPLIANCE...............................................17

CERTIFICATE OF SERVICE ....................................................18

i

# TABLE OF AUTHORITIES

**Cases:**

*Abbas v. Foreign Pol'y Grp.*,
783 F.3d 1328 (D.C. Cir. 2015) ........................................................ 7, 10

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013) .................................................................. 4

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975) ............................................................................... 4

*Ashcroft v. Iqbal*,
556 US. 662 (2009) .............................................................................. 15

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ..................................................... 2, 3, 12, 13

*Burlington Northern R. Co. Co. v. Woods*,
480 U.S. 1 (1987) .................................................................................. 7

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*,
498 U.S. 533 (1991) .............................................................................. 8

*Carbone v. CNN, Inc.*,
910 F.3d 1345 (11th Cir. 2018) ............................................................... 7

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ................................................................................ 4

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) ...................................... 1, 4, 5, 10, 11, 12, 13, 14, 15

*CoreCivic, Inc. v. Candide Grp., LLC*,
46 F.4th 1136 (9th Cir. 2022) ......................................................... 2, 3, 8, 9

*DC Comics v. Pac. Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013) ......................................................... 2, 3, 12, 13, 14

**Cases—continued:**

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1994) .............................................................. 11, 12, 13, 15

*Doe v. Gangland Prods.*,
    730 F.3d 946 (9th Cir. 2013) ................................................. 14

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965) ............................................................ 12

*Gasperini v. Ctr. for Humanities, Inc.*,
    518 U.S. 415 (1996) ................................................ 3, 4, 5, 6, 7, 8, 9, 10

*Hanna v. Plumer*,
    380 U.S. 460 (1965) .............................................................. 3, 4, 5, 6, 9

*Henry v. Lake Charles Am. Press, L.L.C.*,
    566 F.3d 164 (5th Cir. 2009) ................................................. 11

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ................................................. 2, 3

*Jarrow Formulas, Inc. v. LaMarche*,
    74 P.3d 737 (Cal. 2003) ........................................................ 13

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) ................................................. 7

*La Liberte v. Reid*,
    966 F.3d 79 (2d Cir. 2020) ..................................................... 7

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
    885 F.3d 659 (10th Cir. 2018) ............................................... 6

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ................................................. 3, 6, 7, 9

*Makaeff v. Trump Univ., LLC*,
    736 F.3d 1180 (9th Cir. 2013) ............................................... 3, 6, 8

**Cases—continued:**

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) .................................................................. 2

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ....................................................... 13, 15

*MRO Commc'ns, Inc. v. AT&T Co.*,
    197 F.3d 1276 (9th Cir. 1999) .............................................. 4

*Murphy v. NCAA*,
    584 U.S. 453 (2018) ............................................................ 10

*Nat'l Socialist Pty. of Am. v. Vill. of Skokie*,
    432 U.S. 43 (1977) ............................................................. 12

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999).......................................... 1, 2, 3, 5, 6, 7, 8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ............................................................ 9

*Planned Parenthood v. Ctr. for Med. Prog.*,
    890 F.3d 828 (9th Cir. 2018)................................................ 3

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014) ....................................................... 13, 15

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ........................................................... 14

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ......................................................... 9, 10

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
    559 U.S. 393 (2010) ........................................................... 7, 8

*Sibbach v. Wilson & Co.*,
    312 U.S. 1 (1941) ............................................................. 9, 10

**Cases—continued:**

*Soukup v. L. Offs. of Herbert Hafif*,
 139 P.3d 30 (Cal. 2006) .................................................................. 15

*Stewart Org., Inc. v. Ricoh Corp.*,
 487 U.S. 22 (1988) ............................................................................ 7

*Stokes v. Reeves*,
 245 F.2d 700 (9th Cir. 1957) ........................................................... 4

*Travelers Cas. Ins. Co. of Am. v. Hirsh*,
 831 F.3d 1179 (9th Cir. 2016) .......................................................... 3

*United States v. P.H.E.*,
 965 F.2d 848 (10th Cir. 1992) .................................................. 12, 13

*Varian Med. Sys., Inc. v. Delfino*,
 106 P.3d 958 (Cal. 2005) ........................................................... 2, 13

*Whitney v. California*,
 274 U.S. 357 (1927) .......................................................................... 1

*Will v. Hallock*,
 546 U.S. 345 (2006) ............................................................. 11, 12, 13

