No. 24-2626

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Gopher Media LLC and Ajay Thakore,

*Plaintiffs-Appellants*,

v.

Andrew Melone and American Pizza Manufacturing,

*Defendants-Appellees*.

On Appeal from the United States District Court for the
Southern District of California, No. 3:21-cv-01909
(Hon. Ruth Bermudez Montenegro)

## BRIEF OF PROPOSED *AMICI CURIAE* THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 25 MEDIA ORGANIZATIONS IN SUPPORT OF NEITHER PARTY

---

Grayson Clary
  *Counsel for Amici Curiae*
Bruce D. Brown*
Lisa Zycherman*
Mara Gassmann*
Abigail Sintim*
  *Of counsel*
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
GClary@rcfp.org

Theodore J. Boutrous, Jr.
Katie Townsend
Michael H. Dore
Zachary C. Freund
  *Counsel for Reporters
  Committee for Freedom of
  the Press*
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
TBoutrous@GibsonDunn.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), the Reporters Committee for Freedom of the Press states that it is an unincorporated association of reporters and editors with no parent corporation and no stock.

The Atlantic Monthly Group LLC is a privately-held media company, owned by Emerson Collective and Atlantic Media, Inc. No publicly held corporation owns 10% or more of its stock.

CalMatters is a nonprofit California public benefit corporation recognized under Section 501(c)(3) of the Internal Revenue Code. No entity or person has an ownership interest of 10 percent or more of CalMatters.

The Center for Investigative Reporting is a California non-profit public benefit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

Courthouse News Service is a privately held corporation with no parent corporation and no publicly held corporation holds more than 10 percent of its stock.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than 10% of its stock.

Gannett Co., Inc. is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. BlackRock, Inc. and the Vanguard Group, Inc. each own ten percent or more of the stock of Gannett Co., Inc.

Hearst Corporation is privately held and no publicly held corporation owns 10% or more of Hearst Corporation.

The Media Institute is a 501(c)(3) non-stock corporation with no parent corporation.

The Media Law Resource Center has no parent corporation and issues no stock.

The National Freedom of Information Coalition is a nonprofit organization that has not issued any shares or debt securities to the public, and has no parent companies, subsidiaries, or affiliates that have issued any shares or debt securities to the public.

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company. It issues no stock and does not own any of the parties' or amici's stock.

National Public Radio, Inc. is a privately supported, not-for-profit membership organization that has no parent company and issues no stock.

The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns 10% or more of its stock.

News/Media Alliance is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

Online News Association is a not-for-profit organization. It has no parent corporation, and no publicly traded corporation owns 10% or more of its stock.

PEN American Center, Inc. ("PEN America") is a non-profit association of writers that includes novelists, journalists, editors, poets, essayists, playwrights, publishers, translators, agents, and other professionals. It has no parent or affiliate corporation.

No publicly held corporations own any stock in the Philadelphia Inquirer, PBC, or its parent company, the non-profit Lenfest Institute for Journalism, LLC.

Pro Publica, Inc. ("ProPublica") is a Delaware nonprofit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

The Seattle Times Company: The McClatchy Company, LLC owns 49.5% of the voting common stock and 70.6% of the nonvoting common stock of The Seattle Times Company.

The Society of Environmental Journalists is a 501(c)(3) non-profit educational organization. It has no parent corporation and issues no stock.

Society of Professional Journalists is a non-stock corporation with no parent company.

Student Press Law Center is a 501(c)(3) not-for-profit corporation that has no parent and issues no stock.

TEGNA Inc. has no parent company, and no publicly-held company has a 10% or greater ownership interest in TEGNA, Inc.

Vox Media, LLC has no parent corporation. NBCUniversal Media, LLC, a publicly held corporation, owns at least 10% of Vox's stock.

WP Company LLC d/b/a The Washington Post is a wholly-owned subsidiary of Nash Holdings LLC, a holding company owned

by Jeffrey P. Bezos.  WP Company LLC and Nash Holdings LLC are both privately held companies with no securities in the hands of the public.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ................................... i

TABLE OF AUTHORITIES .......................................... viiii

IDENTITY AND INTEREST OF *AMICI CURIAE* AND
SOURCE OF THEIR AUTHORITY TO FILE THIS BRIEF..............1

INTRODUCTION ............................................................3

ARGUMENT .................................................................7

I.    California's anti-SLAPP law protects against
meritless, retaliatory litigation that chills
newsgathering and threatens press freedom. .........................7

    A.    Defamation plaintiffs have long used SLAPPs to
try to intimidate journalists and silence critical
reporting. ....................................................................7

    B.    California's anti-SLAPP law, and its fee-
shifting framework in particular, is a vital
substantive protection against SLAPPs......................13

II.    This Court has repeatedly and correctly held that the
substantive provisions of California's anti-SLAPP law
apply in federal court...........................................................15

    A.    The California anti-SLAPP statute's fee-shifting
provision embodies a substantive policy
judgment of the California Legislature ......................19

    B.    California's anti-SLAPP fee-shifting provision
does not conflict with any Federal Rule .....................22

    C.    Applying California's substantive anti-SLAPP
protections in federal court advances the twin
aims of *Erie* and upholds federalism principles. ........27

D.    Overruling this Court's prior precedents would create—not resolve—a circuit split. ...........................29

CONCLUSION ......................................................................................32

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abbas v. Foreign Policy Grp.*,
783 F.3d 1328 (D.C. Cir. 2015) ..................................................... 31

*Adelson v. Harris*,
774 F.3d 803 (2d Cir. 2014).......................................................... 30

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013) ..................................................... 6, 21

*Albright v. Christensen*,
24 F.4th 1039 (6th Cir. 2022) ....................................................... 24

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975)............................................................... 20, 21

*Barry v. State Bar of Cal.*,
2 Cal. 5th 318 (2017) ................................................................... 14

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ...................................................... 16

*Block v. Tanenhaus*,
867 F.3d 585 (5th Cir. 2017) ........................................................ 12

*Breazeale v. Victim Servs., Inc.*,
878 F.3d 759 (9th Cir. 2017) ........................................................ 16

*Brimelow v. N.Y. Times Co.*,
No. 21-66, 2021 WL 4901969 (2d Cir. Oct. 21, 2021),
*cert. denied*, 142 S. Ct. 1210 (2022)............................................. 12

*Bus. Guides, Inc. v. Chromatic Commc'ns. Enters., Inc.*,
498 U.S. 533 (1991)............................................................... 25, 26

