No. 24-2626
_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

GOPHER MEDIA, LLC, a Nevada Limited Liability Corporation, and AJAY
THAKORE, an individual,

*Plaintiffs and Appellants,*

v.

ANDREW MELONE, an individual, and AMERICAN PIZZA
MANUFACTURING, a California business entity,

*Defendants, Counter-Claimants, and Appellees.*
_____

On Appeal from the United States District Court
for the Southern District of California, San Diego
The Honorable Ruth Bermudez Montenegro, District Judge, Presiding
Case No. 3:21-cv-01909-RBM-VET
_____

# AMICI CURIAE BRIEF BY FIRST AMENDMENT COALITION AND
# YELP INC. IN SUPPORT OF NEITHER PARTY

_____

DAVIS WRIGHT TREMAINE LLP
Kelli L. Sager, CA Bar No. 120162
Dan Laidman, CA Bar No. 274482
Samuel A. Turner, CA Bar No. 338089
350 South Grand Ave, 27th Floor
Los Angeles, California 90071
Telephone: 213.633.6800
kellisager@dwt.com; danlaidman@dwt.com; samturner@dwt.com

Attorneys for Amici Curiae
FIRST AMENDMENT COALITION and YELP INC.
**(Additional counsel on following page)**

**FIRST AMENDMENT COALITION**
David Loy, CA Bar No. 229235
Ann Cappetta, CA Bar No. 354079
534 4th Street, Suite B
San Rafael, California 94901-3334
Telephone: 415.460.5060
dloy@firstamendmentcoalition.org
acappetta@firstamendmentcoalition.org

**YELP INC.**
James Daire, CA Bar No. 239637
350 Mission Street 10th Floor
San Francisco, California 94618
Telephone: 415.289.9170
jdaire@yelp.com

## <u>CORPORATE DISCLOSURE STATEMENT AND</u>

## <u>STATEMENT OF COMPLIANCE</u>

The First Amendment Coalition (FAC) is a non-profit advocacy organization based in San Rafael, California.  It has no parent company and does not issue any stock, or own stock in either of the parties.

Yelp Inc. (Yelp) is a Delaware corporation headquartered in San Francisco, California. It has no parent company. The following publicly held corporations own 10% of more of its stock: Blackrock, Inc. and The Vanguard Group, Inc.

Counsel for the parties did not author this brief.  Neither the parties nor their counsel have contributed money intended to fund preparing or submitting this

//

//

brief. No person – other than FAC, its members, or its counsel – contributed

money that was intended to fund preparing or submitting this brief.

RESPECTFULLY SUBMITTED this 24th day of March, 2025.

**DAVIS WRIGHT TREMAINE LLP**
KELLI L. SAGER
DAN LAIDMAN
SAMUEL A. TURNER

**FIRST AMENDMENT COALITION**
DAVID LOY
ANN CAPPETTA

**YELP INC.**
JAMES DAIRE


By /s/ *Dan Laidman*
     Dan Laidman

Attorneys for Amici Curiae
First Amendment Coalition and
Yelp Inc.

iv

# **TABLE OF CONTENTS**

**Page**

INTERESTS OF AMICI AND AUTHORITY TO FILE THIS BRIEF ...................1

I.     SUMMARY OF ARGUMENT .........................................................2

II.    DENIALS OF SLAPP MOTIONS ARE APPEALABLE UNDER
THE COLLATERAL ORDER DOCTRINE ...................................5

     A.    The SLAPP Statute Confers Immunity From Suit, Which Is
Irrevocably Lost Without Immediate Review......................7

     B.    SLAPP Motions Resolve Issues Separate From The Merits. ............14

III.    INTERLOCUTORY APPEALS FOR DENIALS OF SLAPP
MOTIONS ARE AN IMPORTANT SUBSTANTIVE PROTECTION
FOR PUBLIC INTEREST SPEECH. ...........................................20

     A.    Interlocutory Appeals Are Critical To Protect Ordinary People
As Well As Professional Journalists From The Onerous Burden
of Defending Meritless Lawsuits. .......................................22

     B.    Jurisdictions Without SLAPP Protections Become Targets For
Forum-Shopping....................................................................28

IV.    CONCLUSION..............................................................................30

v

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abney v. U.S.,
    431 U.S. 651 (1977)................................................................18

Baral v. Schnitt,
    1 Cal.5th 376 (2016) .............................................................22

Batzel v. Smith,
    333 F.3d 1018 (9th Cir. 2003) ........................................3, 4, 14

Church of Scientology v. Wollersheim,
    42 Cal.App.4th 628 (1996), overruled in part on other grounds, Equilon
    Enters. v. Consumer Cause, Inc., 29 Cal.4th 53 (2002) .....................28

Cohen v. Beneficial Indus. Loan Corp.,
    337 U.S. 541 (1949)................................................................17

Coinbase, Inc. v. Bielski,
    599 U.S. 736 (2023).......................................................11, 12, 13

DC Comics v. Pacific Pictures,
    706 F.3d 1009 (9th Cir. 2013) .......................................6, 7, 14, 15

Doe v. Gangland Productions,
    730 F.3d 946 (9th Cir. 2013) ...........................................14, 15

Dombrowski v. Pfister,
    380 U.S. 479 (1965)..................................................................7

Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive
    Bd.,
    542 F.2d 1076 (9th Cir. 1976) .......................................................8

Helstoski v. Meanor,
    442 U.S. 500 (1979)................................................................18

Hutton v. Hafif,
    150 Cal.App.4th 527 (2007) ......................................................19

Hyde v. City of Willcox,
    23 F.4th 863 (9th Cir. 2022) ................................................................18

Jarrow Formulas, Inc. v. LaMarche,
    31 Cal.4th 728 (2003) .................................................................9, 10

Lacey v. Maricopa County,
    693 F.3d 896 (9th Cir. 2012) ................................................................18

Makaeff v. Trump University,
    736 F.3d 1180 (9th Cir. 2013) (Wardlaw, J. and Callahan, J., concurring
    in the denial of rehearing) ...............................................14, 18, 19, 20

Marks v. Clarke,
    102 F.3d 1012 (9th Cir. 1996) ........................................................16

Martinez v. ZoomInfo Technologies, Inc.,
    82 F.4th 785 (9th Cir. 2023) (McKeown, J., concurring) ...........................6, 8, 9

Mitchell v. Forsyth,
    472 U.S. 511 (1985)....................................................................16, 17

NAACP v. Claiborne Hardware,
    458 U.S. 886 (1982)........................................................................27

Navellier v. Sletten,
    29 Cal.4th 82 (2002) (Brown, J. dissenting)...............................2, 9, 10

Nixon v. Fitzgerald,
    457 U.S. 731 (1982).........................................................................18