*Wilson v. CNN*,
 444 P.3d 706 (Cal. 2019) ................................................................ 14

*X Corp. v. Media Matters for Am.*,
 120 F.4th 190 (5th Cir. 2024) ........................................................ 12

*Youngevity Int'l Corp. v. Andreoli*,
 No. 18-55031, Dkt. 50 (9th Cir. 2019) ............................................ 3

**Statutes and Rules:**

28 U.S.C. §1291 ................................................................................ 11

28 U.S.C. §1652 .................................................................................. 9

28 U.S.C. §2072(b) ............................................................................. 9

CAL. CIV. PROC. CODE §425.16 ................................................. 1, 2, 6, 8, 12

CAL. CIV. PROC. CODE §430.1 ..................................................................8

CAL. CIV. PROC. CODE §437C ..................................................................8

FED. R. CIV. P. 8 ..........................................................................6, 8

FED. R. CIV. P. 11 ...........................................................................8

FED. R. CIV. P. 12 ....................................................................3, 7, 8, 9

FED. R. CIV. P. 56 ....................................................................3, 7, 8, 9

Judiciary Act of 1789, ch. 20, §34, 1 Stat. 73, 92 ........................................9

**Other Authorities:**

19 CHARLES A. WRIGHT & ARTHUR R. MILLER,
    FEDERAL PRACTICE AND PROCEDURE (3d ed. 2024)[1]

    §4503 ...................................................................................6

    §4520 ...................................................................................3

Austin Vining & Sarah Matthews,
    *Overview of Anti-SLAPP Laws*, Reporters Comm. For
    Freedom of the Press (2024), https://perma.cc/3D2E-F7CT ...............2

George W. Pring,
    *SLAPPs: Strategic Lawsuits Against Public Participation*,
    7 PACE EVT'L L. REV. 3, 3 (1989) ........................................1

James Madison
    THE FEDERALIST NO. 39 ..................................................10

---

[1] Cited herein as "WRIGHT & MILLER §[#]".

**Note**

Unless otherwise indicated, all quoted emphasis is added,
and all quoted internal alterations and quotations, footnotes,
and citations are omitted.

All statutory references are to the California Code of
Civil Procedure, unless otherwise indicated.

## INTRODUCTION

"A [S]tate may set the terms on which it will permit litigations in its courts"—including "federal courts in that State." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 552, 555 (1949) (Jackson, J.). California was the first state to set its own terms on litigation hindering public expression. For 25 years, the Ninth Circuit has carefully preserved the substantive thrust of such state-conferred "anti-SLAPP" rights in federal forums. While some circuits disagree and broadly construe the Federal Rules to preempt similar state laws, this Circuit correctly follows controlling Supreme Court precedent and federal statutory and constitutional law. En banc hearing should be denied.

## BACKGROUND

### A. California law protects public expression from lawfare.

Those who "amended the Constitution so that free speech and assembly should be guaranteed" "[b]elieve[d] in the power of reason as applied through public discussion" and "eschewed silence coerced by law." *Whitney v. California*, 274 U.S. 357, 375-76 (1927) (Brandeis, J., concurring). "SLAPP" suits halt public discussion by "su[ing] [speakers] into silence." George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 PACE EVT'L L. REV. 3, 3 (1989). The "clear message" of SLAPP suits is "there is a 'price' for speaking out"—namely: "a multimillion-dollar lawsuit and the expenses, lost resources, and emotional stress such litigation brings." *Id.* at 6.

California took notice of the "disturbing increase in lawsuits brought primarily to chill the valid exercise of constitutional rights" through "abuse of the judicial process." §425.16(a). Because "traditional safeguards against

1

meritless actions" were "inadequate," California created statutory "anti-SLAPP" rights. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999).[2] To "deter" and "prevent SLAPPs by ending them early and without great cost to the SLAPP target," *Varian Med. Sys., Inc. v. Delfino*, 106 P.3d 958, 966 (Cal. 2005), California conferred two rights relevant here: **(1)** a "special motion to strike" for state claims "arising from any act … in furtherance of the [defendant's] right of petition or free speech … in connection with a public issue," §425.16(b)(1), and **(2)** mandatory fee-shifting to a prevailing movant. §425.16(c). "The point" was to grant "'a right *not* to be dragged through the courts because you exercised your constitutional rights.'" *Varian*, 106 P.3d at 967 (emphasis in original). To ensure this right would not be rendered "'useless'" by deferring its vindication until after trial, *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) (quoting legislative history), orders denying it were made "appealable." §425.16(i).