*Carbone v. Cable News Network*,
910 F.3d 1345 (11th Cir. 2018) ................................................... 31

# TABLE OF AUTHORITIES
### (*continued*)

Page(s)

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .................................................................. 21, 25

*Cooter & Gell v. Hartmax Corp.*,
496 U.S. 384 (1990) ...................................................................... 25

*CoreCivic, Inc. v. Candide Grp., LLC*,
46 F.4th 1136 (9th Cir. 2022) ................................................ *passim*

*Counterman v. Colorado*,
600 U.S. 66 (2023) ..................................................................... 7, 9

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
479 F.3d 1099 (9th Cir. 2007) ...................................................... 26

*Davis v. Elec. Arts Inc.*,
775 F.3d 1172 (9th Cir. 2015) ....................................................... 16

*Day v. Cal. Lutheran Univ.*,
No. 22-55825, 2023 WL 4893650 (9th Cir. Aug. 1, 2023) ............ 5

*DC Comics v. Pac. Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013) ....................................................... 16

*Dowling v. Zimmerman*,
103 Cal. Rptr. 2d 174 (Cal. Ct. App. 2001) .................................. 13

*Drexler v. Billet*,
784 F. App'x 548 (9th Cir. 2019) ............................................. 16, 18

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) ...................................................................... 5, 6

*Fairfax v. CBS Corp.*,
2 F.4th 286 (4th Cir. 2021) ........................................................... 12

*Gasperini v. Ctr. for Humans., Inc.*,
518 U.S. 415 (1996) ............................................................... 15, 16

ix

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) ............................................................ 30

*Hanna v. Plumer*,
380 U.S. 460 (1965) ............................................................... *passim*

*Henry v. Lake Charles Am. Press, L.L.C.*,
566 F.3d 164 (5th Cir. 2009) ........................................................ 30

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) ........................................ 5, 12, 16, 18

*In re S. Cal. Sunbelt Devs., Inc.*,
608 F.3d 456 (9th Cir. 2010) ........................................................ 25

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ................................................................ 14

*Klocke v. Watson*,
936 F.3d 240 (5th Cir. 2019) ........................................................ 31

*Kona Enters., Inc. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000) ........................................................ 21

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012) ...................................................................... 19

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) ............................................................ 31

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
885 F.3d 659 (10th Cir. 2018) ...................................................... 24

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254 (9th Cir. 2013),
*reh'g denied*, 736 F.3d 1180 (9th Cir. 2013) ................................ 16

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Makaeff v. Trump Univ., LLC,*
736 F.3d 1180 (9th Cir. 2013) ................................................. 27, 29

*Mangold v. Cal. Pub. Utils. Comm'n,*
67 F.3d 1470 (9th Cir. 1995) ....................................................... 26

*Metabolife Int'l, Inc. v. Wornick,*
264 F.3d 832 (9th Cir. 2001) ....................................................... 16

*Mindys Cosmetics, Inc. v. Dakar,*
611 F.3d 590 (9th Cir. 2010) ....................................................... 16

*N.Y. Times Co. v. Sullivan,*
376 U.S. 254 (1964)......................................................... 7, 8, 9, 32

*Nat'l Review, Inc. v. Mann,*
140 S. Ct. 344 (2019)..................................................................... 32

*People of Sioux Cnty. v. Nat'l Surety Co.,*
276 U.S. 238 (1928).............................................................. 20, 21

*Phoenix Trading, Inc. v. Loops LLC,*
732 F.3d 936 (9th Cir. 2013) ....................................................... 19

*Planet Aid, Inc. v. Reveal,*
44 F.4th 918 (9th Cir. 2022) .................................................. 12, 16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.
Progress,*
890 F.3d 828, *amended,* 897 F.3d 1224 (9th Cir. 2018)........ *passim*

*RLI Ins. Co. v. Langan Eng'g, Env't, Surveying & Landscape
Architecture, D.P.C.,*
834 F. App'x 362 (9th Cir. 2021) ................................................ 16

*Rodriguez v. County of Los Angeles,*
891 F.3d 776 (9th Cir. 2018) ....................................................... 26

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*San Diego Building Trades Council v. Garmon*,
359 U.S. 236 (1950).................................................................... 20

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) ..................................................... 12

*Schwern v. Plunkett*,
845 F.3d 1241 (9th Cir. 2017) ................................................... 19

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)............................................................. *passim*

*Stromberg v. California*,
283 U.S. 359 (1931)..................................................................... 32

*Travelers Cas. Ins. Co. of Am. v. Hirsh*,
831 F.3d 1179 (9th Cir. 2016) ................................................... 16

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) ............................................... *passim*

*Villeza v. United States*,
No. 05-cv-00043, 2006 WL 278618 (D. Haw. Jan. 5, 2006)........ 19

*Walker v. Armco Steel Corp.*,
446 U.S. 740 (1980)..................................................................... 17

*Wilson v. Tesla, Inc.*,
833 F. App'x 59 (9th Cir. 2020) ................................................. 26

*Wynn v. Bloom*,
852 F. App'x 262 (9th Cir. 2021) ............................................... 19

*Z.F. v. Ripon Unified Sch. Dist.*,
482 F. App'x 239 (9th Cir. 2012) ............................................... 17

# TABLE OF AUTHORITIES
### (*continued*)

Page(s)

**Statutes**

28 U.S.C. § 2072 .................................................................. 6

Cal. Civ. Proc. Code § 425.16.................................................... *passim*

**Other Authorities**

*Anti-SLAPP Legal Guide*,
Reporters Comm. for Freedom of the Press,
https://www.rcfp.org/anti-slapp-legal-guide/ (last visited
Mar. 24, 2025)................................................................ 13

D. Victoria Baranetsky & Alexandra Gutierrez, *What a costly
lawsuit against investigative reporting looks like*,
Colum. Journalism Rev. (Mar. 30, 2021),
https://bit.ly/3AjdlbO ..................................................... 10, 28

Fed. R. Civ. P. 11 ................................................................ 25

George Freeman & Lee Levine, *An increase in libel suits shows
why we need to keep protections for the news media*,
Wash. Post (Mar. 8, 2022),
http://tinyurl.com/z62tf969 .............................................. 9, 10, 11

Katie Balevic, *A judge dismissed a Wisconsin politician's
defamation suit against a newspaper, but the legal fees may
still shutter the paper*, Bus. Insider (Aug. 19, 2023),
http://tinyurl.com/hett79ce.................................................. 11