Nunes v. NBCUniversal Media,
    582 F. Supp. 3d 387 (E.D. Tex. 2022)...........................................28, 29

Nunes v. WP Co., LLC,
    2020 WL 2616707 (E.D. Va. May 21, 2020) .....................................30

Planet Aid, Inc. v. Reveal,
    44 F.4th 918 (9th Cir. 2022) ................................................................24

Planned Parenthood Federation v. Center for Medical Progress,
    890 F.3d 828 (9th Cir. 2018) ................................................................15

Protect Our Mountain Environment, Inc. v. District Court,
    677 P.2d 1361 (Colo. 1984) ................................................................. 2

Schwern v. Plunkett,
    845 F.3d 1241 (9th Cir. 2017) ........................................................... 23

Suzuki Motor v. Consumers Union,
    330 F.3d 1110 (9th Cir. 2003) (Ferguson, C.J., dissenting) ................ 8

Travelers Indem. Co. v. Madonna,
    914 F.2d 1364 (9th Cir. 1990) ........................................................... 30

United States ex rel. Newsham v. Lockheed Missiles & Space Co.,
    190 F.3d 963 (9th Cir. 1999) ............................................................... 3

VanderSloot v. Foundation for Nat'l Progress,
    No. CV-2013-532 (Idaho 7th Dist. Ct. Oct. 6, 2015) ........................ 26

Varian Medical Systems, Inc. v. Delfino,
    35 Cal.4th 180 (2005) ........................................................ 8, 10, 11, 16

Washington Post v. Keogh,
    365 F.2d 965 (D.C. Cir. 1966) ............................................................ 8

Will v. Hallock,
    546 U.S. 345 (2006) ............................................................ 6, 7, 10, 14

Young v. NeoCortext, Inc.,
    2024 WL 4987254 (9th Cir. Dec. 5, 2024) (unpublished) (Desai, J.,
    concurring) ........................................................................................... 6

Zucchet v. Galardi,
    229 Cal.App.4th 1466 (2014) ........................................................... 15

**Statutes**

California Code of Civil Procedure § 425.16 .................................... *passim*

**Rules**

Federal Rule of Appellate Procedure 29(a)(2) ........................................ 1

**Constitutional Provisions**

U.S. Const. art. I ............................................................................*passim*

**Other Authorities**

Wright & Miller, 15A Fed. Prac. & Proc. Juris. § 3914.10 (3d ed. June 2024 Update) ..............................................................................................16

Clara Jeffery & Monika Bauerlein, *We Were Sued by a Billionaire Political Donor. We Won. Here's What Happened.*, Mother Jones (Oct. 8, 2015), https://www.motherjones.com/media/2015/10/mother-jones-vandersloot-melaleuca-lawsuit/ ................................................................................26

D. Victoria Baranetsky et al., "International Charity Planet Aid Pays $1.925 Million to Settle Six-Year Libel Lawsuit," Reveal (Oct. 20, 2022), https://revealnews.org/press/international-charity-planet-aid-pays-1-925-million-to-settle-six-year-libel-lawsuit/ ......................................................24, 25

Dan Frosch, "Venting Online, Consumers Can Find Themselves in Court," New York Times (May 31, 2010) https://www.nytimes.com/2010/06/01/us/01slapp.html ........................................................23, 24, 27

George W. Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envt'l L.Rev. 3, 9, 18 (Fall 1989) ..........................................................2, 3

Josh Gerstein, "Judge tosses Devin Nunes suit over Esquire article," Politico (Apr. 25, 2023, 09:41 PM), https://www.politico.com/news/2023/04/25/devin-nunes-libel-suit-esquire-hearst-00093844 ......................................................................29

Laura Lee Prather, "SLAPP Suits: An Encroachment on Human Rights of a Global Proportion and What Can Be Done About It," 22 Nw. J. Hum. Rts. 49, 53-54 (2023) .........................................................20, 21, 28

Mike Madden, "Dan Snyder Drops Lawsuit against Washington City Paper, Dave McKenna," Washington City Paper (Sept. 11, 2011) https://washingtoncitypaper.com/article/464131/dan-snyder-drops-lawsuit-against-washington-city-paper-dave-mckenna/ .....................................25

Monika Bauerlein, "The Legal War Against Mother Jones Keeps Getting More Intense," Mother Jones (Nov. 2, 2021), https://www.motherjones.com/media/2021/11/the-legal-war-against-mother-jones-keeps-getting-more-intense/ .........................................................26

Paul Farhi, "Redskins owner Dan Snyder drops lawsuit against Washington City Paper," Washington Post (Sept. 10, 2011, 11:45 PM), https://www.washingtonpost.com/sports/redskins-owner-dan-snyder-drops-lawsuit-against-washington-city-paper/2011/09/09/gIQA3hf1IK_story.html .......................................................25

Politico, "The New Business Really Is Cratering," January 27, 2024, https://www.politico.com/news/magazine/2024/01/27/is-the-journalism-death-spasm-finally-here-00138187 ....................................................22

Politico, "The News Business Really Is Cratering," ................................................22

Rebecca Bonello Ghio et al., "Shutting Out Criticism: How SLAPPs Threaten European Democracy," The Coalition Against SLAPPs in Europe, 2 (Mar. 2022), https://www.the-case.eu/wp-content/uploads/2023/04/CASEreportSLAPPsEurope.pdf ................................21

Reporters Committee for Freedom of the Press (Apr. 16, 2019), https://www.rcfp.org/devin-nuness-lawsuit-in-virginia-against-his-california-hometown-paper-underscores-the-need-for-stronger-anti-slapp-laws/ ....................................................................................................29

"Unsafe for Scrutiny: Examining the pressures faced by journalists uncovering financial crime and corruption around the world," Foreign Policy Center & Justice for Journalists (Mar. 2020), https://fpc.org.uk/publications/unsafe-for-scrutiny/ ..........................................21

x

## INTERESTS OF AMICI AND AUTHORITY TO FILE THIS BRIEF

Amici FAC and Yelp have obtained consent from the parties to file this brief, and file it pursuant to F.R.A.P. 29(a)(2).

FAC is a non-profit organization dedicated to freedom of speech and governmental transparency, and has decades of experience litigating the scope and interpretation of California's SLAPP statute. Properly applied, the statute enables journalists, advocates, and activists to defeat and deter meritless lawsuits arising from protected speech about matters of public interest, which otherwise can impose potentially crippling litigation costs that substantially burden the exercise of these important rights.

Yelp operates one of the most popular and trusted online local search and discovery platforms, enabling users to share information about their communities through reviews and other consumer-oriented contributions. Through its features, Yelp helps the public make more informed choices about local businesses and activities. Yelp has a strong interest in ensuring that online platforms and their users remain broadly protected from encroachments on their free speech rights, including from the expenses associated with defending those rights when plaintiffs sue.