### B. Circuit law protects substantive state anti-SLAPP rights.

This Court has long held that *substantive* anti-SLAPP rights are both applicable and appealable in federal courts.[3] Their application is (1) mandated by

---

[2] At least 32 states thereafter enacted their own anti-SLAPP laws. Austin Vining & Sarah Matthews, *Overview of Anti-SLAPP Laws*, Reporters Comm. For Freedom of the Press (2024), https://perma.cc/3D2E-F7CT.

[3] *Newsham*, 190 F.3d at 972-73 (1999) (§425.16(b)(1) and (c) are substantive and apply in federal court); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (discovery limitations of §425.16(f) and (g) are procedural and inapplicable); *Batzel*, 333 F.3d at 1025-26 (2003) (orders denying anti-SLAPP motions are appealable); *Hilton v. Hallmark Cards*, 599 F.3d 894, 901

*Erie*'s twin aims: "'discouragement of forum-shopping and avoidance of inequitable administration of the law'"; and (2) compatible with federal procedure. *Newsham*, 190 F.3d at 972-73. "[A]bsent a right of interlocutory appeal," moreover, these "rights would be imperiled." *DC Comics*, 706 F.3d at 1016. The Court has firmly retained those rights despite calls to remove them.[4]

## REASONS FOR DENYING HEARING EN BANC

### I. Circuit Precedent Correctly Holds That Federal Courts Must Apply Substantive Anti-SLAPP Rights To California Claims.

#### A. This Court correctly classifies anti-SLAPP rights as substantive.

"Under the *Erie* doctrine, federal courts sitting in diversity[5] apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (this "broad command of *Erie* [is] … identical to that of the [Rules] Enabling Act"). In classifying a law as "substantive" or "procedural," "'the question is not whether [the law] is deemed a matter of "procedure" in some sense'"; nor

(9th Cir. 2010) (anti-SLAPP inapplicable to federal claims); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1012-16 (9th Cir. 2013) (reaffirming *Batzel*); *Planned Parenthood v. Ctr. for Med. Prog.*, 890 F.3d 828, 833 (9th Cir. 2018) (anti-SLAPP not in conflict with FRCP 12 and 56); *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1138-43 (9th Cir. 2022) (reaffirming *Newsham*).

[4] *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1183-86 (9th Cir. 2016); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 272-76 (9th Cir. 2013); *Makaeff*, 736 F.3d 1180 (9th Cir. 2013) ("*Makaeff II*") (denying en banc rehearing); *see also CoreCivic*, No. 20-17285, Dkt. 79 (9th Cir. 2022) (same); *Youngevity Int'l Corp. v. Andreoli*, No. 18-55031, Dkt. 50 (9th Cir. 2019) (same); *Planned Parenthood*, No. 16-16997, Dkt. 74 (9th Cir. 2018) (same).

[5] As relevant here, "[t]he *Erie* case and the Supreme Court decisions following it apply in federal question cases as well." Wright & Miller §4520.

is it "solved by reference to any traditional or common-sense substance-procedural distinction." *Hanna*, 380 U.S. at 465-66. Rather, the question is "guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Gasperini*, 518 U.S. at 427-28. It turns on "whether [the law] is outcome affective in this sense: Would application of the [law] have so important an effect upon the fortunes of one or both of the litigants that failure to apply it would unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court?" *Id.* at 428 (cleaned up). Even if the law "contains a procedural instruction," it cannot be disregarded in federal forums if "the State's objective is manifestly substantive." *Id.* at 429.