Meagan Flynn, *A small-town Iowa newspaper brought down a
cop.  His failed lawsuit has now put the paper in financial
peril.*, Wash. Post (Oct. 10, 2019),
http://tinyurl.com/54wjdnuh .............................................. 10, 11

## TABLE OF AUTHORITIES
### (*continued*)

Page(s)

Michael Norwick, *Chapter 3: The Empirical Reality of
Contemporary Libel Litigation*, *in* NEW YORK TIMES V.
SULLIVAN: THE CASE FOR PRESERVING AN ESSENTIAL
PRECEDENT, Media L. Res. Ctr. (Mar. 2022),
http://tinyurl.com/7b4pjmpu ........................................................ 11

Samantha Barbas, *A major Supreme Court First Amendment
decision could be at risk*, Wash. Post (July 13, 2021),
https://wapo.st/3AfGsNd ............................................................... 8

Shannon Jankowski & Charles Hogle, *SLAPP-ing Back: Recent
Legal Challenges to the Application of State Anti-SLAPP
Laws*, Am. Bar Ass'n (Mar. 16, 2022),
http://tinyurl.com/mum2knd7 ....................................................... 14

Ted Johnson, *Judge Orders Transfer of Devin Nunes' CNN
Case From Virginia to New York*, Deadline (May 22, 2020),
https://bit.ly/3iEQQYX ................................................................. 28

William H.J. Hubbard, *An Empirical Study of the Effect of
Shady Grove v. Allstate on Forum Shopping in the New
York Courts*,
10 J. L. Econ. & Pol'y 151 (2013) ................................................ 28

## IDENTITY AND INTEREST OF *AMICI CURIAE* AND SOURCE OF THEIR AUTHORITY TO FILE THIS BRIEF

Amici are the Reporters Committee for Freedom of the Press; The Atlantic Monthly Group LLC; CalMatters; Center for Investigative Reporting; Courthouse News Service; The E.W. Scripps Company; Gannett; Hearst; The Media Institute; the Media Law Resource Center, Inc. ("MLRC"); The National Freedom of Information Coalition; National Public Radio, Inc. ("NPR"); The National Press Photographers Association ("NPPA"); The New York Times Company; The News/Media Alliance; the Online News Association; PEN American Center ("PEN America"); The Philadelphia Inquirer; ProPublica, Inc. ("ProPublica"); The Seattle Times Company; The Society of Environmental Journalists; Society of Professional Journalists ("SPJ"); Student Press Law Center ("SPLC"); TEGNA Inc.; Vox Media, LLC; and WP Company LLC d/b/a The Washington Post (together, "Media Amici").

Journalists and news organizations are the frequent targets of strategic lawsuits against public participation ("SLAPPs") designed to punish and deter constitutionally protected newsgathering and reporting activities. If this Court were to overrule its longstanding, well-reasoned precedents establishing that California's anti-SLAPP

statute applies in federal court, it would have broad ramifications for the press and Media Amici, in particular, emboldening plaintiffs to pursue harassing and meritless federal court litigation that evades and thwarts substantive state law and policy and that could impair the press's ability to report the news and keep the public informed. Media Amici therefore have a strong interest in ensuring that federal courts sitting in diversity properly interpret and apply the substantive provisions of state anti-SLAPP laws.

The Reporters Committee for Freedom of the Press and Media Amici take no position on the merits of the parties' claims. Media Amici have obtained consent to file this brief from both parties and therefore may file it pursuant to Federal Rule of Appellate Procedure 29(a)(2) and Circuit Rule 29-2(a).

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), Media Amici state that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting this brief; and no person, other than amicus the Reporters Committee, its members or counsel, contributed money intended to fund preparing or submitting this brief.

## INTRODUCTION

Our system of self-governance depends on open debate among an informed public. But strategic lawsuits against public participation—or "SLAPPs"—threaten the free exchange of ideas. Even when SLAPP plaintiffs cannot prevail on the merits, they can intimidate and punish their targets with time-consuming and costly litigation, thereby deterring future speech on matters of public concern. In this way, SLAPPs pose a particularly acute threat to the practice of journalism: Potential sources may be unwilling to share their stories, for fear of inviting costly and harassing lawsuits, and journalists and media organizations must contend with the constant specter of litigation.

More than thirty years ago, the California Legislature enacted a statute that expressly sought to stem the "disturbing increase" in SLAPPs and enshrined a vital substantive state policy into law. It explained that plaintiffs bring these lawsuits "primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). And it expressly declared "that it is in the public interest to encourage continued participation in matters of public significance." *Id.* To

further that public interest, California's anti-SLAPP statute includes a particularly crucial substantive right for defendants who prevail on an anti-SLAPP special motion to strike: It entitles them to recover attorney's fees and costs to deter baseless lawsuits targeting speech and to compensate journalists, news organizations and others who are named in such suits.

That statutory right is directly linked to the specific substantive policy interest California sought to advance with its anti-SLAPP law: Defendants have a right to attorney's fees only where they prevail in an action arising from any act in furtherance of their "right of petition or free speech under the United States Constitution or the California Constitution *in connection with a public issue*." Cal. Civ. Proc. Code § 425.16(b)(1) (emphasis added). Fee shifting helps non-affluent targets of SLAPPs secure representation. It also causes a potential plaintiff to think twice before bringing a lawsuit to chill speech. In this way, California alleviates the financial burden of defending against a SLAPP—and provides a powerful deterrent against frivolous claims.

For the last twenty-five years, this Court has repeatedly upheld California's interest in protecting its citizens from SLAPPs by requiring district courts to apply the core substantive elements of the anti-SLAPP

statute—including its fee-shifting provision—while adjudicating motions to strike under the Federal Rules. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833, *amended*, 897 F.3d 1224 (9th Cir. 2018); *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1142 (9th Cir. 2022); *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999); *Day v. Cal. Lutheran Univ.*, No. 22-55825, 2023 WL 4893650 (9th Cir. Aug. 1, 2023).

That well-reasoned approach to applying the anti-SLAPP statute in diversity actions avoids any conflict with the Federal Rules, prevents forum shopping, has caused no problems of administration, and fully comports with *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Nothing about the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), undermines this approach, as this Court has expressly held. *See CoreCivic*, 46 F.4th at 1141–43. Those cases were correctly decided, and their holdings should be reaffirmed by this Court en banc.