## I.      SUMMARY OF ARGUMENT

California's "SLAPP" statute,[1] and others like it across the country, trace back to a late-1970s land battle in Colorado.  Developers brought a retaliatory lawsuit against environmentalists who had sued to block the transformation of agricultural land into a sprawling development project.  Protect Our Mountain Environment, Inc. v. District Court, 677 P.2d 1361, 1363 (Colo. 1984) ("POME"). The trial court denied the defendants' motion to dismiss, but the Colorado Supreme Court reversed, and in doing so, articulated new procedures to enable expedited handling of early dispositive motions based on the petition clause, given the "chilling effect" that lawsuits may have on First Amendment rights.  Id. at 1364, 1368-69.

The POME decision inspired scholars George Pring and Penelope Canan, who coined the term "SLAPP" to describe "strategic lawsuits against public participation."  Navellier v. Sletten, 29 Cal.4th 82, 85, 104 n.6 (2002) (Brown, J. dissenting) (citation omitted).  Professor Pring saw the case as a "model" both for a judicial approach to SLAPP suits and for legislatures to enact related "immunity statutes."  George W. Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envt'l L. Rev. 3, 9, 18 (Fall 1989).  Characterizing the POME

---

[1] California Code of Civil Procedure ("C.C.P.") § 425.16.

2

model as a "qualified immunity," he wrote that it "mandates early detection and identification of SLAPPs and sets up reasonably balanced but firm standards for prompt disposition of appropriate cases." Id. at 9. In addition to encouraging "immunity statutes," Professor Pring also observed that the "best of these solutions lie with our courts – the very institution designed to protect individual liberties and political rights, yet, ironically, the very institution being manipulated to produce the 'chilling effect' of SLAPPs." Id. at 21.

The California Legislature answered Professor Pring's call by enacting the SLAPP statute in 1992. This Court also responded, recognizing in two landmark cases that the statute applies in federal court,[2] and that denials of SLAPP motions are immediately appealable.[3] In doing so, this Court found that "California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit," and a "district court's denial of a claim of immunity, to the extent that it turns on an issue of law, is an appealable final decision … notwithstanding the absence of a final judgment." Batzel v. Smith, 333 F.3d 1018, 1025-26 (9th Cir. 2023).

---

[2] United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963 (9th Cir. 1999).

[3] Batzel v. Smith, 333 F.3d 1018 (9th Cir. 2003).

Amici respectfully urges this Court to follow these vital precedents, which journalists, activists, and ordinary people throughout the Circuit have relied upon for more than 20 years. In this brief, FAC will focus on why Batzel and its progeny are legally sound, and on the terrible consequences that would result if this Court were to abandon the well-established right to immediate appeals from the denial of SLAPP motions.[4]

As detailed below, SLAPP appeals fit squarely within the collateral order doctrine. SLAPP motions are intended to ensure that the burdens of protracted litigation do not impede speech on matters of public concern. That purpose would be defeated if a defendant is forced to undergo costly and invasive discovery and trial proceedings before an appellate court can determine whether the case should have been dismissed at the outset. See Section II.A.

The primary argument offered against applying the collateral order doctrine – that SLAPP rulings are not separate from the "merits" – overlooks established law finding immediate review to be appropriate where the purpose is to protect important public interests that would be imperiled if the case proceeded to trial. See Section II.B. That is true of SLAPP proceedings: if the court finds that a

---

[4] FAC understands other amici are addressing the continued application of the SLAPP statute in federal court. FAC takes no position on the underlying lawsuit.

claim arises from protected speech or petitioning, it then engages in a limited

consideration of the merits to determine whether the defendant should be spared

the burdens of protracted litigation.  That is the same kind of analysis federal

courts routinely conduct when deciding questions of qualified and other official

immunity, and in other analogous proceedings that fall within the collateral order

doctrine.  Id.

Finally, important public policy considerations favor maintaining this

Court's well-established precedent.  See Section III.  The SLAPP statute

recognizes that where a lawsuit targets speech, the litigation process itself is

punitive.  Journalists, activists, and ordinary citizens have faced crushing financial

burdens to defend against meritless, retaliatory SLAPP suits.  Without an effective

SLAPP statute – which necessarily includes an immediate right of review –

speakers are more likely to capitulate, even in the face of meritless lawsuits, or

engage in self-censorship, for fear of becoming embroiled in protracted litigation.

That easily could become the norm if this Court departs from two decades of

settled law, and holds that denials of SLAPP motions are no longer appealable

orders.  Id.

## II. DENIALS OF SLAPP MOTIONS ARE APPEALABLE UNDER THE COLLATERAL ORDER DOCTRINE

"The requirements for collateral order appeal have been distilled down to

three conditions: that an order [1] conclusively determine the disputed question,

5

[2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." <u>Will v. Hallock</u>, 546 U.S. 345, 349 (2006) (quotations omitted).

Recent concurring decisions in this Court that have called for eliminating immediate appeals of the denials of SLAPP motions focus on the second and third conditions. <u>E.g.</u>, <u>Young v. NeoCortext, Inc.</u>, 2024 WL 4987254, at *2 (9th Cir. Dec. 5, 2024) (unpublished) (Desai, J., concurring); <u>Martinez v. ZoomInfo Technologies, Inc.</u>, 82 F.4th 785, 794-95 (9th Cir. 2023) (McKeown, J., concurring); <u>id</u>. at 796 (Desai, J., concurring).[5] But under this Court's longstanding precedent, both of these conditions are met. The very purpose of the SLAPP statute is to protect defendants from drawn-out litigation that inhibits free speech. That purpose would be significantly compromised without the possibility of interlocutory review. SLAPP motions also resolve issues distinct from the merits, in a manner similar to other circumstances where federal courts entertain interlocutory appeals.

---

[5] There does not appear to be any dispute that the first requirement is met, because a decision on a SLAPP motion conclusively determines whether the SLAPP statute applies and if dismissal is required. <u>See</u> <u>DC Comics v. Pacific Pictures</u>, 706 F.3d 1009, 1013 (9th Cir. 2013) ("conclusive" requirement satisfied).

### A.     The SLAPP Statute Confers Immunity From Suit, Which Is Irrevocably Lost Without Immediate Review.

In holding that denials of SLAPP motions are immediately appealable, this Court determined that California's statute confers "an immunity from <u>suit</u>, and not simply a defense against <u>liability</u>." <u>DC Comics</u>, 706 F.3d at 1013 (emphases added). That is consistent with application of the collateral order doctrine, which looks at whether "some particular value of a high order" supports "the interest in avoiding trial" by immediate appellate review. <u>Hallock</u>, 546 U.S. at 352. It is the "avoidance of a trial that would imperil a substantial public interest[] that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." <u>Id.</u> at 353. That squarely applies to the denial of a SLAPP motion.