Supreme Court precedent affirms that state laws "permit[ting] a prevailing party in certain classes of litigation to recover fees" "embody a substantive policy" that must be "treated … as part of a statutory liability which create[s] a substantive right." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991).[6] As relevant here, *Erie* has been held to require federal courts to enforce "rights conferred by [a state] statute" against "strike suits"—an "abus[ive]" "type of

---

[6] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) ("'It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts.'"). More than a half-century of Ninth Circuit precedent outside the anti-SLAPP context considers the same question "easily answered." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013); *MRO Commc'ns, Inc. v. AT&T Co.*, 197 F.3d 1276, 1282-83 (9th Cir. 1999); *Stokes v. Reeves*, 245 F.2d 700, 702 (9th Cir. 1957). Reconsideration of the issues presented would necessarily require reconsideration of these precedents.

litigation" of state claims "brought not to redress real wrongs, but to realize upon their nuisance value." *Cohen*, 337 U.S. at 546, 548-50. "[T]he state has plenary power over this type of litigation," including "the power … to close its courts to [it]." *Id.* at 550-52. That "a procedure [was] prescribed" to effectuate the state's policy did "not determine that it [was] not applicable" in federal court. *Id.* at 555-56. By "creat[ing] a new liability where none existed before,"[7] the state-created "condition" on state-created claims could not be "disregarded by the federal court as a mere procedural device." *Id.* at 555-56. Nor did it "conflict" with Federal Rules that otherwise "deal[t] with plaintiff's right to maintain such an action in federal court." *Id.* at 556.

This controlling precedent confirms that California's special-motion and fee-shifting provisions are "manifestly substantive." *Newsham*, 190 F.3d at 972-73. Like *Cohen*'s anti-"strike suit" law, California's anti-SLAPP law "creat[es] a new liability where none existed before"—mandatory fees for state claims targeting speech—and only prescribes "a procedure … by which th[at] liability is insured." 337 at 555-56. It does not purport to enact *procedure*, but to deter the abuse thereof. While the substance-procedure distinction "is sometimes a challenging endeavor," *Gasperini*, 518 U.S. at 427, it is not here: Even critics of this Circuit's enforcement of anti-SLAPP rights do not dispute that it "discourage[s] [] forum-shopping and avoid[s] [] inequitable

---

[7] The New Jersey law in *Cohen* "ma[d]e the plaintiff, if unsuccessful" in bringing a certain class of state-created claims, "liable for all expenses, including attorney's fees, of the defense" and "require[d] security for their payment as a condition of prosecuting the action." 337 U.S. at 543.

administration of the laws." *Hanna*, 380 U.S. at 468.[8] Nor does anyone contend that the special-motion and fee-shifting rights are mere "housekeeping rules" or "nonsubstantial, or trivial variations" that would not "influence the choice of a forum" if denied in federal court. *Id.* at 468. They obviously would. The Court's concern of being "inundated" with anti-SLAPP appeals is understandable (Oct. 24, 2024, Oral Arg. at 32:00-10); but the alternative is inundation with "a rising tide of frivolous state actions that would be filed in [this] [C]ircuit's federal courts" to avoid the law. *Makaeff II*, 736 F.3d at 1187 (Wardlaw, J., concurring). That would "introduc[e] grave discrimination by noncitizens against citizens" and "render[] impossible equal protection of the law." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 74-75 (1938).[9]

**B. There is no valid reason to disregard substantive anti-SLAPP rights.**

**1. The Federal Rules do not unavoidably conflict with state law.**

The main objection is the same one this Court rejected in *Newsham*: that §§425.16(b) and (c) "necessarily collide[] with Rules 8, 12, and 56." 190 F.3d

---

[8] Some argue that these provisions are "procedural" not because they fail either of *Erie*'s twin aims, but rather because they "deal[] only with the conduct of the lawsuit" and "merely provide[] a procedural mechanism for vindicating existing rights." *Makaeff*, 715 F.3d at 273 (Kozinski, J.); *accord Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 668-73 (10th Cir. 2018) (similar). This wrongly assumes a "traditional or common-sense substance-procedure distinction" that the Supreme Court has long rejected in favor of an "'outcome-determination' test" guided by "the twin aims of the *Erie* rule." *Hanna*, 380 U.S. at 465-68; *accord Gasperini*, 518 U.S. at 428.

[9] Noncitizens would remove to federal court to avoid the law, but citizens could not remove to state court to enforce it, creating a "veto-proof choice of forum [and] a veto-proof choice of applicable law." WRIGHT & MILLER §4503 n.8.

at 972.[10] But the asserted "collision" rests on an *unnecessarily* broad reading of those Rules.[11] The Supreme Court's test is "whether, when *fairly construed*, the scope of [the Rule] is sufficiently broad to cause a direct collision with the state law or, implicitly to control the issue before the court, thereby leaving ***no room*** for the operation of that law." *Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) (cleaned up). The Rules leave room for state law unless they "answer[] the question in dispute" such that "a collision is '*unavoidable*.'" *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 398, 406 n.8 (2010) (maj. op.). They must be "interpreted … with sensitivity to important state interests and regulatory policies"[12] and to "avoid 'substantial variations in outcomes between state and federal litigation.'"[13] In short, if "federal courts