Indeed, the Federal Rules say nothing about SLAPPs, let alone what rights defendants have when they defeat such lawsuits targeting

the exercise of core constitutional freedoms that the California Legislature sought to protect. And this Court has made clear that "*federal law establishes that attorney's fees law is substantive for* Erie *purposes*." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)) (emphasis added). A prevailing SLAPP defendant's entitlement to attorney's fees plays no role in determining *how* a court decides the motion or otherwise oversees the proceedings before it; rather, fee shifting reflects the California Legislature's substantive policy judgment about the value of speech on a public issue.

To exclude California's anti-SLAPP law from federal courts would violate the Rules Enabling Act's requirement that federal rules not "abridge, enlarge or modify any substantive right" that a state affords to its citizens. 28 U.S.C. § 2072(b). And it would undermine *Erie*'s twin aims by triggering forum-shopping and the inequitable administration of the laws. *Hanna v. Plumer*, 380 U.S. 460, 468 (1965). There would be a flood of new SLAPPs in district courts of this Circuit, with plaintiffs knowing that defendant journalists and others would have to foot a substantial bill to defend themselves—in the trial court and in this one—whether they eventually win or lose.

6

Anti-SLAPP protections advance our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *see also Counterman v. Colorado*, 600 U.S. 66, 78 (2023) (same). Media Amici therefore urge this Court to reaffirm its longstanding recognition that California citizens are entitled to the substantive protections of the anti-SLAPP law's fee-shifting provisions in federal district court.[1]

## ARGUMENT

**I.  California's anti-SLAPP law protects against meritless, retaliatory litigation that chills newsgathering and threatens press freedom.**

### A.  Defamation plaintiffs have long used SLAPPs to try to intimidate journalists and silence critical reporting.

Individuals and corporations have long used defamation suits to discourage critical news coverage, retaliate against the press, and stymie public discourse.

---

[1]  While Media Amici focus this brief on the importance of the continued application of California's anti-SLAPP statute in federal court, they join amicus First Amendment Coalition in strongly urging this Court to reaffirm its prior precedent holding that a defendant may seek immediate appellate review of an order denying a motion to strike under the California anti-SLAPP statute.

In the late 1950s and early 1960s, for example, Southern segregationists filed libel suits against news outlets aimed at stifling "coverage of the civil rights movement and local officials' repressive and often brutal responses to it." Samantha Barbas, *A major Supreme Court First Amendment decision could be at risk*, Wash. Post (July 13, 2021), https://wapo.st/3AfGsNd. By 1961, *The New York Times* faced "$7 million in potential libel judgments and the possibility of bankruptcy," and just three years later, "CBS, the Saturday Evening Post and the Associated Press faced over $200 million in potential damages." *Id*. The tactic worked for a time, prompting newspapers to pull reporters out of the South and kill stories "for fear of being slapped with potentially ruinous libel suits." *Id*.

Recognizing that civil litigation can threaten the freedom of the press to report on matters of significant public concern, the Supreme Court in 1964 issued its landmark *New York Times Co. v. Sullivan* decision, recognizing that the First Amendment imposes limits on state libel laws. 376 U.S. at 279–80. In doing so, the Court cautioned that "would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of

8

the expense of having to do —." *Id*. at 279. The Court stressed that such self-censorship "dampens the vigor and limits the variety of public debate," undermining the purpose of the First Amendment. *Id*. The Court just last Term reaffirmed the important protections afforded by *Sullivan. See Counterman*, 600 U.S. at 75–78. As the Court put it in *Counterman,* "[p]rohibitions on speech have the potential to chill, or deter, speech outside their boundaries. A speaker may be unsure about the side of a line on which his speech falls. Or he may worry that the legal system will err, and count speech that is permissible as instead not." *Id*. at 75.

Despite the important constitutional protections recognized by *Sullivan*, plaintiffs have continued to use the courts as a tool to harass and retaliate against members of the press. SLAPP plaintiffs often pursue meritless cases with little chance of success because inflicting the burden of costly, years-long litigation on their targets is an end in itself. "[T]hese cases are not typically intended to secure compensation for actual injury to reputation. Instead, they are intended to punish the media for speaking truth to power and to dissuade it from doing so in the future." George Freeman & Lee Levine, *An increase in libel suits*

*shows why we need to keep protections for the news media*, Wash. Post (Mar. 8, 2022), http://tinyurl.com/z62tf969.

Defending against those suits can cost millions of dollars. It can also require that journalistic resources be diverted to aid in litigation. *See* D. Victoria Baranetsky & Alexandra Gutierrez, *What a costly lawsuit against investigative reporting looks like*, Colum. Journalism Rev. (Mar. 30, 2021), https://bit.ly/3AjdlbO (describing how nonprofit newsroom deployed "two reporters and one editor working full time" to manage discovery while defending against a libel lawsuit). And the consequences extend beyond the specific litigants, as every SLAPP becomes a cautionary tale that may cause "other news organizations" to "decide that reporting on powerful or deep-pocketed organizations isn't worth the risk." *Id*.

These lawsuits can be particularly devastating for smaller, local news organizations—often pushing them to the brink of financial ruin. For example, an Iowa family-owned newspaper published accurate reporting about a local police officer who was having inappropriate relationships with teenagers, but spent $140,000 successfully defeating the officer's libel lawsuit, placing it in "financial peril." *See, e.g.*, Meagan Flynn, *A small-town Iowa newspaper brought down a cop. His*

*failed lawsuit has now put the paper in financial peril.*, Wash. Post (Oct. 10, 2019), http://tinyurl.com/54wjdnuh. Similarly, a Wisconsin newspaper spent $150,000—nearly as much as its annual operating budget—successfully defending against a libel claim by a local politician, after the paper reported that he had used a slur during a community meeting. *See* Katie Balevic, *A judge dismissed a Wisconsin politician's defamation suit against a newspaper, but the legal fees may still shutter the paper*, Bus. Insider (Aug. 19, 2023), http://tinyurl.com/hett79ce.