As this Court has recognized, "[i]t would be difficult to find a value of a higher order than the constitutionally-protected rights to free speech and petition that are at the heart of California's anti-SLAPP statute." <u>DC Comics</u>, 706 F.3d at 1015-16 (quotation and alterations omitted). "Such constitutional rights deserve particular solicitude within the framework of the collateral order doctrine." <u>Id.</u> It also is widely acknowledged that the litigation process itself can pose a serious threat to free expression. The Supreme Court noted almost sixty years ago that "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution [of a lawsuit], unaffected by the prospects of its success or failure." <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 487 (1965). Because "the costs

7

of a successful defense can be the same or greater than what the damage awards would have been," Suzuki Motor v. Consumers Union, 330 F.3d 1110, 1143 (9th Cir. 2003) (Ferguson, C.J., dissenting), publishers "will tend to become self-censors" unless they "are assured freedom from the harassment of lawsuits[.]" Washington Post v. Keogh, 365 F.2d 965, 968 (D.C. Cir. 1966). The "mere pendency" of such an "action will chill the exercise of First Amendment rights." Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd., 542 F.2d 1076, 1082-83 (9th Cir. 1976).

California enacted the SLAPP statute to address this problem, amid "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." C.C.P. § 425.16(a). "Because these meritless lawsuits seek to deplete the defendant's energy and drain his or her resources, the Legislature sought to prevent SLAPPs by ending them early and without great cost to the SLAPP target." Varian Medical Systems, Inc. v. Delfino, 35 Cal.4th 180, 192 (2005) (quotations omitted).

Some recent concurrences have questioned whether Section 425.16 is, in fact, an "immunity" provision, focusing on excerpts from California Supreme Court decisions saying that "'the anti-SLAPP statute neither constitutes – nor enables courts to effect – any type of 'immunity.'" ZoomInfo, 82 F.4th at 794-95

8

(McKeown, J., concurring) (quoting Jarrow Formulas, Inc. v. LaMarche, 31
Cal.4th 728, 738 (2003); Navellier, 29 Cal.4th at 93); ZoomInfo, 82 F.4th at 796
(Desai, J., concurring) (citing Jarrow Formulas, 31 Cal.4th at 738).  But this
misconstrues the context in which that language appeared, and overlooks other
decisions by California's highest court that make clear that the SLAPP statute was
intended to provide immunity from protracted litigation of meritless claims
targeting speech.

In the cited passage from Navellier, the California Supreme Court was
responding to the plaintiff's assertion that a broad reading of the statute would bar
every contract claim related to speech; the Court debunked "the fallacy that the
anti-SLAPP statute allows a defendant to escape the consequences of wrongful
conduct by asserting a spurious First Amendment defense."  29 Cal.4th at 93
(emphasis added).  As it explained, "the anti-SLAPP statute neither constitutes –
nor enables courts to effect – any kind of 'immunity' for breach of a release or of
other types of contracts affecting speech," because it would not preclude a claim
from proceeding if the cause of action did not actually arise from protected
conduct, or if the plaintiff could make the necessary threshold showing.  Id.
(emphasis added).  Otherwise, however, the Court explained that the claim should
be stricken at the earliest stage, because being forced to defend against the lawsuit

would "interfere with and burden the defendant's exercise of his or her rights." Id. at 92-93 (quotations omitted).

In Jarrow Formulas, the Court quoted Navellier to make the same point with respect to malicious prosecution claims. 31 Cal.4th at 738. Here too, the Court emphasized the statutory aim of protecting against burdensome litigation, explaining that the SLAPP statute is intended to dispose of meritless claims at the outset, because "spurious malicious prosecution suits may, like others, 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" Id. at 738-39 (quoting C.C.P. § 425.16(a)).

In other words, the California Supreme Court recognized that if the statute's requirements are met, Section 425.16 effectively immunizes defendants from suit, because the claims are stricken at an early stage to protect them from the substantial burden of further litigation. That is entirely consistent with the collateral order standard enunciated by the U.S. Supreme Court, which looks at whether avoiding the burdens of trial in a particular type of case is necessary to protect a substantial public interest. See Hallock, 546 U.S. at 352.

The California Supreme Court further emphasized this point when directly addressing SLAPP appeals. In Varian, the Court held that "an appeal from the denial of an anti-SLAPP motion automatically stays further trial court proceedings on the merits" of the claims in the motion. 35 Cal.4th at 195. The Court explained

10

that permitting discovery and trial to proceed before the appeal from denial of a SLAPP motion "is inherently inconsistent with the appeal because <u>the appeal seeks to avoid that very proceeding</u>." <u>Id.</u> at 193 (emphasis added). "Indeed, the point of the anti-SLAPP statute is that you have a right <u>not</u> to be dragged through the courts because you exercised your constitutional rights." <u>Id.</u> (quotation omitted). It concluded: "The protections afforded by the anti-SLAPP statute against the harassment and burdens of litigation are in large measure lost if the petitioner is forced to litigate a case to its conclusion before obtaining a definitive judgment through the appellate process." <u>Id.</u> (quotation omitted). And, the Court observed, "[i]n this respect, an appeal from the denial of an anti-SLAPP motion is no different than an appeal from the denial of a motion to compel arbitration." <u>Id.</u>

The California Supreme Court's recognition that the need for immediate appeals of the denial of SLAPP motions "is no different than an appeal from the denial of a motion to compel arbitration" (<u>id.</u>) is especially significant here, given the U.S. Supreme Court's recent decision in <u>Coinbase, Inc. v. Bielski</u>, 599 U.S. 736 (2023). In <u>Bielski</u>, the Court held that when a party appeals from the denial of a motion to compel arbitration, the district court must stay the proceedings until the appeal is resolved. <u>Id.</u> at 738. Although <u>Bielski</u> involved a different, federal statutory scheme, the Court's reasoning squarely applies to the SLAPP statute (as the California Supreme Court recognized in <u>Varian</u>). The U.S. Supreme Court

11

explained that if "the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be <u>irretrievably lost</u> – even if the court of appeals later concluded that the case actually had belonged in arbitration all along." <u>Bielski</u>, 599 U.S. at 743 (emphasis added). Moreover, "[a]bsent a stay, parties also could be forced to settle to avoid the district court proceedings (including discovery and trial) that they contracted to avoid through arbitration." <u>Id.</u> Ultimately, "continuation of proceedings in the district court largely defeats the point of the appeal." <u>Id.</u> (quotation omitted).

All of these rationales apply to SLAPP proceedings: if this Court only reviews the denial of a SLAPP motion <u>after</u> the defendant has been forced to go through discovery and potentially trial, one primary benefit of the SLAPP statute effectively is lost. And as the U.S. Supreme Court noted in the arbitration context in <u>Bielski</u>, SLAPP defendants who have no immediate right to appeal from denial of a SLAPP motion may be pressured to settle, rather than endure protracted litigation, even if they would prevail on appeal. Indeed, these issues are even more serious in SLAPP cases, because settlements to avoid punishing litigation costs might include removing or refraining from speech that an appeals court would find

nonactionable.  That is the kind of chilling effect the SLAPP statute was meant to prevent.  See Section III, infra.