---

[10] *See, e.g.*, *La Liberte v. Reid*, 966 F.3d 79, 86-88 (2d Cir. 2020); *Klocke v. Watson*, 936 F.3d 240, 244-49 (5th Cir. 2019); *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1349-57 (11th Cir. 2018); *Abbas v. Foreign Pol'y Grp.*, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015); *see also Makaeff*, 715 F.3d at 274-75.

[11] *See, e.g.*, *Carbone*, 910 F.3d at 1350-52 (broadly reading Rules 12 and 56 to "create an affirmative entitlement" to try state-created claims that leaves "no room for *any* other device for … pretrial dismissal"); *compare Godin v. Schencks*, 629 F.3d 79, 89 n.16 (1st Cir. 2010) (rejecting "abstracted framing of the breadth of the Federal Rules").

[12] *Gasperini*, 518 U.S. at 428 n.7; *accord Shady Grove*, 559 U.S. at 430 (Stevens, J., concurring) (agreeing with four justices "that courts should 'avoi[d] immoderate interpretations of the Federal Rules that would trench on state prerogatives,' and should in some instances 'interpre[t] the federal rules to avoid conflict with important state regulatory policies'").

[13] *Shady Grove*, 559 U.S. at 405 n.7 (maj. op.); *accord Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 37-38 (1988) (Scalia, J., dissenting) ("[A] broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits.").

*can* give effect to the substantive thrust of [state law] without untoward alteration of the federal scheme," they must. *Gasperini*, 518 U.S. at 426.

Decades of Circuit precedent confirms that "[§§425.16(b) and (c)] and Rules 8, 12, and 56 '*can* exist side by side … each controlling its own intended sphere of coverage without conflict.'" *Newsham*, 190 F.3d at 972. Unlike the unavoidable conflict in *Shady Grove*, for example, where the Federal Rules said class actions "*may* be maintained" and state law said they "may *not* be maintained," the Federal Rules have no similar "categorical permission" to maintain SLAPP suits. 559 U.S. at 398-99 (maj. opinion). Nor do they "establish[] the *exclusive* criteria" for pretrial dismissal. *Makaeff II*, 736 F.3d at 1188 (Watford, J., dissenting). Rules 12 and 56, if fairly construed by their plain meaning, only "provide *various* theories upon which a suit may be disposed of before trial," whereas the anti-SLAPP law "creat[es] a separate and additional theory" for "certain kinds of suits." *Id.* at 1182 (Wardlaw, J., concurring).[14] If Rules 12 and 56 can coexist as separate grounds for dismissal, so can the anti-SLAPP grounds. Indeed, California enacted them to supplement its own analogs to Rules 12 and 56.[15] At any rate, this Circuit preserves "the substantive thrust of [§§425.16(b) and (c)] without untoward alteration of [Rules 8, 12,

---

[14] There is likewise no conflict with Rule 11 sanctions, which, unlike §425.16(c) fee-shifting, is "not mandated" and "not tied to the outcome of [the] litigation" *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 553 (1991).

[15] §430.10(e) (allowing challenge to pleading that "does not state facts sufficient to constitute a cause of action"); *id.* §437c(c) (requiring "summary judgment" if there is "no triable issue as to any material fact").

and 56]," *Gasperini*, 518 U.S. at 426, by analyzing anti-SLAPP challenges to "legal sufficiency … under the same standard as Rule 12(b)(6)" and challenges to "factual sufficiency under the same standard as Rule 56." *CoreCivic*, 46 F.4th at 1143.[16] As no unavoidable conflict exists, *Erie* controls.