The threat is growing. "[T]he past several years have seen a worrisome increase in libel lawsuits brought by a broad array of political candidates, elected officials and domestic corporate titans, not to mention foreign autocrats and oligarchs." Freeman & Levine, *supra.* In particular, journalists and media companies have faced a proliferation of retaliatory and meritless lawsuits. *See* Michael Norwick, *Chapter 3: The Empirical Reality of Contemporary Libel Litigation*, *in* NEW YORK TIMES V. SULLIVAN: THE CASE FOR PRESERVING AN ESSENTIAL PRECEDENT, Media L. Res. Ctr. (Mar. 2022), http://tinyurl.com/7b4pjmpu (explaining that "the available data indicates that the number of libel complaints brought against the media

has actually *increased* in recent years," suggesting a "resurgence" in media defamation cases); *see also CoreCivic*, 46 F.4th at 1146 (affirming dismissal of SLAPP against media defendant); *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 928 (9th Cir. 2022) (same); *Herring Networks*, 8 F.4th at 1161 (same); *Sarver v. Chartier*, 813 F.3d 891, 902 (9th Cir. 2016) (same); *Brimelow v. N.Y. Times Co.*, No. 21-66, 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210 (2022) (defamation claim against *The New York Times* by author and website editor); *Fairfax v. CBS Corp.*, 2 F.4th 286, 294–95 (4th Cir. 2021) (defamation claim against CBS by former Virginia Lt. Governor); *Block v. Tanenhaus*, 867 F.3d 585, 588 (5th Cir. 2017) (defamation claim by economics professor against *The New York Times*).

Cases like these have increased public awareness of defamation claims as a means of lashing out against unfavorable media coverage, and they are likely to inspire copycat SLAPPs by other potential plaintiffs looking to do the same.

**B.** **California's anti-SLAPP law, and its fee-shifting framework in particular, is a vital substantive protection against SLAPPs.**

In 1992, California was among the first states to adopt an anti-SLAPP statute.[2] The California Legislature enacted the law in response to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). The Legislature recognized "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." *Id*. "By enacting the anti-SLAPP statute, the Legislature intended to provide SLAPP defendants an efficient tool to quickly and inexpensively unmask and defeat SLAPP suits." *Dowling v. Zimmerman*, 103 Cal. Rptr. 2d 174, 200 (Cal. Ct. App. 2001).

"The fee-shifting provision" of California's anti-SLAPP statute is "the linchpin of the . . . law's protective character." Shannon

---

[2] In the decades since, a national consensus has begun to emerge: 35 states and the District of Columbia have adopted some form of anti-SLAPP protections. *Anti-SLAPP Legal Guide*, Reporters Comm. for Freedom of the Press, https://www.rcfp.org/anti-slapp-legal-guide/ (last visited Mar. 24, 2025).

Jankowski & Charles Hogle, *SLAPP-ing Back: Recent Legal Challenges to the Application of State Anti-SLAPP Laws*, Am. Bar Ass'n (Mar. 16, 2022), http://tinyurl.com/mum2knd7. By "establish[ing] that 'a prevailing defendant . . . shall be entitled to recover his or her attorney's fees and costs[,]'" that provision helps to "achieve the cardinal, substantive goal of California's anti-SLAPP law: protecting individuals and news organizations from devastatingly expensive lawsuits designed to punish them for, and deter them from, engaging in speech on matters of public importance." *Id*. (quoting Cal. Civ. Proc. Code § 425.16(c)(1)).

As the Supreme Court of California has explained, California's fee-shifting provision was "intended to discourage [SLAPPs] by imposing the litigation costs" on plaintiffs, and it "also encourages private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001); *see also Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 327–28 (2017) (describing the "apparent purpose" of "the anti-SLAPP's fee-shifting provision" to be "compensating the prevailing defendant for the undue burden of

defending against litigation designed to chill the exercise of free speech and petition rights").

Thus, the fee-shifting provision is the consequence of the California Legislature's substantive policy decision to deter litigants from filing meritless SLAPPs designed to chill speech in connection with public issues. That protection is essential for members of the media, among others, because it protects their ability to report on matters of public importance without fearing the potentially devastating consequences of retaliatory litigation.

## II. This Court has repeatedly and correctly held that the substantive provisions of California's anti-SLAPP law apply in federal court.

Federal courts sitting in diversity "apply state substantive law and federal procedural law," *Hanna*, 380 U.S. at 465, using a two-step analysis to determine whether a state law applies. Courts first ask whether a Federal Rule "answers the question in dispute." *Shady Grove*, 559 U.S. at 398. If it does, the Federal Rule governs so long as it does not violate the Rules Enabling Act. *Id.* If no Federal Rule applies, then the Rules of Decision Act mandates the application of state substantive law, where the failure to apply it "would significantly affect the result of a litigation." *Gasperini v. Ctr. for Humans., Inc.*,

15

518 U.S. 415, 427 (1996) (citation omitted). "[F]ederal rules must be interpreted with some degree of 'sensitivity to important state interests.'" *Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring) (quoting *Gasperini*, 518 U.S. at 427 n.7).

Over the last twenty-five years, this Court has repeatedly considered whether "relevant provisions of California's Anti-SLAPP statute may properly be applied in federal court." *Newsham*, 190 F.3d at 972. And it has repeatedly reaffirmed that "there is no direct conflict between" "the special motion to strike, § 425.16(b), and the availability of fees and costs, § 425.16(c)," on the one hand, and the Federal Rules of Civil Procedure, on the other hand. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001).[3]

---

[3] *See Newsham*, 190 F.3d at 972; *Metabolife*, 264 F.3d at 845–46; *Batzel v. Smith*, 333 F.3d 1018, 1025–26 (9th Cir. 2003); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 271 (9th Cir. 2013) ("*Makaeff I*"), *reh'g denied*, 736 F.3d 1180 (9th Cir. 2013); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013); *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1176 (9th Cir. 2015); *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1180 (9th Cir. 2016); *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 767 (9th Cir. 2017); *Planned Parenthood*, 890 F.3d at 833; *Drexler v. Billet*, 784 F. App'x 548, 549 (9th Cir. 2019); *Herring Networks*, 8 F.4th at 1155–57; *RLI Ins. Co. v. Langan Eng'g, Env't, Surveying & Landscape Architecture, D.P.C.*, 834 F. App'x 362, 363 (9th Cir. 2021); *Planet Aid*, 44 F.4th at 928–29; *CoreCivic*, 46 F.4th at 1140–43.

In *Newsham*, this Court held that California's anti-SLAPP law "is crafted to serve an interest not directly addressed by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'" 190 F.3d at 973 (quoting Cal. Civ. Proc. Code § 425.16(a)). Accordingly, this Court concluded that the California anti-SLAPP statute and the Federal Rules "'can exist side by side . . . each controlling its own intended sphere of coverage without conflict.'" *Id*. at 972 (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)).

In *Planned Parenthood*, decided eight years after the Supreme Court's decision in *Shady Grove*, this Court clarified that district courts must apply federal procedure when adjudicating anti-SLAPP motions to strike under California law. Under the *Planned Parenthood* framework, "an anti-SLAPP motion to strike founded on purely legal arguments" is analyzed under the standards of Federal Rules 8 and 12, while a motion to strike that raises a "factual challenge" is analyzed under Rule 56. 890 F.3d at 833 (quoting *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012)). This Court confirmed that "the attorney's fee provision of § 425.16" still "applies." 890 F.3d at 834 (citation omitted).