Finally, the Supreme Court recognized in Bielski that the courts' own interests in efficiency favor an effective right of interlocutory appeal.  If an appellate court finds that a case should have been arbitrated only after drawn-out proceedings in the district court, that court "will waste scarce judicial resources – which could be devoted to other pressing criminal or civil matters – on a dispute that will ultimately head to arbitration in any event."  Bielski, 599 U.S. at 743.  "That scenario represents the worst possible outcome for parties and the courts: litigating a dispute in the district court only for the court of appeals to reverse and order the dispute arbitrated."  Id. (quotations omitted).

That point applies with equal force here.  Eliminating interlocutory review of the denial of SLAPP motions will cause district courts to waste time and resources on discovery proceedings, summary judgment, and trials, which may be unnecessary if the appellate court subsequently holds that the case should have been dismissed at the outset.  And if the right to an immediate appeal is abolished, that will "put the federal courts at risk of being swept away in a rising tide of frivolous state actions that would be filed in our circuit's federal courts," because "SLAPP plaintiffs would have an incentive to file or remove to federal courts strategic, retaliatory lawsuits that are more likely to have the desired effect of

13

suppressing a SLAPP defendant's speech-related activities." <u>Makaeff v. Trump University</u>, 736 F.3d 1180, 1187 (9th Cir. 2013) (Wardlaw, J. and Callahan, J., concurring in the denial of rehearing). This forum-shopping would strain the resources of the federal courts and further undermine the free speech rights that the SLAPP statute is designed to protect. <u>Id.</u>

For all of these reasons, the denial of a SLAPP motion is "effectively unreviewable on appeal from a final judgment." <u>Hallock</u>, 546 U.S. at 349.

### B.    SLAPP Motions Resolve Issues Separate From The Merits.

For two decades, this Circuit has recognized that the denial of a SLAPP motion "resolve[s] a question separate from the merits." <u>D.C. Comics</u>, 706 F.3d at 1013 (citing <u>Batzel</u>, 333 F.3d at 1025). There is no reason to depart from this correct, well-settled precedent.

<u>First</u>, although some critics have suggested that SLAPP proceedings in federal court are indistinguishable from motions to dismiss or for summary judgment, that overlooks the first part of the analysis under Section 425.16. "To evaluate an anti-SLAPP motion, a court engages in a two-part inquiry." <u>Doe v. Gangland Productions</u>, 730 F.3d 946, 953 (9th Cir. 2013). "The defendant bears the initial burden to show that the statute applies because the lawsuit arises from defendant's act in furtherance of its right of petition or free speech." <u>Id.</u> <u>Only</u> if the defendant makes this threshold showing does the court consider the plaintiff's

14

probability of prevailing.  Id.  Accord Planned Parenthood Federation v. Center for Medical Progress, 890 F.3d 828, 832 (9th Cir. 2018) (court's discussion of the proper legal standard under prong two only applied "once [defendants] had shown that Plaintiffs' suit arose from Defendants' acts in furtherance of their rights of petition or free speech").

The requirement that the moving party demonstrate that a lawsuit arises from protected conduct is a unique feature of SLAPP litigation, and plainly involves an issue separate from the merits.  See Zucchet v. Galardi, 229 Cal.App.4th 1466, 1479 (2014) ("in establishing that [the] complaint arose from activity protected by the anti-SLAPP statute, it was not" the defendant's "burden to dispute and disprove the truth of those allegations" or to "establish that his actions are constitutionally protected as a matter of law") (citation omitted).  The prong one inquiry reflects "the particular public interests that the anti-SLAPP statute attempts to vindicate," which, as discussed above, is relevant to the collateral order analysis because it shows the rationale for protecting against the burdens of litigation for these kinds of claims.  D.C. Comics, 706 F.3d at 1015.

Second, focusing on whether a SLAPP motion also addresses the merits is irreconcilable with controlling authority.  As summarized by the leading treatise on federal practice, "[o]fficial immunity doctrine … is often inseparable from the merits," yet such "[i]mmunity appeals are one of the categories recognized for

collateral-order appeal." Wright & Miller, 15A Fed. Prac. & Proc. Juris. § 3914.10 (3d ed. June 2024 Update) (emphasis added). See also Marks v. Clarke, 102 F.3d 1012, 1018 (9th Cir. 1996) ("[i]n reviewing the district court's orders, it is often impossible to separate the court's reasoning or decisions regarding qualified immunity from those regarding liability," as the "issues are generally analyzed together and are sometimes simply not susceptible of independent review").

The Supreme Court elaborated on this principle in Mitchell v. Forsyth, 472 U.S. 511 (1985), where it held that orders denying qualified immunity on issues of law are appealable under the collateral order doctrine. As with the SLAPP statute, the purpose of qualified immunity is to protect defendants facing certain types of claims from the burdens of the litigation itself, in recognition of important public interests. Id. at 526; Section II.A, supra. Qualified immunity "thus recognize[s] an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Mitchell, 472 U.S. at 526. "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. (original emphasis). The same is true of the SLAPP statute. Varian, 35 Cal.4th at 193.

Moreover, in determining whether the conduct at issue violated clearly established law for the qualified immunity analysis, courts necessarily consider the merits of the case.  The Supreme Court expressly acknowledged this in <u>Mitchell</u>, explaining that, "[t]o be sure, the resolution of these legal issues <u>will entail consideration of the factual allegations that make up the plaintiff's claim for relief</u>."  472 U.S. at 528 (emphasis added).

The Court then gave examples of other types of orders subject to immediate review, which also require courts to examine the merits of the plaintiff's claims:

> [T]he same is true … when a court must consider whether a prosecution is barred by a claim of former jeopardy or whether a Congressman is absolutely immune from suit because the complained of conduct falls within the protections of the Speech and Debate Clause.  In the case of a double jeopardy claim, the court must compare the facts alleged in the second indictment with those in the first to determine whether the prosecutions are for the same offense, while in evaluating a claim of immunity under the Speech and Debate Clause, a court must analyze the plaintiff's complaint to determine whether the plaintiff seeks to hold a Congressman liable for protected legislative actions or for other, unprotected conduct.

<u>Id.</u>

The Supreme Court concluded that, in holding that such orders are appealable, it "has recognized that a question of immunity is separate from the merits of the underlying action for purposes of the <u>Cohen</u> test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue."  <u>Id.</u> at 528-29 (citing <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337

17

U.S. 541 (1949); <u>Abney v. U.S.</u>, 431 U.S. 651 (1977); <u>Helstoski v. Meanor</u>, 442

U.S. 500 (1979); <u>Nixon v. Fitzgerald</u>, 457 U.S. 731 (1982)).