### 2. The Federal Rules cannot preempt substantive state rights.

Reading the Federal Rules to override substantive anti-SLAPP rights would exceed their congressional mandate. "Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law[.]"[17] To the contrary, it mandated in the statute creating federal courts that "the laws of the several states … shall be regarded as rules of decision," Judiciary Act of 1789, ch. 20, §34, 1 Stat. 73, 92 (now 28 U.S.C. §1652); and it mandated in the statute creating the Federal Rules that "[s]uch rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. §2072(b). The Supreme Court has thus adopted " 'limiting construction[s]' of Federal Rule[s] … in order to 'minimize potential conflict with the Rules Enabling Act.'" *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503-04 (2001) (Scalia,

---

[16] Criticisms of this "hybrid" approach, *Makaeff*, 715 F.3d at 274 (Kozinski, J.), overlook the hybrid duty of federal courts to "apply state substantive law and federal procedural law." *Hanna*, 380 U.S. at 465; *see, e.g.*, *Gasperini*, 518 U.S. at 436-38 & n.22 (finding state's "dominant interest can be protected, without disrupting the federal system" by assigning initial review of damages to federal district courts, instead of appellate courts as state law required).

[17] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *accord Sibbach v. Wilson & Co.*, 312 U.S. 1, 9-10 (1941) ("Congress … has never essayed to declare the substantive state law, or to abolish or nullify a right recognized by the substantive law of the state where the cause of action arose").

J.). Because California has created a substantive right against SLAPP suits, *supra* §I.A., "the federal court's extinguishment of that right … would seem to violate this limitation." *Id.* at 503-04; *accord Godin*, 629 F.3d at 90.

### 3.   The Constitution preserves state sovereignty over state claims.

Preempting state anti-SLAPP rights would also violate the Constitution.[18] "The Constitution … did not abolish the sovereign powers of the States, which retained 'a residuary and inviolable sovereignty.'" *Murphy v. NCAA*, 584 U.S. 453, 470 (2018) (quoting THE FEDERALIST NO. 39 (James Madison)). It "confers on Congress not plenary legislative power but only certain enumerated powers" and "all other legislative power is reserved for the States, as the Tenth Amendment confirms." *Id.* at 471. Notably absent from Congress's enumerated powers is the authority to "set the terms on which [states] will permit litigations in [their] courts." *Cohen*, 337 U.S. at 552; *Erie*, 304 U.S. at 78 ("Congress has no power to declare substantive rules … applicable in a state[.]"). Since this power is thus "reserved for the States," *Murphy*, 584 U.S. at 471, "when [state] law that creates the cause of action qualifies it, 'federal court[s] must follow suit.'"[19] California's authority to deter and prevent the

---

[18] Circuits that disregard state anti-SLAPP laws have not expressly considered the constitutional implications of doing so. *See, e.g., Abbas*, 783 F.3d at 1336 n.4 (noting federal rule "would not govern if [it] was unconstitutional in some respect" but there was "no suggestion of unconstitutionality in this case").

[19] *Gasperini*, 518 U.S. at 428; *cf. Cohen*, 337 U.S. at 550-51 ("[T]he states should not be restrained from devising experiments … to preserve the maximum good [they] sought in creating [an] action and at the same time to eliminate as much as possible its defects and evils"; they "ha[ve] plenary power over this type of litigation").

abuse of California claims in all courts within its borders must be upheld.

## II. Circuit Precedent Correctly Holds That Orders Denying Substantive Anti-SLAPP Rights Are Immediately Appealable Under *Cohen*.

Anti-SLAPP applicability and appealability are inseparable. "[T]he rights conferred by the statute, if it is applicable, will have been lost, probably irreparably" if they are "denied review … until the whole case is adjudicated." *Cohen*, 337 U.S. at 546. The Supreme Court's "practical rather than [] technical construction" of 28 U.S.C. §1291 extends appellate jurisdiction to "claims of right" that are "too *important* to be denied review and too *independent* of the cause itself to require that appellate consideration be deferred." *Id.* As outlined below, the importance and independence[20] of anti-SLAPP rights make their denial a "final disposition of a claimed right" subject to immediate appeal. *Id.*

### A. Anti-SLAPP rights are "important" enough for direct appeal.

"[A]ppealability under *Cohen* … boils down to 'a judgment about the value of the interests that would be lost'" without it. *Will*, 546 U.S. at 351-52; *Digital Equip.*, 511 U.S. at 879 ("The substance of the rights entailed … is

---

[20] Some precedents "distill[] down" *Cohen* to cover orders that (1) are "conclusive[]"; (2) "resolve an important issue completely separate from the merits"; and (3) are "effectively unreviewable" after final judgment. *Will v. Hallock*, 546 U.S. 345, 349 (2006). Critics of anti-SLAPP appealability only dispute the latter two requirements, *infra* n.4, which largely turn on the importance and independence of the claimed right. *See Will*, 546 U.S. at 351-53; *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878-79 (1994) (noting "importance" considered at "second" and "third" requirements); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 172 (5th Cir. 2009) ("Supreme Court decisions increasingly look to importance as a general and overarching consideration"). This brief limits its focus to those issues.

dispositive"). There must be a "particular value of a high order" that "support[s] [] the interest in avoiding trial"—"avoidance of a trial that would imperil a substantial public interest." *Will*, 546 U.S. at 352-53.