Since deciding *Planned Parenthood* in 2018, this Court has repeatedly confirmed that under its analytical framework "'there is no direct collision' between the special motion to strike subsection of the statute and the Federal Rules." *Herring Networks*, 8 F.4th at 1155 (quoting *Newsham*, 190 F.3d at 972); *see also Drexler*, 784 F. App'x at 549 (applying *Planned Parenthood* in case arising under California anti-SLAPP law). Most recently, in *CoreCivic*, this Court expressly considered "whether [its] long line of precedents holding that California's anti-SLAPP statute applies in federal court" were in harmony with *Shady Grove*. 46 F.4th at 1138. After close analysis of *Shady Grove*, this Court held that they were: "[T]o the extent that *Shady Grove* altered the relevant inquiry at all, it remains reconcilable with our precedents after our decision in *Planned Parenthood*." *Id*. at 1143.

Thus, this Court has correctly confirmed for decades, over and over, that the substantive provisions of California's anti-SLAPP law, including, importantly, its attorney's fee provision, apply in federal diversity cases. This Court should decline to nullify its long line of

anti-SLAPP jurisprudence, and to reach a legally erroneous result, by precluding the application of these provisions in this Circuit.[4]

**A.      The California anti-SLAPP statute's fee-shifting provision embodies a substantive policy judgment of the California Legislature**

As this Court recognized in *Newsham*, California's anti-SLAPP statute expressly "articulate[s] the important, *substantive* state interests furthered by" its provisions. 190 F.3d at 973 (emphasis added). The fee-shifting provision in California's anti-SLAPP statute is designed to achieve the fundamentally substantive objective of minimizing SLAPP suits that chill the exercise of core constitutional rights. *See Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012) ("[S]tate 'regulation can be . . . effectively exerted through an award of damages,' and '[t]he obligation to pay compensation can be, indeed is

_____

[4] Such a decision could also lead to disputes over possible impacts on the decisions by the Courts of this Circuit applying the substantive anti-SLAPP protections that the legislatures of Hawaii, Nevada, Oregon, and Washington have afforded to their citizens. *See, e.g.*, *Wynn v. Bloom*, 852 F. App'x 262, 263 (9th Cir. 2021) (applying Nevada's anti-SLAPP statute); *Schwern v. Plunkett*, 845 F.3d 1241, 1245 (9th Cir. 2017) (applying Oregon's anti-SLAPP statute); *Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 941–43 (9th Cir. 2013) (applying Washington's anti-SLAPP law); *Villeza v. United States*, No. 05-cv-00043, 2006 WL 278618, at *5–6 (D. Haw. Jan. 5, 2006) (applying Hawaii's anti-SLAPP statute).

designed to be, a potent method of governing conduct and controlling policy.'") (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247 (1950)).

In fact, the Supreme Court has made clear that state laws providing for the recovery of attorney's fees "reflect[] a substantial policy of the state" because they further state policies governing litigation. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975). Accordingly, "when a federal court sits in a diversity case" and "the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto . . . should be followed." *Id.* (internal quotation omitted).

In *People of Sioux County v. National Surety Co.*, 276 U.S. 238 (1928), for example, the Supreme Court held that a state statute requiring an award of attorney's fees should be applied in a case removed from state courts to federal courts. *Id.* at 243. According to the *Sioux County* Court, "it is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy effective by making the allowance of the fee mandatory on its courts in those cases." *Id.* The Court emphasized that

"[i]t would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts." *Id.*

While the Court decided *Sioux County* prior to *Erie*, it saw "nothing after *Erie* requiring a departure from [*Sioux County*'s] result." *Alyeska Pipeline*, 421 U.S. at 259 n.31; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991) (confirming that "fee-shifting rules . . . such as a statute which permits a prevailing party in certain classes of litigation to recover fees" "embody a *substantive policy*") (emphasis added). Indeed, this Court has held—after both *Erie* and *Shady Grove*—that the question of whether federal law or state law applies to an attorney's fees award is "easily answered." *Alaska Rent-A-Car, Inc.*, 738 F.3d at 973; *see also Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000) ("A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees."). Simply put, "federal law establishes that attorney's fees law is substantive for *Erie* purposes." *Alaska Rent-a-Car, Inc.*, 738 F.3d at 973.

**B.      California's anti-SLAPP fee-shifting provision does not conflict with any Federal Rule**

Moreover, fee shifting under the anti-SLAPP statute does not conflict with the Federal Rules or attempt to "answer" any question that they resolve.  *See CoreCivic*, 46 F.4th at 1141 (quoting *Shady Grove*, 559 U.S. at 399).  As this Court correctly held in *CoreCivic*, the *Planned Parenthood* approach to applying California's anti-SLAPP law in diversity cases is consistent with the Supreme Court's *Erie* precedents—including the decision in *Shady Grove*.  *Id*. at 1141–43.

In *Shady Grove*, "the justices fractured 4-4-1" and only "the first part" of Justice Scalia's plurality opinion constituted a binding majority opinion.  *CoreCivic*, 46 F.4th at 1141; *see* 559 U.S. at 395.  But as this Court observed in *CoreCivic*, that portion of the opinion "broke little new ground with respect to the standard for assessing a potential conflict between the federal rules and state law."  46 F.4th at 1141.  It simply "made clear that the first step in the analysis was to ask whether the apparently conflicting federal and state rules 'answer the same question.'"  *Id*. (quoting *Shady Grove*, 559 U.S. at 399). "The Court did not discard the 'direct collision' test; it merely repackaged it."  *Id*. at 1142.