     Federal courts thus routinely consider the "merits" in evaluating qualified

immunity, in a manner similar to the inquiry under the SLAPP statute. Qualified

immunity also "involves a two-pronged analysis," in which one of the prongs

involves a fact-specific examination of the merits to determine whether "the facts

alleged show the officer's conduct violated a constitutional right." <u>Lacey v.

Maricopa County</u>, 693 F.3d 896, 915 (9th Cir. 2012). <u>See</u> <u>also</u> <u>id.</u> at 916-24

(deciding qualified immunity by analyzing whether pleaded facts sufficiently

stated claims for constitutional violations); <u>Hyde v. City of Willcox</u>, 23 F.4th 863,

869-75 (9th Cir. 2022) (deciding whether plaintiff plausibly alleged constitutional

violations to adjudicate qualified immunity). Even the "clearly established" prong

of the qualified immunity analysis requires consideration of the merits. <u>E.g.</u>, <u>id.</u> at

869 ("[p]laintiffs must point to prior case law that articulates a constitutional rule

specific enough to alert <u>these</u> deputies <u>in this case</u> that <u>their particular conduct</u> was

unlawful") (original emphasis; citation omitted).

     As Judges Wardlaw and Callahan explained in their concurring opinion in

<u>Makaeff</u>, "an order can touch on the merits and still be sufficiently separate from

the merits to satisfy the requirements of the collateral order doctrine." <u>Makaeff</u>,

736 F.3d at 1186 (Wardlaw, J. and Callahan, J., concurring). A court deciding a

SLAPP motion must first determine whether the claim arises from protected speech or petitioning activity.  If so, the court engages in a limited analysis of the merits to answer "the ultimate question," which is "'whether the defendant is being forced to defend against a meritless claim,' not to determine whether the defendant actually committed the relevant tort."  Id. at 1185 n.6, 1186 (citation omitted).  Thus, "while the inquiry on the motion to strike may glance at the merits, its central purpose is to provide an added statutory protection from the burdens of litigation that is unavailable during the ultimate merits inquiry."  Id. at 1185.

This is underscored by the section of the SLAPP statute that provides that if "the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action," and that "no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding."  C.C.P. § 425.16(b)(3).  The California Legislature included that provision to make clear "that the denial of [a SLAPP] motion has no impact at any later stage of the case or in any subsequent action," so as "to not penalize the SLAPP victim for filing and losing an anti-SLAPP motion."  Hutton v. Hafif, 150 Cal.App.4th 527, 549 (2007) (quotation omitted).

In other words, the SLAPP statute makes clear that it is not simply another motion that adjudicates the merits; the denial of a SLAPP motion does <u>not</u> adjudicate the merits of the claims going forward. The SLAPP prong-one test and the limited consideration of the merits under prong two are "merely intermediate steps used to answer" a different "core inquiry" that considers whether the defendant should be protected from having to litigate claims that are likely unmeritorious, because of the threat to First Amendment rights. <u>Makaeff</u>, 736 F.3d at 1185 n.6, 1186 (Wardlaw, J. and Callahan, J., concurring). That is directly analogous to the qualified immunity inquiry, and it fits well within the parameters of the collateral order doctrine as defined by the U.S. Supreme Court.

## III. INTERLOCUTORY APPEALS FOR DENIALS OF SLAPP MOTIONS ARE AN IMPORTANT SUBSTANTIVE PROTECTION FOR PUBLIC INTEREST SPEECH.

The right to interlocutory appeal is integral to the purpose and proper function of California's SLAPP statute, which establishes a substantive threshold protection against meritless litigation that would chill speech about matters of public interest. These protections are vital for public accountability, as one advocate and scholar explained: "SLAPP suits are often filed by individuals or corporations in positions of power, including businesspersons, politicians, public figures, and corporations, looking to cover up the truth or silence debate." Laura Lee Prather, "SLAPP Suits: An Encroachment on Human Rights of a Global

Proportion and What Can Be Done About It," 22 Nw. J. Hum. Rts. 49, 53-54

(2023) (citing Rebecca Bonello Ghio et al., "Shutting Out Criticism: How SLAPPs

Threaten European Democracy," The Coalition Against SLAPPs in Europe, 2

(Mar. 2022), https://www.the-case.eu/wp-content/uploads/2023/04/CASE

reportSLAPPsEurope.pdf).  "The issues that are most commonly at the forefront of

SLAPP cases include allegations of corruption or wrongdoing, illicit financial

gains, and criminal behavior by people or corporations with resources or

connections to hide such misdeeds."  Id. at 54 (citing Bonello Ghio, supra, at 2).

SLAPP suits also are increasingly common:  "A staggering 73% of

investigative journalists surveyed" across 41 counties, including the U.S.,

"reported they received communications threatening legal action as a result of

information they published."  Id. at 51 (citing "Unsafe for Scrutiny: Examining the

pressures faced by journalists uncovering financial crime and corruption around

the world," Foreign Policy Center & Justice for Journalists (Mar. 2020), https://fpc.

org.uk/publications/unsafe-for-scrutiny/; and Bonello Ghio, supra, at 4).

The availability of immediate review is critical to the protections that

SLAPP statutes provide.  Although many such statutes provide for fee recovery,

that alone is unlikely to deter a wealthy, powerful plaintiff from pursuing meritless

litigation designed to chill speech; it may be viewed as merely a cost of doing

business.  Eliminating the right to interlocutory appeal for denial of SLAPP

21

motions in federal court would therefore "undermine[] the central purpose of the statute:  screening out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery."  Baral v. Schnitt, 1 Cal.5th 376, 392 (2016).

In any given case, a district court's denial of a SLAPP motion may be the correct decision, and an immediate appeal may not change the result.  But in many cases, this Court has found that the denial was in error, in whole or in part.  And even a decision that narrows overbroad pleadings to only the items or parties that are properly at issue provides a significant substantive benefit to petition and speech rights, which would be lost if the right to interlocutory appeal was abandoned.  The following sections provide some illustrative examples of how speech and petitioning rights would be negatively affected by the absence of these substantive protections.

### A.    Interlocutory Appeals Are Critical To Protect Ordinary People As Well As Professional Journalists From The Onerous Burden of Defending Meritless Lawsuits.