The whole purpose of California's anti-SLAPP law is to avoid trials imperiling substantial public interests. The law itself "declares that it is in the *public* interest" that their "rights of freedom of speech and petition" "should not be chilled through abuse of the litigation process"—that is, *trials*. §425.16(a). It thus creates "a special motion" to avoid trials "arising from" acts "in furtherance of the person's right of petition or free speech." §425.16(b)(1). Private acts do not qualify unless they are "in connection with a *public* issue." *Id.* The denial of the motion is "appealable," §425.16(i), because "'hav[ing] to incur the cost of a lawsuit before having [the] right to free speech vindicated'" makes a statutory right to avoid trial "'useless.'" *Batzel*, 333 F.3d at 1025.

Supreme Court precedent already holds that "rights protected by the First Amendment" are too important to be "deprive[d] … during the period of appellate review [] in the normal course."[21] It is indeed "difficult to find a value

---

[21] *Nat'l Socialist Pty. of Am. v. Vill. of Skokie*, 432 U.S. 43, 44 (1977); *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) ("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure."); *see also, e.g.*, *X Corp. v. Media Matters for Am.*, 120 F.4th 190, 196 (5th Cir. 2024) ("We have repeatedly found the collateral order doctrine applies in cases in which pretrial orders arguably infringe on First Amendment rights" because "[a]rguably the greatest consideration in determining appealability is the 'importance' of the issue at stake, and that, in the collateral order context as in others, the 'loss of First Amendment freedoms, for even minimal periods of time,

of a 'high[er] order' than the … rights to free speech and petition that are at the heart of California's anti-SLAPP statute." *DC Comics*, 706 F.3d at 1015-16. If denied without immediate review, such "rights conferred by the [anti-SLAPP] statute" are "lost … irreparably," *Cohen*, 337 U.S. at 546, as no comparable federal right exists to "protect speakers from the trial itself rather than merely from liability." *Batzel*, 333 F.3d at 1025. "[T]he only way to alleviate these consequences … [is] by collateral order appeal." *Will*, 546 U.S. at 352.

Rightly, then, has this Court equated anti-SLAPP rights with forms of "immunity from suit" long held appealable. *Plumhoff v. Rickard*, 572 U.S. 765, 771-72 (2014). Like anti-SLAPP rights, the "entitlement not to stand trial or face the other burdens of litigation" underlying immunity from suit "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The value of *statutory* rights to avoid trial, moreover, is up to legislatures, not courts: "[w]hen a policy is embodied in a … statutory provision entitling a party to immunity from suit, … there is little room for the judiciary to gainsay its 'importance.'" *Digital Equip.*, 511 U.S. at 879.[22]

---

unquestionably constitutes irreparable injury.'"); *United States v. P.H.E.*, 965 F.2d 848, 854-57 (10th Cir. 1992) ("evidence of an extensive government campaign … designed to use the burden of repeated criminal prosecutions to chill the exercise of First Amendment rights" warranted direct review of denied "First Amendment 'right not to be tried'").

[22] Thus, what California courts say about anti-SLAPP "immunity" in contexts unrelated to appealability is beside the point. *Jarrow Formulas, Inc. v. La-Marche*, 74 P.3d 737, 743-44 (Cal. 2003). To be sure, in addressing appealability, California courts characterize the anti-SLAPP right as quintessential immunity from suit: "a right not to be dragged through the courts" and "against the harassment and burdens of litigation." *Varian*, 106 P.3d at 967.