*Shady Grove* "remains reconcilable with [Ninth Circuit] precedents after [the] decision in *Planned Parenthood*." *CoreCivic*, 46 F.4th at 1143. In *Shady Grove*, the Court noted that "even artificial narrowing cannot render [New York's class action statute] compatible with Rule 23." 559 U.S. at 405. "*Whatever* the policies they pursue, they flatly contradict each other." *Id.* (emphasis in original). By contrast, "[n]o such conflict exists in this Circuit" between the Federal Rules and the substantive provisions of California's anti-SLAPP statute. *CoreCivic*, 46 F.4th at 1143. "In order to prevent the collision of California state procedural rules with federal procedural rules," this Court "review[s] anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood*, 890 F.3d at 833. Under that framework, "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated," thus avoiding any conflict with Federal Rules 8 or 12. *Planned Parenthood*, 890 F.3d at 834. And "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56

standard will apply" and "discovery must be allowed," thus avoiding any disharmony with Rule 56. *Id.*

This "interpretation eliminates conflicts between California's anti-SLAPP law's procedural provisions and the Federal Rules of Civil Procedure," by allowing federal procedure to apply while preserving California law's substantive protections—in particular, the anti-SLAPP law's fee-shifting provision. *Planned Parenthood*, 890 F.3d at 833. Only after the court grants such a motion according to the Federal Rules standard and finds that the claims concerned speech or petitioning activity on a public issue is a prevailing defendant's right to attorney's fees triggered.[5]

---

[5] This Court's precedents are also consistent with Justice Stevens' *Shady Grove* concurrence, which at least two other Circuits consider to be "controlling." *See Albright v. Christensen*, 24 F.4th 1039, 1044 (6th Cir. 2022); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 n.3 (10th Cir. 2018). Justice Stevens emphasized that a federal rule should not "displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." 559 U.S. at 423 (Stevens, J., concurring). Even if California's anti-SLAPP law were considered "procedural," it is plainly intertwined with the substantive right to "continued participation in matters of public significance" without such "participation . . . be[ing] chilled through abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a).

Moreover, it is clear that Federal Rule of Civil Procedure 11 does not "answer the same question" as California's anti-SLAPP fee-shifting provision. Rule 11 has nothing to do with a litigant's rights when she defeats a California cause of action that targets her speech in connection with a public issue: It focuses on "representations to the court" during the course of a proceeding. Fed. R. Civ. P. 11(b) (capitalization omitted). It is procedural and "not tied to the outcome of [the] litigation." *Bus. Guides, Inc. v. Chromatic Commc'ns. Enters., Inc.*, 498 U.S. 533, 553 (1991). "Nor," under Rule 11, "do sanctions shift the entire cost of litigation; they shift only the cost of a discrete event." *Id.* Moreover, "the Rule calls only for 'an appropriate sanction'— attorney's fees are not mandated." *Id.* The Supreme Court could not be more clear: "'Rule 11 is not a fee-shifting statute . . . .'" *Id*. (quoting *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 409 (1990)).

Thus, rules governing "the assessment of attorney's fees as a sanction for bad-faith conduct before the court" answer a fundamentally different question than a statute, like California's anti-SLAPP law, that "permits a prevailing party in certain classes of litigation to recover fees." *Chambers*, 501 U.S. at 52–53; *see In re S. Cal. Sunbelt Devs., Inc.*, 608 F.3d 456, 462 (9th Cir. 2010) ("Like other

25

fee-shifting provisions and in contrast to Rule 11, eligibility for fees [under 11 U.S.C. § 303] turns on the merits of the litigation as a whole, rather than on whether a 'specific filing' is well founded.") (quoting *Bus. Guides*, 498 U.S. at 553).

The anti-SLAPP statute's right to attorney's fees thus exists independent of the Federal Rules, like the attorney's fees that this Court has allowed litigants to recover under other California laws without invoking Rule 11. *See, e.g.*, *Wilson v. Tesla, Inc.*, 833 F. App'x 59, 61 (9th Cir. 2020) (wage and hour); *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018) (civil rights); *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (trade secret); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995) (age discrimination).

Because fee shifting under California's anti-SLAPP statute is a substantive state-created right that does not "attempt[] to answer the same question" as any Federal Rule of Civil Procedure, *Shady Grove*, 559 U.S. at 393, this Court should apply California's fee-shifting provision so long as it consistent with *Erie*'s "twin aims" of avoiding forum shopping and "inequitable administration of the laws," *Hanna*, 380 U.S. at 468.

**C.**      **Applying California's substantive anti-SLAPP protections in federal court advances the twin aims of *Erie* and upholds federalism principles.**

It is well-settled that *Erie*'s mandate to apply state substantive law and federal procedure promotes two key goals: discouraging forum-shopping and avoiding the "inequitable administration of the laws." *Hanna*, 380 U.S. at 468. These principles are significant. As Justice Harlan explained, *Erie* is "one of the modern cornerstones of our federalism, expressing policies that profoundly touch the allocation of judicial power between the state and federal systems." *Hanna*, 380 U.S. at 474 (Harlan, J., concurring).

These "twin purposes of the *Erie* rule . . . favor application of California's Anti-SLAPP statute in federal cases." *Newsham*, 190 F.3d at 973. As Judge Wardlaw has explained:

> Without anti-SLAPP protections in federal courts, SLAPP plaintiffs would have an incentive to file or remove to federal courts strategic, retaliatory lawsuits that are more likely to have the desired effect of suppressing a SLAPP defendant's speech-related activities. Encouraging such forum-shopping chips away at "one of the modern cornerstones of our federalism."

*Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1187 (9th Cir. 2013) ("*Makaeff II*") (Wardlaw, J., concurring) (quoting *Hanna*, 380 U.S. at 474 (Harlan, J., concurring)).

SLAPP plaintiffs already engage in lateral forum shopping between state courts in order to evade strong fee-shifting provisions. *See, e.g.*, Ted Johnson, *Judge Orders Transfer of Devin Nunes' CNN Case From Virginia to New York*, Deadline (May 22, 2020), https://bit.ly/3iEQQYX (libel lawsuit transferred from Virginia to New York after court expressed "significant concerns about forum shopping"); Baranetsky & Gutierrez, *supra* (plaintiff tried repeatedly to sue California-based newsroom in Maryland court because Maryland's "far weaker" anti-SLAPP law has no fee-shifting provision).

If the federal forum allowed SLAPP plaintiffs to evade the substantive provisions of California's law, and its fee-shifting provision in particular, SLAPP plaintiffs also could be expected to engage in vertical forum-shopping from state to federal court. *Cf.* William H.J. Hubbard, *An Empirical Study of the Effect of* Shady Grove v. Allstate *on Forum Shopping in the New York Courts*, 10 J. L. Econ. & Pol'y 151, 152–53 (2013) (documenting "fairly dramatic" increase in "vertical forum shopping" following *Shady Grove*). Where diversity among the parties exists, plaintiffs would merely have to inflate the value of their claims to bring suit in federal court. This could "put the federal courts at risk of being swept away in a rising tide of frivolous

state actions that would be filed in [this] circuit's federal courts." *Makaeff II*, 736 F.3d at 1187 (Wardlaw, J., concurring).