Although many SLAPP suits target the media, they also often are directed at individuals with even fewer resources.[6]  "With the advent of social media,

---

[6] That is not to suggest that the impact on traditional publishers should be ignored; SLAPP suits impose substantial burdens on those defendants as well, many of whom already are facing economic pressures.  See, e.g., Politico, "The News Business Really Is Cratering," January 27, 2024, https://www.politico.com/news/magazine/2024/01/27/is-the-journalism-death-spasm-finally-here-00138187.

individuals became prolific publishers.  Now, with people musing publicly online and businesses feeling defenseless against these critics, the debate over the suits is shifting to the Web."  Dan Frosch, "Venting Online, Consumers Can Find Themselves in Court," New York Times (May 31, 2010) https://www.nytimes.com/2010/06/01/us/01slapp.html.

This Court's decision in <u>Schwern v. Plunkett</u>, 845 F.3d 1241, 1246 (9th Cir. 2017), provides one example:  a SLAPP suit was brought against a woman whose ex-husband was arrested for allegedly horrific physical abuse; he then sued her for defamation and other torts after online comments were posted about his arrest. Although there was no dispute that Oregon's SLAPP statute applied, the district court denied the defendant's motion on the ground that the plaintiff had established a <u>prima facie</u> case.  On interlocutory appeal, however, this Court reversed, finding that the plaintiff had failed to show the defendant was the source of the online posts.  Absent interlocutory review, the lawsuit would have proceeded through discovery and possibly through trial – subjecting the defendant (and her family) to the cost and emotional trauma of defending against protracted litigation.[7]

---

[7] Tragically, the defendant died during the litigation; because her ex-husband continued to pursue the case against her estate, her father was substituted in as the party on appeal.  <u>Id.</u> at 1243 n.1.

The impact of bearing these costs cannot be underestimated. The right to appeal after a trial has been completed is small solace to an individual defendant or small publisher without the resources to mount a defense. One experienced First Amendment lawyer noted that "the cost of defending a single Slapp suit 'could easily wipe out the average person's savings before the case is half done.'" Frosch, supra.

Nor are professional publishers immune from the financial pressures of litigation. For example, The Center for Investigative Reporting ("CIR") spent almost six years in litigation over an article about a matter of undisputed public interest, which raised important "questions about U.S. government funds given to [international charity] Planet Aid for aid in southern Africa, … as well as the organization's ties to an alleged cult." D. Victoria Baranetsky, et al., "International Charity Planet Aid Pays $1.925 Million to Settle Six-Year Libel Lawsuit," Reveal (Oct. 20, 2022), https://revealnews.org/press/international-charity-planet-aid-pays-1-925-million-to-settle-six-year-libel-lawsuit/. CIR ultimately was successful, in a decision that this Court affirmed. Planet Aid, Inc. v. Reveal, 44 F.4th 918, 920 (9th Cir. 2022). But CIR's libel insurance was nearly depleted after just two years of litigation, and it could continue its defense only because two private law firms agreed to defend the case pro bono for the following four years. Baranetsky,

supra.[8]  See also id. ("Robert J. Rosenthal, CEO of CIR, added, 'Without the generous pro bono legal representation …, The Center for Investigative Reporting might have been destroyed.'")  Those resources and volunteers are not always available to SLAPP defendants, who may have no choice but to acquiesce to a plaintiff's demands rather than face the costs of litigation – a problem that would be compounded exponentially if interlocutory appeals were not available for denials of SLAPP motions.[9]

---

[8] During discovery, Planet Aid also attempted to use its SLAPP suit to "learn the names of CIR's confidential sources and to gain unbridled access to what amounted to nearly a half a million documents that CIR's reporters had assembled examining Planet Aid's activities across the globe," according to one of CIR's attorneys.  Id.  That prospect is a separate concern for publishers facing baseless SLAPP suits, in which the plaintiff's aim may be to identify whistleblowers or other sources for retaliation.

[9] Another publisher, faced with mounting litigation costs from a lawsuit filed by the then-owner of Washington's NFL Team, chose to walk away from fee recovery available under Washington D.C.'s SLAPP statute, rather than continue to incur legal bills.  See Paul Farhi, "Redskins owner Dan Snyder drops lawsuit against Washington City Paper," Washington Post (Sept. 10, 2011, 11:45 PM), https://www.washingtonpost.com/sports/redskins-owner-dan-snyder-drops-lawsuit-against-washington-city-paper/2011/09/09/gIQA3hf1IK_story.html.  As the Washington City Paper's editor explained, "City Paper is a small news organization with limited resources, and defending ourselves against this lawsuit has cost massive amounts of time and money, well beyond the $34,308.91 that readers have contributed to our legal defense fund."  Mike Madden, "Dan Snyder Drops Lawsuit against Washington City Paper, Dave McKenna," Washington City Paper (Sept. 11, 2011) https://washingtoncitypaper.com/article/464131/dan-snyder-drops-lawsuit-against-washington-city-paper-dave-mckenna/.

Examples from jurisdictions without any SLAPP laws prove the point. In one case, Mother Jones magazine published an article about a major political donor and his company, "after it emerged that his company . . . and its subsidiaries had given $1 million to Mitt Romney's super-PAC." Clara Jeffery & Monika Bauerlein, "We Were Sued by a Billionaire Political Donor. We Won. Here's What Happened," Mother Jones (Oct. 8, 2015), https://www.motherjones.com/media/2015/10/mother-jones-vandersloot-melaleuca-lawsuit/. The subjects of the article sued Mother Jones in Bonneville County, Idaho, seeking damages of up to $74,999 to prevent the case from being removed to federal court. Id. Because Idaho had no SLAPP statute then, Mother Jones was forced to litigate the case for years. Although the judge ultimately found that "all of the statements at issue are non-actionable truth or substantial truth,"[10] the trial court proceedings alone lasted more than two years and "cost nearly $3 million, of which more than $600,000 came out of Mother Jones' pocket"; that "ate up" Mother Jones' reserve fund and also subjected the organization to overreaching discovery. See Jeffrey & Bauerlein, supra; Monika Bauerlein, "The Legal War Against Mother Jones Keeps Getting More Intense," Mother Jones (Nov. 2, 2021), https://www.motherjones.com/media/2021/11/the-legal-war-against-mother-jones-keeps-getting-more-intense/. If

---

[10] VanderSloot v. Foundation for Nat'l Progress, No. CV-2013-532, at 53 (Idaho 7th Dist. Ct. Oct. 6, 2015).

26

Mother Jones had been able to rely on the protections of a SLAPP statute, it could have avoided intrusive discovery, and slashed its fees, by filing an early special motion to dismiss and, if needed, an interlocutory appeal.[11]

Indeed, individuals and companies with limited resources may be forced to withdraw public comments or refrain from speaking further in the face of a litigation threat.  The former general counsel for Yelp, Laurence Wilson, has acknowledged the impact of such threats against users who share critical reviews on the site:  "'Businesses, unfortunately, have a greater incentive to remove a negative review than the reviewer has in writing the review in the first place,' Mr. Wilson said."  Frosch, <u>supra</u>.