Just as *Cohen* itself deferred to New Jersey's value judgment of "the rights conferred by [its] statute" against "strike suits," 337 U.S. at 546, so this Circuit has "ma[d]e particular efforts to accommodate the substantive aims" of California's "determination, through its enactment of the anti-SLAPP statute, that [public speech and petition] rights would be imperiled absent a right of interlocutory appeal." *DC Comics*, 706 F.3d at 1016.[23]

## B. Anti-SLAPP rights are "independent" enough for direct appeal.

Critics of anti-SLAPP appealability argue it fails *Cohen*'s "completely separate from the merits" condition. But this overlooks the threshold condition for anti-SLAPP rights: whether "the lawsuit arises from defendant's act in furtherance of its right of petition or free speech." *Doe v. Gangland Prods.*, 730 F.3d 946, 953 (9th Cir. 2013). That is not a merits question; "the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected, *not whether it has shown its acts are ultimately lawful.*" *Wilson v. CNN*, 444 P.3d 706, 715 (Cal. 2019). In fact, orders denying anti-SLAPP rights on this basis—like the order here—do not address the merits *at all.* Any conditional review of the underlying claims

---

[23] Relatedly, because federal courts cannot meaningfully apply California's anti-SLAPP law under *Erie* without immediate appeals, the importance of the rights is heightened by the state-sovereignty and federalism principles at stake. *Supra* §§II.A & II.B.3; *cf. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("ultimate justification" for allowing immediate appeal was "the importance of ensuring that the States' dignitary interests can be fully vindicated" and related need to "accord[] the States the respect owed to them as members of the federation").

14

is thus "inextricably intertwined with" and "directly implicated by" the initial, merits-independent issue of protected activity. *Ashcroft v. Iqbal*, 556 US. 662, 672-73 (2009) (qualified immunity similarly implicates "sufficiency of [the] pleadings" and "whether the facts pleaded establish [] a violation").

Even the law's conditional screening of state claims remains "conceptually distinct" from true merits determination, *Mitchell*, 472 U.S. at 527-29, as it "does not weigh the credibility or comparative probative strength of competing evidence" and "accept[s] as true the evidence favorable to the plaintiff." *Soukup v. L. Offs. of Herbert Hafif*, 139 P.3d 30, 51 (Cal. 2006). And because it always deals with public speech or petitioning activity, the dispositive issue is often whether that activity, provable or not, is *actionable* under the First Amendment—a purely "legal issue[]" that is "quite different from any purely factual issues that the trial court might confront if the case were tried" but instead "a core responsibility of appellate courts." *Plumhoff*, 572 U.S. at 773.[24] That the screening step may sometimes "entail consideration of the factual allegations" does not make it unreviewable, *id.*, as it is the "the rights entailed" that are ultimately "dispositive." *Digital Equip.*, 511 U.S. at 879. Orders denying Anti-SLAPP rights readily satisfy *Cohen*'s "practical rather than [] technical" standard for appellate jurisdiction. 337 U.S. at 546.

---

[24] This common step-two issue is no different from appealable "claim[s] of immunity under the Speech and Debate Clause, [where] a court must analyze the plaintiff's complaint to determine whether the plaintiff seeks to hold a Congressman liable for protected legislative actions or for other, unprotected conduct." *Mitchell*, 472 U.S. at 528.

15

December 10, 2024

Respectfully submitted,

/s/ *Chase A. Cobern*

**MUNCK WILSON MANDALA LLP**
ANTON "TONY" HANDAL (SBN 113812)
thandal@munckwilson.com
MARINA BOGORAD (SBN 217524)
mbogorad@munckwilson.com
1925 Century Park East, St. 2300
Los Angeles, California 90067
(310) 855-3311
(972) 628-3616 fax

**MUNCK WILSON MANDALA LLP**
CHASE A. COBERN (SBN 24101633)
ccobern@munckwilson.com
12770 Coit Road, St. 600
Dallas, Texas 75251
(972) 628-3600
(972) 628-3616 fax

*Counsel for Appellants*

16

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the page limitations of this Court's November 5, 2024 Order (Dkt. 49.1) because it contains 15 pages, excluding the parts of the brief as exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Microsoft word using 14-point Century Supra, a proportionally spaced typeface.

Dated: December 10, 2024

_/s/ Marina Bogorad_

17

**CERTIFICATE OF SERVICE**

**[Case No. 24-2626]**

I certify that on December 10, 2024, I electronically filed the foregoing APPELLANTS' SUPPLEMENTAL BRIEF OPPOSING HEARING EN BANC with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system.

I certify that each party in the case is represented by counsel who are registered ACMS users and will be served by the ACMS system.

Dated: December 10, 2024

/s/ *Marina Bogorad*