Applying California's anti-SLAPP protections in federal court also promotes the equitable administration of the laws. Were it otherwise, the core protection that the California Legislature enacted to protect speech on public issues would vanish for many journalists and other defendants in this Circuit. That protection would exist in a state courthouse but not in a federal courthouse next door. Californians would therefore face "two conflicting systems of law controlling" their activity, giving rise to "debilitating uncertainty in the planning of everyday affairs." *Hanna*, 380 U.S. at 474 (Harlan, J., concurring). That inequitable result would conflict with this Court's precedent and common sense. Californians should be able to rely on these protections, as their Legislature intended, without fear they may be unavailable in federal court.

### D. Overruling this Court's prior precedents would create—not resolve—a circuit split.

Finally, this Court should not overrule its precedents applying the substantive provisions of California's anti-SLAPP statute in federal court because doing so would create a circuit split—or, to the extent one already exists, exacerbate it considerably.

No other Circuit has squarely held that anti-SLAPP fee-shifting frameworks do not apply in federal diversity cases. To the contrary, the First, Second, and Fifth Circuits all recognize that substantive state-law anti-SLAPP protections, including fee shifting, *do* apply in federal court. *See Godin v. Schencks*, 629 F.3d 79, 88 (1st Cir. 2010) (holding that Federal Rules 12(b)(6) and 56 "are not so broad as to cover the issues within the scope" of Maine's anti-SLAPP statute and thus "do not 'attempt[] to answer the same question'" (quoting *Shady Grove*, 559 U.S. at 399)); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (holding that provisions of Nevada's anti-SLAPP law which provide for "immunity from civil liability" *and "mandatory fee shifting"* apply in federal court, because they are "substantive within the meaning of *Erie*" and "do not squarely conflict with a valid federal rule" (emphasis added)); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 168–69 (5th Cir. 2009) (applying Louisiana's statute even though it is "nominally[] procedural").

Moreover, where other Circuits have declined to apply state anti-SLAPP provisions in federal court, they have largely done so on the theory that state anti-SLAPP statutes "establish[] the circumstances under which a court must dismiss a plaintiff's claim before trial," while

Federal Rules 8, 12, and 56 "answer that question differently." *Abbas v. Foreign Policy Grp.*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015); *see also La Liberte v. Reid*, 966 F.3d 79, 87–88 (2d Cir. 2020); *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019); *Carbone v. Cable News Network*, 910 F.3d 1345, 1350 (11th Cir. 2018).

In *La Liberte*, the Second Circuit "conclude[d] that the special motion to strike in California's anti-SLAPP statute answers the same question as Federal Rules 12 and 56," and held that it did not apply in diversity cases in that Circuit. 966 F.3d at 87. But the Second Circuit's decision did not expressly consider or reject the harmonizing interpretation that this Court articulated in *Planned Parenthood*.

Rather, *La Liberte*—and *Abbas*, *Klocke*, and *Carbone*, in addressing other anti-SLAPP statutes—all "grounded their reasoning in conflicts between those statutes' heightened pleading standards and the standards dictated by Rules 8, 12, and 56." *CoreCivic*, 46 F.4th at 1143. "No such conflict exists in this Circuit." *Id*. This Court's longstanding precedent makes clear that when a court of this Circuit applies California's anti-SLAPP statute, the Federal Rules govern the standards for what a plaintiff must plead or show to stave off dismissal of the complaint. *See Planned Parenthood*, 890 F.3d at 834.

Thus, to the extent other Circuits have diverged from this Court on the issue of whether and how state anti-SLAPP laws apply in federal court, it is because they have painted with a broader brush than this Court did in *Planned Parenthood*—not because they differ from this Court in their interpretation of *Erie* and *Shady Grove*. This Court would unnecessarily draw new inter-circuit fault lines if it were to reverse its longstanding precedent by ruling that the substantive provisions of California's anti-SLAPP statute do not apply in federal diversity cases.

## CONCLUSION

The Supreme Court has repeatedly made clear that "[t]he maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system." *Sullivan*, 376 U.S. at 269 (quoting *Stromberg v. California*, 283 U.S. 359, 369 (1931)); *see also Nat'l Review, Inc. v. Mann*, 140 S. Ct. 344, 346 (2019) (Alito, J., dissenting from denial of certiorari) ("The constitutional guarantee of freedom of expression serves many purposes, but its most important role is protection of robust and uninhibited debate on important political and social issues.

32

If citizens cannot speak freely and without fear about the most important issues of the day, real self-government is not possible." (internal citations omitted)).

The robust substantive protections afforded by California's anti-SLAPP law and, in particular, its fee-shifting provision—protections the California Legislature deemed necessary more than thirty years ago—are truly indispensable now. This Court has faithfully followed the Supreme Court's *Erie* guidance, including in *Shady Grove*, in holding that California's anti-SLAPP substantive provisions apply in diversity cases in federal court. This Court should reaffirm those precedents, which are essential to the protection of core constitutional freedoms.

Dated:  March 24, 2025          Respectfully submitted,


                                *s/ Grayson Clary*

                                Grayson Clary
                                *Counsel for Amici Curiae*
                                Bruce D. Brown*
                                Lisa Zycherman*
                                Mara Gassmann*
                                Abigail Sintim*
                                *Of counsel*
                                REPORTERS COMMITTEE FOR
                                   FREEDOM OF THE PRESS
                                1156 15th St. NW, Suite 1020
                                Washington, D.C. 20005
                                Telephone: (202) 795-9300
                                Facsimile: (202) 795-9310
                                GClary@rcfp.org

                                Theodore J. Boutrous, Jr.
                                Katie Townsend
                                Michael H. Dore
                                Zachary C. Freund
                                GIBSON, DUNN & CRUTCHER LLP
                                333 South Grand Avenue
                                Los Angeles, CA 90071-3197
                                Telephone:  (213) 229-7000
                                TBoutrous@GibsonDunn.com

                                *Counsel for the Reporters Committee
                                for Freedom of the Press*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s):** 24-2626

I am the attorney for proposed *amici curiae* the Reporters Committee for Freedom of the Press and 25 media organizations.

**This brief contains 6,646 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ **X** ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Grayson Clary*        **Date:** March 24, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, I filed the foregoing Brief of Proposed *Amici Curiae* the Reporters Committee for Freedom of the Press and 25 Media Organizations in Support of Neither Party with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: March 24, 2025

*s/ Grayson Clary*

Grayson Clary
*Counsel for Amici Curiae*