In a quintessential SLAPP suit, the plaintiff "will achieve its objective if it depletes [the] defendant's resources or energy.  The aim is not to win the lawsuit

---

[11] Looking at cases litigated before the advent of SLAPP statutes further illustrates this point.  In <u>NAACP v. Claiborne Hardware</u>, 458 U.S. 886 (1982), for example, "17 white merchants" sued the NAACP, another organization, and 146 individuals for an alleged "conspiracy" consisting primarily of a boycott and other protected speech advocating "racial equality and integration."  <u>Id.</u> at 889-90.  The trial lasted eight months; the trial court finally issued a decision against the plaintiffs in August 1976.  <u>Id.</u> at 890.  Four years later, the Mississippi Supreme Court held the entire boycott was illegal because of unlawful actions by a few individuals.  <u>Id.</u> at 894-95.  That decision was finally reversed by the U.S. Supreme Court in July 1982 – almost thirteen years after the litigation started.  <u>Id.</u> at 896.  The NAACP bore the immense burden and expense of the protracted litigation, which might have been avoided if it had the benefit of a SLAPP statute like California's and the availability of an interlocutory appeal in the event of an adverse ruling.

but to detract the defendant from his or her objective, which is adverse to the plaintiff." Church of Scientology v. Wollersheim, 42 Cal.App.4th 628, 645 (1996), overruled in part on other grounds, Equilon Enters. v. Consumer Cause, Inc., 29 Cal.4th 53 (2002). The steeper the costs of litigating, the more likely a SLAPP plaintiff will be successful in silencing dissenters. The availability of interlocutory appeal allows SLAPP defendants to obtain review, and if the SLAPP motion was erroneously denied, to avoid what may be insurmountable costs of litigation. The abandonment of interlocutory appeals would force many more SLAPP defendants to accept coercive settlements, or refrain from speaking in the face of litigation threats, rather than risk the costs of prolonged discovery and litigation.

### B. Jurisdictions Without SLAPP Protections Become Targets For Forum-Shopping.

Under today's legal landscape, SLAPP plaintiffs benefit from the patchwork of SLAPP statutes. They routinely forum-shop for jurisdictions where the likelihood of keeping a lawsuit alive are greatest – namely, those jurisdictions without SLAPP laws, or where key protections (like interlocutory appeals) are not available. Prather, supra, at 58, n.37 (citing Nunes v. NBCUniversal Media, 582 F. Supp. 3d 387 (E.D. Tex. 2022)) ("courts across the country disagree about whether state Anti-SLAPP provisions apply in federal diversity cases. This confusion has led to rampant forum shopping by zealous plaintiffs who want to avoid the reach of

Anti-SLAPP laws and willingly make spurious jurisdictional allegations to circumvent their protections.")

Former Congressman Devin Nunes, for example, has filed almost a dozen libel suits since March 2019 – none in his home state of California. E.g., Nunes, 582 F. Supp. 3d at 404 (finding Nunes' defamation suit against NBCUniversal was filed improperly in the Eastern District of Texas, where there was no personal jurisdiction, and transferring the case to the Southern District of New York); Josh Gerstein, "Judge tosses Devin Nunes suit over Esquire article," Politico (Apr. 25, 2023, 09:41 PM) https://www.politico.com/news/2023/04/25/devin-nunes-libel-suit-esquire-hearst-00093844.  In one lawsuit, Nunes sought $250 million in damages against Twitter (now X.com), for a series of posts making fun of him. Gerstein, id.  He filed another suit against the parent company of his hometown newspaper, The Fresno Bee, for $150 million – but he filed both lawsuits in Virginia, which until recently, had no SLAPP statute.  Gabe Rottman, "Devin Nunes's lawsuit in Virginia against his California hometown paper underscores the need for stronger anti-SLAPP laws," Reporters Committee for Freedom of the Press (Apr. 16, 2019), https://www.rcfp.org/devin-nuness-lawsuit-in-virginia-against-his-california-hometown-paper-underscores-the-need-for-stronger-anti-slapp-laws/.  Although Nunes' motivation for choosing that venue has not been revealed, the Eastern District of Virginia raised concerns over Nunes's tactics:

"[T]he Court has significant concerns about forum shopping, especially given that Nunes works in Washington, D.C., not in Virginia."  Nunes v. WP Co., LLC, 2020 WL 2616707, at *6 (E.D. Va. May 21, 2020).

For the Ninth Circuit to abandon its established law permitting interlocutory appeals for SLAPP denials would give forum-shopping plaintiffs a greater chance of keeping litigation alive, putting what may be insurmountable economic pressures on defendants, even if this Court were ultimately to determine that the claims had no merit.  Recognizing that "the prevention of forum shopping would promote wise judicial administration," Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1367-68 (9th Cir. 1990), this Court should continue to follow its decisions permitting interlocutory appeals of SLAPP motion denials.

## IV.    CONCLUSION

Countless media outlets, community organizers, activists, and individuals would not have the resources to engage in discovery and protracted litigation of a SLAPP suit before having an opportunity to seek review from a denial of a SLAPP motion.  Without the right to immediate appeal, speakers might well be forced to retract their statements from public debate, pay settlements, or otherwise acquiesce to the demands of SLAPP plaintiffs.  This is the evil that the SLAPP law was intended to address, by protecting the strong "public interest" in the people's

"continued participation in matters of public significance," which "should not be chilled through abuse of the judicial process." Cal. Code Civ. Proc. § 425.16(a).

For all of these reasons, FAC respectfully urges this Court not to overrule its precedent making denials of SLAPP motions immediately appealable.

RESPECTFULLY SUBMITTED this 24th day of March, 2025.

**DAVIS WRIGHT TREMAINE LLP**
KELLI L. SAGER
DAN LAIDMAN
SAMUEL A. TURNER

**FIRST AMENDMENT COALITION**
DAVID LOY
ANN CAPPETTA

**YELP INC.**
JAMES DAIRE

By /s/ *Dan Laidman*
       Dan Laidman

Attorneys for Amici Curiae
First Amendment Coalition and
Yelp Inc.

31

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29(a)(5) and 32(g)(1), and

Circuit Rule 29-2(c)(3), according to the word processing system used to prepare

this brief, the word count is 6,994 words, not including the caption, tables,

signature block, Corporate Disclosure Statement And Statement of Compliance,

and this certificate.

RESPECTFULLY SUBMITTED this 24th day of March, 2025.

**DAVIS WRIGHT TREMAINE LLP**
KELLI L. SAGER
DAN LAIDMAN
SAMUEL A. TURNER

**FIRST AMENDMENT COALITION**
DAVID LOY
ANN CAPPETTA

**YELP INC.**
JAMES DAIRE


By /s/ *Kelli L. Sager*
        Kelli L. Sager

Attorneys for Amici Curiae
First Amendment Coalition and
Yelp Inc.