**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GOPHER MEDIA LLC, a Nevada Limited Liability Corporation formerly known as Local Clicks doing business as Doctor Multimedia; AJAY THAKORE, an individual, | No. 24-2626 <br><br> D.C. No. 3:21-cv-01909-RBM-VET |
| *Plaintiffs - Appellants*, | OPINION |
| v. | |
| ANDREW MELONE, an individual; AMERICAN PIZZA MANUFACTURING, a California business entity also known as American Pizza Mfg., | |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Southern District of California
Ruth Bermudez Montenegro, District Judge, Presiding

Argued and Submitted June 24, 2025
Seattle, Washington

Filed October 9, 2025

Before: Mary H. Murguia, Chief Judge, and Consuelo M.
Callahan, Milan D. Smith, Jr., Michelle T. Friedland, Mark
J. Bennett, Daniel P. Collins, Kenneth K. Lee, Daniel A.
Bress, Patrick J. Bumatay, Lawrence VanDyke and Holly
A. Thomas, Circuit Judges.

Opinion by Judge Murguia;
Concurrence by Judge Bennett;
Concurrence by Judge Bress

## SUMMARY[*]

### Anti-SLAPP Statute / Collateral Order Doctrine

Overruling *Batzel v. Smith*, 333 F.3d 1018 (9th Cir.
2003), and dismissing an appeal for lack of jurisdiction, the
en banc court held that a district court's denial of a motion
to strike under the California anti-SLAPP statute does not
satisfy the requirements for an interlocutory appeal under the
collateral order doctrine.

Agreeing with other circuits, the en banc court held that
orders denying anti-SLAPP motions under California's
statute are not immediately appealable because such orders
do not resolve issues "completely separate from the merits
of the action" and do not render the decision "effectively
unreviewable on appeal from a final judgment."

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

For purposes of this opinion, the en banc court assumed that California's anti-SLAPP statute applies in federal court.

Concurring, Judge Bennett, joined by Judge Callahan, wrote that he joined the majority opinion in full and wrote separately to state that California's anti-SLAPP special-motion and attorney-fee-shifting provision create a substantive right, and no federal rule controls or directly collides with that right. Thus, the anti-SLAPP provisions apply in federal court under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny.

Concurring in the judgment, Judge Bress, joined by Judges Collins, Lee, and Bumatay, wrote that it would have been better for the en banc court to address the issue of federal-court application, join the overwhelming majority view, and hold that California's anti-SLAPP statute is a state procedural device that does not apply in federal court.

## COUNSEL

Chase A. Cobern (argued), Munck Wilson Mandala LLP, Dallas, Texas; Marina V. Bogorad and Anton N. Handal, Munck Wilson Mandala LLP, Los Angeles, California; Pamela C. Chalk, Doctor Multimedia, La Jolla, California; for Plaintiffs-Appellants.

Owen M. Praskievicz (argued) and Daniel E. Gardenswartz, Solomon Ward Seidenwurm & Smith LLP, San Diego, California, for Defendants-Appellees.

Grayson Clary, Bruce D. Brown, Lisa Zycherman, Mara Gassmann, and Abigail Sintim, Reporters Committee for Freedom of the Press, Washington, D.C.; Theodore J. Boutrous, Jr., Katie Townsend, Michael H. Dore, and Zachary C. Freund, Gibson Dunn & Crutcher LLP, Los Angeles, California; for Amici Curiae Reporters Committee for Freedom of the Press and 25 Media Organizations.

Chad E. Deveaux, Patrick M. Ryan, Michael D. Abraham, Tyler M. Cunningham, and Stephen E. Smith, Bartko Pavia LLP, San Francisco, California, for Amici Curiae Los Angeles Times and the California Hospital Association.

Daniel A. Laidman, Kelli L. Sager, and Samuel A. Turner, Davis Wright Tremaine LLP, Los Angeles, California; David Loy and Ann Cappetta, First Amendment Coalition, San Rafael, California; James Daire, Yelp Inc., San Francisco, California; for Amici Curiae First Amendment Coalition and Yelp Inc..

## OPINION

MURGUIA, Chief Circuit Judge:

We voted to decide this case en banc to reconsider the appropriateness of our court's interlocutory review of a district court order denying a motion to strike under California's anti-SLAPP statute.[1] In *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), we held that we have jurisdiction to review such orders pursuant to the collateral order doctrine. Upon reexamination, we now conclude that a district court's denial of a motion to strike under the California anti-SLAPP statute does not satisfy the requirements for an interlocutory appeal under the collateral order doctrine. We reach this conclusion because such an order does not resolve issues "completely separate from the merits of the action" and does not render the decision "effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). Accordingly, we overrule *Batzel* and dismiss this appeal for lack of jurisdiction.[2]

---

[1] The SLAPP acronym stands for "Strategic Lawsuit Against Public Participation." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 886 (9th Cir. 2016). Anti-SLAPP statutes have been passed in various states, including California, to combat "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Id.* (citing Cal. Civ. Proc. Code § 425.16(a)); *see also FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1160–61 (Cal. 2019).

[2] We do not reconsider our precedent in *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), and we assume for purposes of this opinion that California's anti-SLAPP statute

I

Although we are deciding this case as an initial matter en banc, our jurisdictional analysis does not turn on the particular factual allegations here. Therefore, we only briefly recount the factual allegations and procedural details.

In July 2020, Appellee Andrew Melone opened Appellee American Pizza Manufacturing ("APM") in the La Jolla neighborhood of San Diego, California. APM serves uncooked pizzas and pasta that customers can bake at home. This is commonly referred to as a "take-n-bake" business model. Appellant Ajay Thakore is a La Jolla resident and the owner of Appellant Gopher Media LLC. Gopher Media "is a digital marketing agency."

This case's history began in late 2020 when the City of San Diego converted the parking spaces outside of APM to 15-minute parking zones. As alleged in the underlying countercomplaint, Thakore frequented businesses near APM, including a competing business in which Thakore is alleged to own a 25% financial stake, and parked his car in the spaces outside of APM for extended periods of time. Apparently upset with the new 15-minute time limit, Thakore initiated a series of odd exchanges between the parties, which culminated in this litigation. Thakore and Gopher Media filed a lawsuit against Melone and APM in the United States District Court for the Southern District of California, alleging harassment, discrimination, unfair competition, and other claims. Specifically, Thakore and Gopher Media alleged that Melone called Thakore a racial

---

applies in federal court based on the principles set forth in *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938). *See Newsham*, 190 F.3d at 972–73.

slur, tried to intimidate Thakore from parking in front of APM, and kicked Thakore's handicapped dog. They also alleged that APM falsely advertised its use of fresh ingredients when the restaurant really uses "frozen crust." Melone and APM filed a countercomplaint alleging defamation, trade libel, and unfair business practices. Relevant to this appeal, the operative countercomplaint alleges that Gopher Media, under the control of Thakore, paid its employees to leave over one hundred negative reviews of APM on websites such as Yelp.com and Google.com, and that Thakore made false statements about Melone and APM on his Instagram social media account.

In response to the countercomplaint, Thakore and Gopher Media filed an anti-SLAPP motion to strike the countercomplaint under California Civil Procedure Code § 425.16. They asserted that the internet reviews and other comments were speech in relation to a public issue, and therefore, the comments constituted protected First Amendment speech. The district court denied the motion, and Thakore and Gopher Media filed this interlocutory appeal.

After hearing oral argument, a three-judge panel of this court refrained from issuing a decision and instead directed the parties "to file supplemental briefs addressing whether this case should be heard en banc to reconsider (1) whether California's anti-SLAPP statute applies in federal court, and (2) whether the denial of a motion to strike under California's anti-SLAPP statute is immediately appealable under the collateral order doctrine." As to the first question posed by the three-judge panel's order, neither side argues in favor of overruling our precedent holding that the California anti-SLAPP statute applies in federal court under the *Erie* doctrine. As to the second question, Thakore and

8    GOPHER MEDIA LLC V. MELONE

Gopher Media argue that *Batzel* was correctly decided and that the importance and independence of anti-SLAPP rights make their denial subject to immediate appeal. In contrast, Melone and APM assert that an order denying an anti-SLAPP motion is unappealable under the collateral order doctrine. They also highlight the potential for a defendant to abuse the rule we adopted in *Batzel* by using the interlocutory appeal process to unnecessarily delay progression of a lawsuit.

A majority of the non-recused active judges agreed that this case should be decided en banc so that our governing precedent could be reconsidered. *Gopher Media LLC v. Melone*, 129 F.4th 1196 (9th Cir. 2025) (mem.); Fed. R. App. P. 40(g).

II

Generally, our jurisdiction is limited to appeals from a final decision by the district court. 28 U.S.C. § 1291. But the collateral order doctrine establishes "a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (citation modified). To fall into this narrow class of appealable nonfinal orders, a district court decision must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349 (alterations in original) (quoting P.*R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949). An issue is completely separate from the merits if it is "significantly different" and

"conceptually distinct" from the "fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Johnson v. Jones*, 515 U.S. 304, 314 (1995) (citation omitted). A court considers whether an order is "effectively unreviewable" by considering "the value of the interests that would be lost through rigorous application of a final judgment requirement." *Will*, 546 U.S. at 351–52 (quoting *Digit. Equip. Corp.*, 511 U.S. at 878–79). In making the "effectively unreviewable" determination, "we do not engage in an individualized jurisdictional inquiry. Rather, our focus is on the entire category to which a claim belongs." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (citation modified). "The Supreme Court has repeatedly emphasized that these requirements are stringent and that the collateral-order doctrine must remain a narrow exception." *SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 724 (9th Cir. 2017).

In *Batzel*, we held that we have jurisdiction to review orders denying anti-SLAPP motions under California's statute pursuant to the collateral order doctrine. We concluded that the "[d]enial of an anti-SLAPP motion resolves a question separate from the merits in that it merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed." *Batzel*, 333 F.3d at 1025. We also reasoned that "[i]f the defendant were required to wait until final judgment to appeal the denial of a meritorious anti-SLAPP motion, a decision by this court reversing the district court's denial of the motion would not remedy the fact that the defendant had been compelled to defend against a meritless claim brought to chill rights of free expression." *Id.* To that end, we found it "instructive" that California's anti-SLAPP statute expressly provides that an order denying an anti-SLAPP motion may be appealed immediately in

California state court. *Id.* A decade later, in *DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009 (9th Cir. 2013), we reaffirmed *Batzel*, holding that the Supreme Court's intervening decision in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), did not disturb our earlier decision.

Since that time, several members of our court have called for reconsideration of *Batzel* due to an enduring disagreement about whether the denial of an anti-SLAPP motion meets the collateral order doctrine's stringent requirements. *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 835–38 (9th Cir. 2018) (Gould, J., concurring); *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1182–86 (9th Cir. 2016) (Kozinski, J., concurring); *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188–92 (9th Cir. 2013) (Watford, J., dissenting from the denial of rehearing en banc); *Martinez v. ZoomInfo Techs., Inc.*, 82 F.4th 785, 794, 796–97 (9th Cir. 2023) (McKeown, J., concurring, and Desai, J., concurring), *vacated*, 90 F.4th 1042 (9th Cir. 2024) (mem.). In addition, other circuits have held that the denial of an anti-SLAPP motion does not satisfy the collateral order doctrine. *E.g.*, *Ernst v. Carrigan*, 814 F.3d 116, 119 & n.1 (2d Cir. 2016) (discussing Vermont's anti-SLAPP statute); *Coomer v. Make Your Life Epic LLC*, 98 F.4th 1320, 1328–29 (10th Cir. 2024) (discussing Colorado's anti-SLAPP statute). We have noted these developments and now hold that orders denying anti-SLAPP motions under California's

statute are not immediately appealable under the collateral order doctrine.[3]

## III

### A

To begin, orders denying anti-SLAPP motions under California's statute do not resolve questions "completely separate from the merits." *Will*, 546 U.S. at 349 (quotation marks omitted). In *Batzel*, we held that a ruling under California's anti-SLAPP statute involves a question completely separate from the merits because "it merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed." 333 F.3d at 1025. But our experience with anti-SLAPP cases over the ensuing two decades has shown that the questions that must be answered to resolve an anti-SLAPP motion are in fact "inextricably intertwined with the merits of the litigation." *Planned Parenthood*, 890 F.3d at 836 (Gould, J., concurring).

California's anti-SLAPP statute requires a two-step analysis. At the first step, a court must decide whether a plaintiff's claim arises from any act "in furtherance of the person's right of petition or free speech," Cal. Civ. Proc. Code § 425.16(b)(1), which necessarily involves reviewing the "content" and "context" of the factual allegations in a plaintiff's complaint. *FilmOn.com Inc.*, 439 P.3d at 1160, 1165. At the second step, a court must decide whether "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). These questions are not "neat abstract issues

---

[3] To be sure, nothing in our holding abrogates a district court's ability to certify a question for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

of law" that can be decided once and will not reemerge at trial. *Johnson*, 515 U.S. at 317 (citation omitted); *Coomer*, 98 F.4th at 1328 ("[A] principal purpose of the separability requirement[] [is] preventing piecemeal appellate review."); *cf. Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985) (explaining that a question of law satisfies the "conceptually distinct" requirement under the collateral order doctrine because a court "need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim"). Instead, the anti-SLAPP analysis intertwines factual and legal questions, which requires a court to go beyond "merely find[ing] that such merits may exist." *Batzel*, 333 F.3d at 1025. Even purely legal issues bearing on whether there "is a probability that the plaintiff will prevail on the claim," Cal. Civ. Proc. Code § 425.16(b)(1), are likely to reemerge at later procedural stages, which would unnecessarily create the need for "piecemeal appellate review." *Coomer*, 98 F.4th at 1328. Therefore, "[g]iven the fact-dependent nature of the anti-SLAPP analysis," the denial of an anti-SLAPP motion is not "conceptually distinct" from the merits of a plaintiff's claims. *Coomer*, 98 F.4th at 1326, 28 (citing *Johnson*, 515 U.S. at 314).

B

Additionally, orders denying California anti-SLAPP motions are not "effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349 (quoting *Metcalf & Eddy*, 506 U.S. at 144). The Supreme Court has "routinely require[d] litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system." *Mohawk Indus., Inc.*, 558 U.S. at 108–09. Although we still recognize that some important interest may be lost if a defendant must wait to appeal a final

judgment in an anti-SLAPP case—such as the potential
unfairness of having to defend a meritless action all the way
through trial—this lost interest does not render the decision
"effectively unreviewable" for purposes of the collateral
order doctrine because deferring review of these motions
until final judgment will not "so imperil[] the interest as to
justify the cost of allowing immediate appeal of the entire
class of relevant orders."[4] *Id*. at 108. Indeed, our court has
already reached this conclusion about orders *granting* an
anti-SLAPP motion under California's statute. *Hyan v.
Hummer*, 825 F.3d 1043, 1046–47 (9th Cir. 2016) (per
curiam) (holding that the district court's order granting an
anti-SLAPP motion against two out of three defendants was
not immediately appealable under the collateral order
doctrine because an erroneous grant of an anti-SLAPP
motion is "fully reviewable" and "can be fully remedied on
appeal"). Thus, our holding in this case unifies the approach
we use for anti-SLAPP motions under the California statute;
whether the motion is granted or denied, a party may not take
an interlocutory appeal as of right from that decision under
the collateral order doctrine. *See Mohawk Indus., Inc.*, 558
U.S. at 107.

---

[4] One way the California Legislature sought to protect the interest of
having to defend a meritless action is through the right to recover
attorneys' fees, and our decision today does not affect that protection.
*FilmOn.com Inc.*, 439 P.3d at 1161 ("[T]he Legislature shifted . . . fees
onto the lawsuit filer to compensate the prevailing defendant for the
undue burden of defending against litigation designed to chill the
exercise of free speech and petition rights." (citation modified)). If a
defendant successfully challenges the denial of an anti-SLAPP motion
on appeal after a final judgment, then the defendant is entitled to obtain
the attorneys' fees required to defend against the SLAPP-related appeal.
Cal. Civ. Proc. Code § 425.16(c)(1).

Moreover, the California anti-SLAPP statute's provision allowing for an interlocutory appeal of denials of anti-SLAPP motions in state court does not alter our conclusion on this issue.   In *Batzel*, we found it "instructive" that California's anti-SLAPP statute expressly provides for an immediate interlocutory appeal upon denial of an anti-SLAPP motion in California state court because it "demonstrates that California lawmakers wanted to protect speakers from the trial itself rather than merely from liability." 333 F.3d at 1025.   We characterized California's anti-SLAPP statute "in the nature of immunity" and reasoned that the denial of an anti-SLAPP motion should be immediately appealable for the same reasons that a denial of an immunity defense is.   *Id.*   However, since *Batzel*, California has discussed anti-SLAPP protection in a way that casts doubt on our analogy between anti-SLAPP protection and immunity defenses. *See Ernst*, 814 F.3d at 121 ("While anti-SLAPP statutes have much in common with immunity statutes, the California courts have ruled that the California statute . . . does not provide . . . 'a substantive immunity from suit.'" (quoting *Liberty Synergistic Inc. v. Microflo Ltd.*, 718 F.3d 138, 148 n.9 (2d. Cir. 2013) (discussing *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737 (Cal. 2003)).   Even if that analogy were correct, the Supreme Court has ruled that not every district court decision denying immunity is entitled to an interlocutory appeal under the collateral order doctrine—if there are fact-based issues entangled in the immunity determination, then the decision does not satisfy the collateral order doctrine's requirements.   *See Johnson*, 515 U.S. at 307.   It remains that the collateral order doctrine does not extend to denials of anti-SLAPP motions under the California statute because "[e]ffective appellate review can

GOPHER MEDIA LLC V. MELONE          15

be had by other means." *Mohawk Indus., Inc.*, 558 U.S. at 114.

IV

For the foregoing reasons, we overrule *Batzel*'s holding, but we confine our en banc consideration to orders denying motions to strike under California's anti-SLAPP statute. We do not address the application of the collateral order doctrine to other states' anti-SLAPP statutes because those statutes are not currently before us.

**APPEAL DISMISSED AND CASE REMANDED.** Each side shall bear their own costs.

_____

BENNETT, Circuit Judge, joined by CALLAHAN, Circuit Judge, concurring:

I join the majority opinion in full. But I write separately because I believe that California's anti-SLAPP [1] special-motion and attorney-fee-shifting provisions, Cal. Civ. Proc. Code § 425.16(b)(1), (c)(1) (together, the "anti-SLAPP provisions"), create a substantive right.[2] In substance, these provisions provide defendants with a pretrial claim for attorneys' fees for plaintiffs' abuse of the judicial process by filing a meritless SLAPP suit. No federal rule controls or directly collides with that right. Thus, the anti-SLAPP provisions apply in federal court under *Erie*

_____

[1] A "SLAPP" is a "strategic lawsuit against public participation." *Ketchum v. Moses*, 17 P.3d 735, 738 (Cal. 2001).

[2] My concurrence addresses only the special-motion and attorney-fee-shifting provisions under Cal. Civ. Proc. Code § 425.16(b)(1), (c)(1).

16          GOPHER MEDIA LLC v. MELONE

*Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny.

**I**

"The [California] Legislature enacted [the anti-SLAPP statute] to prevent and deter '[SLAPP] lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" *Varian Med. Sys., Inc. v. Delfino*, 106 P.3d 958, 966 (Cal. 2005) (alteration omitted) (quoting Cal. Civ. Proc. Code § 425.16(a)). "The hallmark of a SLAPP suit is that it lacks merit" and is instead brought for the purpose of "obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation." *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970–71 (9th Cir. 1999). The California Legislature determined that a SLAPP suit is an "abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a). But "[b]ecause winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPPs." *Wilcox v. Superior Ct.*, 33 Cal. Rptr. 2d 446, 450 (Ct. App. 1994), *disapproved of on other grounds by Equilon Enters. v. Consumer Cause, Inc.*, 52 P.3d 685 (Cal. 2002). "By the time a SLAPP victim can win a 'SLAPP-back' suit years later the SLAPP plaintiff will probably already have accomplished its underlying objective." *Id.*

To remedy that problem, the California Legislature enacted the anti-SLAPP statute, which includes the special-motion and attorney-fee-shifting provisions. Cal.

Civ. Proc. Code § 425.16(b)(1), (c)(1). The special-motion provision allows a court to strike any cause of action that "aris[es] from any act of [the defendant] in furtherance of the [defendant]'s right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." **[3]** *Id.* § 425.16(b)(1).

If successful, with some exceptions, the "prevailing defendant on a special motion to strike shall be entitled to recover [his or her] attorney's fees." *Id.* § 425.16(c)(1). The fee-shifting provision "discourage[s] [SLAPPs] by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" *Ketchum*, 17 P.3d at 741 (quoting Cal. Civ. Proc. Code § 425.16(a)). "The fee-shifting provision also encourages private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement." *Id.* Together, these anti-SLAPP provisions promote California's goals of deterring SLAPPs, *Varian Med. Sys.*, 106 P.3d at 966, and "compensating the prevailing defendant for the undue burden of defending against

---

[3] As discussed below, in *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, we reconciled the special-motion provision with Federal Rules of Civil Procedure 12 and 56 by holding that the Rule 12(b)(6) standard applies "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim," and the Rule 56 standard applies "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim." 890 F.3d 828, 834 (9th Cir.), *amended by* 897 F.3d 1224 (9th Cir. 2018).

litigation designed to chill the exercise of free speech and petition rights," *Barry v. State Bar of Cal.*, 386 P.3d 788, 794 (Cal. 2017).

## II

### A

To determine whether the anti-SLAPP provisions may be properly applied in federal court, we must first ask whether a federal rule "answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398 (2010). The federal rule must be "'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749, 750 n.9 (1980)). If such a federal rule exists, it "controls 'unless it exceeds statutory authorization or Congress's rulemaking power.'" *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1269 (9th Cir. 2022) (quoting *Shady Grove*, 559 U.S. at 398).

But if no federal rule answers the question in dispute, we "proceed to determine whether the state law applies in federal court under the *Erie* doctrine." *Id.* at 1270. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). "A substantive rule is one that creates rights or obligations . . . ." *In re County of Orange*, 784 F.3d 520, 527 (9th Cir. 2015). "A procedural rule, by contrast, defines 'a form and mode of enforcing' the substantive right or obligation." *Id.* (quoting *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 536 (1958)). Ultimately, though, "the line between

substance and procedure must be drawn so as to ensure that 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" *Ellis*, 24 F.4th at 1270 (quoting *Felder v. Casey*, 487 U.S. 131, 151 (1988)). This "'outcome-determination' test must not be applied mechanically." *Gasperini*, 518 U.S. at 428. "[I]nstead, its application must be guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Id.* (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

**B**

As discussed above, the California Legislature views SLAPP suits as an "abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a). To protect defendants from this improper conduct, the California Legislature created a meaningful remedy: a defendant may file a special motion to strike and, if the defendant prevails, then the court shall strike the claim and award defendant his attorneys' fees. Cal. Civ. Proc. Code § 425.16(b)(1), (c)(1). In substance, these anti-SLAPP provisions provide defendants with a claim for attorneys' fees for the pretrial dismissal of a meritless SLAPP suit.

Thus, the "question in dispute," *Shady Grove*, 559 U.S. at 398, is whether defendants may obtain attorneys' fees for the pretrial dismissal of a meritless suit.[4] No federal rule

---

[4] Because this is the proper question, I find unpersuasive the out-of-circuit cases that Judge Bress's concurrence cites. Bress Concurrence at 36. Those cases framed the question differently in holding that various state anti-SLAPP statutes conflicted with a federal rule. *See La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) (identifying the question as "the circumstances under which a court must dismiss a

answers that question. Judge Bress's concurrence points to
Federal Rules of Civil Procedure 12 and 56. Bress
Concurrence at 33–34. But those rules do not control, as
they establish no entitlement to a claim for attorneys' fees.
*See* Fed. R. Civ. P. 12, 56. For the same reason, Rules 12
and 56 do not conflict with the attorney-fee-shifting
provision.

Nor do Rules 12 and 56 directly collide with the
special-motion provision. In *Planned Parenthood*, we
inspected the standards to be applied under the
special-motion provision and Rules 12 and 56 and confirmed
that they could be reconciled.[5] 890 F.3d at 833–34. There,
we held that "when an anti-SLAPP motion to strike
challenges only the legal sufficiency of a claim, a . . . court
should apply the Federal Rule of Civil Procedure 12(b)(6)
standard and consider whether a claim is properly stated."

---

plaintiff's claim before trial" (quoting *Abbas v. Foreign Pol'y Grp., LLC*,
783 F.3d 1328, 1333 (D.C. Cir. 2015))); *Klocke v. Watson*, 936 F.3d 240,
245 (5th Cir.), *as revised* (Aug. 29, 2019) (same); *Carbone v. Cable
News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018) (identifying
the question as "whether [a] complaint states a claim for relief supported
by sufficient evidence to avoid pretrial dismissal"); *Abbas*, 783 F.3d at
1333–34 (identifying the question as "the circumstances under which a
court must dismiss a case before trial").

[5] The Supreme Court has directed that "if the federal and state rules 'can
be reconciled,' then they do not qualify as in conflict." *Hamilton v.
Wal-Mart Stores, Inc.*, 39 F.4th 575, 585 (9th Cir. 2022) (quoting *Shady
Grove*, 559 U.S. at 410 (plurality opinion)) (first citing *Shady Grove*, 559
U.S. at 421 (Stevens, J., concurring in part and concurring in the
judgment); and then citing *Shady Grove*, 559 U.S. at 437 (Ginsburg, J.,
dissenting)); *see also Gasperini*, 518 U.S. at 437 n.22 ("[The] Court 'has
continued since [*Hanna*] to interpret the federal rules to avoid conflict
with important state regulatory policies' . . . ." (quoting R. Fallon, D.
Meltzer, & D. Shapiro, *Hart and Wechsler's The Federal Courts and the
Federal System* 729–30 (4th ed. 1996))).

*Id.* at 834. But "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Id.* Thus, there is no direct collision between California's anti-SLAPP provisions and Rules 12 and 56. *See CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022) (explaining that, under *Planned Parenthood*, no "conflict exists in this Circuit" between California's anti-SLAPP special-motion provision and the standards under Rules 12 and 56).

**C**

Because no federal rule controls or directly conflicts with the anti-SLAPP provisions, "we must make the 'typical, relatively unguided *Erie* choice.'" *Newsham*, 190 F.3d at 973 (quoting *Hanna*, 380 U.S. at 471). The anti-SLAPP provisions provide defendants with a pretrial claim for attorneys' fees for plaintiffs' abuse of the judicial process. This is a substantive rule. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013) ("The Supreme Court held in *Alyeska Pipeline Service Co. v. Wilderness Society* that for *Erie Railroad Co. v. Tompkins* purposes, state law on attorney's fees is substantive, so state law applies in diversity cases." (footnotes omitted)). The anti-SLAPP provisions "create[] [a] right[] or obligation[]." *County of Orange*, 784 F.3d at 527. They create a defendant's right to attorneys' fees and a plaintiff's obligation to pay such fees. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 555–56 (1949) (holding that a state law that "create[d] a new liability where none existed before" was substantive). The anti-SLAPP provisions also "serve [California's] substantive state polic[y]," *County of Orange*, 784 F.3d at 530 (quoting *Feldman v. Allstate Ins.*, 322 F.3d 660, 667 (9th Cir. 2003)), of protecting "the

valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," Cal. Civ. Proc. Code § 425.16(a), by deterring SLAPPs and compensating prevailing defendants, *see Ketchum*, 17 P.3d at 741.

The Supreme Court has long held that state statutes requiring an award of attorneys' fees to further a substantial policy apply in federal court:

> [I]t is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy effective by making the allowance of the fee mandatory on its courts in those cases. It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts.

*Sioux County v. Nat'l Sur. Co.*, 276 U.S. 238, 243 (1928). This holding survived *Erie*, as confirmed by the Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975), *superseded by statute on other grounds as stated in Lackey v. Stinnie*, 604 U.S. 192, 205 (2025). Indeed, in *Alyeska Pipeline*, the Court reiterated that in "an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law . . . giving a right [to attorneys' fees], which reflects a substantial policy of the state, should be followed." *Id.* (quoting 6 J. Moore, *Federal Practice* § 54.77(2), at 1712–13 (2d ed. 1974)). Because the anti-SLAPP provisions grant defendants a right to attorneys' fees to further an important state policy, Supreme Court

precedent compels us to conclude that the anti-SLAPP provisions are substantive under *Erie*.[6]

*Erie*'s "twin aims"—"discouragement of forum-shopping and avoidance of inequitable administration of the laws"—confirm that the anti-SLAPP provisions are substantive. *Hanna*, 380 U.S. at 468. "Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum." *Newsham*, 190 F.3d at 973. "[W]ere [the anti-SLAPP provisions] not to apply in federal court, the incentives for forum shopping would be strong: electing to bring state-law claims in federal as opposed to state court would allow a plaintiff to . . . circumvent any liability for a defendant's attorney's fees or costs." *Godin v. Schencks*, 629 F.3d 79, 92 (1st Cir. 2010). "Conversely, a litigant otherwise entitled to the protections of the Anti-SLAPP statute would find considerable disadvantage in a federal proceeding." *Newsham*, 190 F.3d at 973. As we correctly noted in

---

[6] For this reason, I respectfully disagree with Judge Bress's suggestion that the anti-SLAPP provisions merely "adopt[] a set of procedures." Bress Concurrence at 45. Judge Bress also argues that, even assuming the fee-shifting provision is substantive, it would be "wholly improper to apply [the] attorneys' fees provision" because "[t]here is, in effect, no underlying statute to which the attorneys' fee provision could even apply." Bress Concurrence at 40. But, as explained above, we have reconciled the special-motion provision with the federal rules, and thus it continues to apply. Further, contrary to Judge Bress's suggestion, the Eleventh Circuit in *Carbone* did not reject the notion that fee-shifting provisions under an anti-SLAPP statute that further an important state policy are substantive. Bress Concurrence at 47. Indeed, in rejecting that the statute there was substantive, the *Carbone* court did not even consider whether the fee-shifting provision could be viewed as substantive. *See Carbone*, 910 F.3d at 1355.

*Newsham*, "[t]his outcome . . . run[s] squarely against the 'twin aims' of the *Erie* doctrine." *Id.*; *see also Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1187 (9th Cir. 2013) (order) (Wardlaw and Callahan, JJ., joined by Fletcher and Gould, JJ., concurring in the denial of rehearing en banc) ("Without anti-SLAPP protections in federal courts, SLAPP plaintiffs would have an incentive to file or remove to federal courts strategic, retaliatory lawsuits that are more likely to have the desired effect of suppressing a SLAPP defendant's speech-related activities.").[7]

### III

California's anti-SLAPP special-motion and attorney-fee-shifting provisions, Cal. Civ. Proc. Code § 425.16(b)(1), (c)(1), provide defendants with a pretrial claim for attorneys' fees for plaintiffs' abuse of the judicial process. That is a substantive right, and no federal rule controls or directly collides with that right. Thus, the anti-SLAPP provisions apply in federal court.

---

[7] I find unpersuasive the Tenth Circuit's decision in *Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659 (10th Cir. 2018), in which it held that New Mexico's anti-SLAPP statute is procedural and not substantive. First, in determining that the fee-shifting provision was procedural, *id.* at 668–73, the court did not consider the Supreme Court's longstanding precedent that state statutes requiring an award of attorneys' fees to further a substantial policy should be applied in federal court, *see Sioux County*, 276 U.S. at 243; *Alyeska Pipeline*, 421 U.S. at 259 n.31. Second, the *Los Lobos* court's cursory discussion of *Erie*'s twin aims fails to acknowledge the strong incentive to forum shop if the fee-shifting provision were not to apply in federal court. *See Los Lobos*, 885 F.3d at 673 n.8.

BRESS, Circuit Judge, with whom COLLINS, LEE, and BUMATAY, Circuit Judges, join, concurring in the judgment:

For over twenty-five years, the Ninth Circuit has struggled with its misguided experiment of allowing California's anti-SLAPP statute to apply in federal court. Almost as soon as we allowed these motions to be filed in federal litigation, we were forced to alter the state's anti-SLAPP procedures in various ways to avoid conflicts with the Federal Rules of Civil Procedure. Over the years, numerous judges of this court have implored us to reevaluate the broader issue, forcefully explaining why California's anti-SLAPP statute should have no place in federal court. Picking up on those criticisms, virtually every other circuit to consider the issue has come out against us.

The time was therefore ripe—beyond ripe—for bringing our circuit in line with the overwhelming majority view and holding that California's anti-SLAPP statute is a state procedural device that does not apply in federal court. Today's decision unfortunately ducks that issue. In concluding that the denial of an anti-SLAPP motion is not immediately appealable under the collateral order doctrine, the majority opinion instead continues our multi-decade project of surgically altering the core components of the anti-SLAPP law to make it compatible with federal procedural law. But in the process, the majority allows to prevail in federal court a version of the anti-SLAPP statute that looks even less like the original than the already contorted version we have spent years jerry-rigging.

The issue of whether the anti-SLAPP statute applies in federal court is not going away. And we have no license for allowing state procedural law to govern in federal court,

much less state procedural law that looks nothing like the law the state enacted. Rather than wait for the next case, it would have been far better, after a quarter-century of confusion, to deal with this issue once and for all. We have no jurisdiction to resolve this appeal of the denial of an anti-SLAPP motion for the more fundamental reason that California's anti-SLAPP statute does not apply in federal court.

I

A

Like many other states, California has an anti-SLAPP statute. *See* Cal. Civ. Proc. Code §§ 425.16–17. SLAPP stands for "strategic lawsuit against public participation." The idea behind anti-SLAPP laws is to "protect against 'lawsuits brought primarily to chill' the exercise of speech and petition rights" and to "'encourage continued participation in matters of public significance.'" *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1160 (Cal. 2019) (quoting Cal. Civ. Proc. Code § 425.16(a)).

To combat such litigation, California allows defendants to file anti-SLAPP motions. *See* Cal. Civ. Proc. Code § 425.16. California's anti-SLAPP motion is "a special motion to strike" a cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." *Id.* § 425.16(b)(1); *see generally Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839–40 (9th Cir. 2001) (outlining the mechanics of an anti-SLAPP motion). There are also exceptions to the anti-SLAPP law. *See, e.g.*, Cal. Civ. Proc. Code § 425.17(b) (anti-SLAPP law generally does not apply

to "any action brought solely in the public interest or on behalf of the general public").

Under the anti-SLAPP statute, if a defendant makes a prima facie showing that the plaintiff's lawsuit arises from the defendant's exercise of his right to free speech, the defendant may bring an anti-SLAPP motion. Cal. Civ. Proc. Code § 425.16(b)(1); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). At that point, the burden shifts to the plaintiff to "establish[ ] that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1); *see also Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188–89 (9th Cir. 2013) (Watford, J., joined by Kozinski, C.J., and Paez and Bea, JJ., dissenting from the denial of rehearing en banc).

In addition to its heightened "probability" standard, California's anti-SLAPP law includes various other procedures "'for weeding out, at an early stage, meritless claims arising from protected activity.'" *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 413 P.3d 650, 653 (Cal. 2018) (quoting *Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016) (emphasis omitted)). For example, "the filing of an anti-SLAPP motion automatically stays all further discovery until the court rules on the motion." *Metabolife*, 264 F.3d at 846 (citing Cal. Civ. Proc. Code § 425.16(g)). In addition, the statute permits immediate appeals of orders granting or denying anti-SLAPP motions. *Newport Harbor*, 413 P.3d at 655 (citing Cal. Civ. Proc. Code § 425.16(i)). The statute also provides that "a defendant that prevails on a special motion to strike is entitled to attorney's fees and costs." *Barry v. State Bar of Cal.*, 386 P.3d 788, 790 (Cal. 2017) (citing Cal. Civ. Proc. Code § 425.16(c)(1)). These and other features of the law "provide a mechanism for the *early* termination of claims

that are improperly aimed at the exercise of free speech or the right of petition." *Newport Harbor*, 413 P.3d at 653 (quoting *Lam v. Ngo*, 111 Cal. Rptr. 2d 582, 589 (Cal. Ct. App. 2001)).

Several years after California enacted its anti-SLAPP statute, we held that the anti-SLAPP law applied in federal court. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970–73 (9th Cir. 1999). We concluded that there was "no 'direct collision'" between Federal Rules of Civil Procedure 12 and 56 and California's anti-SLAPP device, even though the latter "adds an additional, unique weapon to the pretrial arsenal." *Id.* at 972–73. And we reasoned that the purposes of the *Erie* doctrine, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), supported applying the state anti-SLAPP law in federal court. Otherwise, "a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum." *Newsham*, 190 F.3d at 973. We did not grapple with how the anti-SLAPP statute's "probability" standard deviates from the Rule 12(b)(6) and Rule 56 standards.

Several years later, we took the next step and held that the denial of an anti-SLAPP motion is immediately appealable in federal court. *See Batzel v. Smith*, 333 F.3d 1018, 1024–26 (9th Cir. 2003). While the anti-SLAPP statute permits interlocutory appeals, *see* Cal. Civ. Proc. Code § 425.16(i), in federal court, a party is generally "entitled only to a single appeal, to be 'deferred until final judgment has been entered.'" *Batzel*, 333 F.3d at 1024 (quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)). Still, aligning our law with California's procedural law, *Batzel* held that "we have

jurisdiction to review the denial of an anti-SLAPP motion pursuant to the collateral order doctrine." *Id.*

The result of these precedents is the widespread use of the anti-SLAPP mechanism in federal courts in this circuit. *See Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1182–83 (9th Cir. 2016) (Kozinski, J., joined by Gould, J., concurring). Experience shows that it is standard practice for parties litigating in our district courts to include an anti-SLAPP motion as part of the standard suite of dispositive pre-trial motions.

B

But a major problem lurked. Federal courts do not apply state laws or rules if the Federal Rules of Civil Procedure "attempt[ ] to answer the same question" and the relevant Federal Rule does not violate the Rules Enabling Act. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010); *see also Hanna v. Plumer*, 380 U.S. 460, 463–64, 471 (1965). Thus, "[w]hen a situation is covered by one of the Federal Rules," we apply that rule over a corresponding state rule, unless the Federal Rule is invalid. *Hanna*, 380 U.S. at 471. In that situation, "[w]e do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid." *Shady Grove*, 559 U.S. at 398 (citing *Hanna*, 380 U.S. at 469–71).

Almost as soon as we held that California's anti-SLAPP statute could apply in federal court, we were forced to conclude that various aspects of the anti-SLAPP statute could not, in fact, apply in federal court after all. The last twenty-five years of case law in this area from the Ninth Circuit—including today's decision—has therefore revolved around a central project: steadily holding that critical features of California's anti-SLAPP statute do not

govern in federal court. Everything since *Newsham* has amounted to a retreat from that precedent.

Our decision in *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001), was the opening blow. There, we held that the anti-SLAPP statute's automatic stay of discovery, *see* Cal. Civ. Proc. Code § 425.16(g), conflicts with Rule 56 because while the anti-SLAPP statute "limits discovery and makes further discovery an exception," Rule 56 "ensures that adequate discovery will occur before summary judgment is considered." *Metabolife*, 264 F.3d at 846 (quotations omitted). Thus, the "discovery-limiting aspects" of California's anti-SLAPP statute do not apply in federal court. *Id.* (quotations omitted).

As Chief Judge Kozinski explained, *Metabolife*'s holding was "clearly correct," but it "crippled the anti-SLAPP statute" by subjecting defendants to the usual rigors of federal court discovery, contrary to the statute's objective of halting—early on and with minimal expense—those claims that have no "reasonable probability" of success. *Makaeff*, 715 F.3d at 274 (Kozinski, C.J., joined by Paez, J., concurring). From almost the very beginning of our anti-SLAPP case law, we were already constructing a version of the anti-SLAPP motion that was a "far different (and tamer) animal than its state-court cousin." *Id.* at 275. But although "*Metabolife* diminished some of the tension between the state and federal schemes," it did so "at the expense of depriving the state scheme of its key feature: giving defendants a quick and painless exit from the litigation." *Id.*; *see also Makaeff*, 736 F.3d at 1189 (Watford, J., dissenting from the denial of rehearing en banc).

As the years wore on, we discovered more areas of incompatibility between the anti-SLAPP statute and federal

procedure, requiring us to make even more adjustments to the statute. For example, we concluded that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Similarly, the anti-SLAPP statute requires that anti-SLAPP motions generally be filed within 60 days of the service of the complaint or counterclaims. Cal. Civ. Proc. Code § 425.16(f). But we held that this timing rule "directly collide[s] with the more permissive" timing rule under Rule 56. *See Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016). As a result, for anti-SLAPP motions that sound in Rule 56, we allow the filing of the motion "at any time until 30 days after the close of all discovery." *Id.* (quoting Fed. R. Civ. P. 56(b)). Litigants in federal court can thus bring anti-SLAPP motions much later in litigation, following discovery that the anti-SLAPP statute would generally not permit in the first place.

We had to adjust the rules for interlocutory appeals, too. After initially holding that the denial of an anti-SLAPP motion is immediately appealable on a collateral basis, *see Batzel*, 333 F.3d at 1024, we were then required to conclude that, as a result of Federal Rule of Civil Procedure 54(b), a plaintiff cannot appeal the grant of such a motion as to some but not all defendants, even though such an order would be immediately appealable in California state court. *See Hyan v. Hummer*, 825 F.3d 1043, 1047 (9th Cir. 2016) (per curiam) (citing Cal. Civ. Proc. Code § 425.16(i)). Once again, we "pulled another tooth" from the anti-SLAPP statute to harmonize it with federal procedural law.

*Travelers Cas. Ins. Co.*, 831 F.3d at 1186 (Kozinski, J., joined by Gould, J., concurring).

### C

As our hybrid version of California's anti-SLAPP statute became increasingly bespoke, many of our colleagues issued or joined separate writings calling for the reversal of our precedents allowing state-law anti-SLAPP motions in federal court. And numerous other circuits broke with our approach.

Writing in 2013, Chief Judge Kozinski, joined by Judge Paez, described *Newsham* as "a big mistake," explaining that "[f]ederal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof." *Makaeff*, 715 F.3d at 275 (Kozinski, C.J., joined by Paez, J., concurring). California's anti-SLAPP statute "creates no substantive rights" and "merely provides a procedural mechanism for vindicating existing rights." *Id.* at 273. But as Chief Judge Kozinski wrote, the Federal Rules of Civil Procedure already "provide an integrated program of pre-trial, trial and post-trial procedures designed to ensure 'the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.* at 274 (quoting Fed. R. Civ. P. 1). The anti-SLAPP statute "cuts an ugly gash through this orderly process," permitting the premature dismissal of claims without discovery; "chang[ing] the standard for surviving summary judgment by requiring a plaintiff to show a 'reasonable probability' that he will prevail, rather than merely a triable issue of fact"; and allowing otherwise forbidden interlocutory appeals. *Id.*

But our efforts to smooth over the differences created
new problems. Once we concluded in *Metabolife* that the
discovery-limiting features of the anti-SLAPP statute could
not apply in federal court, Chief Judge Kozinski went on to
explain, what remained was "a hybrid procedure where
neither the Federal Rules nor the state anti-SLAPP statute
operate as designed." *Id.* at 275. In a separate concurring
opinion in the same case, Judge Paez made similar points.
*See id.* (Paez, J., joined by Kozinski, C.J., concurring). He
too recognized that "California's anti-SLAPP statute is
'quintessentially procedural,' and its application in federal
court has created a hybrid mess that now resembles neither
the Federal Rules nor the original state statute." *Id.*

Later in 2013, an en banc vote to reassess the issue failed,
but not without attracting a powerful dissent by Judge
Watford who, joined by Chief Judge Kozinski, Judge Paez,
and Judge Bea, added to the growing movement against our
anti-SLAPP precedents. *See Makaeff*, 736 F.3d at 1188
(Watford, J., joined by Kozinski, C.J., and Paez and Bea, JJ.,
dissenting from the denial of rehearing en banc). Focusing
on the legal standards for ending a lawsuit before trial, Judge
Watford explained that California's anti-SLAPP statute
conflicts with Rules 12 and 56, which collectively "establish
the exclusive criteria for testing the legal and factual
sufficiency of a claim in federal court." *Id.* Under *Shady
Grove*, the anti-SLAPP statute therefore "impermissibly
supplements the Federal Rules' criteria for pre-trial
dismissal of an action." *Id.*

For instance, to survive dismissal under Rule 12(b)(6), a
plaintiff need only "allege facts stating a claim that is
'plausible on its face.'" *Id.* at 1188–89 (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But as Judge
Watford observed, California's anti-SLAPP statute

"impose[s] a probability requirement at the pleading stage" that "effectively stiffens the Rule 12 standard for testing the legal sufficiency of a claim." *Id.* at 1189; *see also id.* ("Any attempt to impose a probability requirement at the pleading stage would obviously conflict with Rule 12. Yet that is exactly what California's anti-SLAPP statute does."); *Travelers Cas. Ins. Co.*, 831 F.3d at 1183 (Kozinski, J., joined by Gould, J., concurring) (explaining that "California's anti-SLAPP law directly conflicts with Federal Rule 12, which provides a one-size-fits-all test for evaluating claims at the pleading stage").

Judge Watford further explained how "[s]imilar problems plague the interaction between California's anti-SLAPP statute and Rule 56." *Makaeff*, 736 F.3d at 1189 (Watford, J., dissenting from the denial of rehearing en banc). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But "[t]he anti-SLAPP statute eviscerates Rule 56 by requiring the plaintiff to prove that she will probably prevail if the case proceeds to trial—a showing considerably more stringent than identifying material factual disputes that a jury could reasonably resolve in the plaintiff's favor." *Makaeff*, 736 F.3d at 1189 (Watford, J., dissenting from the denial of rehearing en banc). For these reasons, Judge Watford called on us to "revisit—and reverse—our precedent permitting application of state anti-SLAPP statutes in federal court." *Id.* at 1190.

Although the en banc call in *Makaeff* failed, Judge Watford's views were largely vindicated in *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir. 2018), in a way that only further cemented the strikingly different version of

California's anti-SLAPP statute that we permit in federal court. The anti-SLAPP statute's heightened "probability" requirement was a cornerstone of its protections for anti-SLAPP defendants. But in *Planned Parenthood*, we effectively expunged that "probability" standard "to prevent the collision of California state procedural rules with federal procedural rules." *Id.* at 833. Instead, we held that (1) "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated," and (2) "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply," and, in such a case, "discovery must be allowed." *Id.* at 834. Echoing Chief Judge Kozinski's and Judge Watford's separate writings, *Planned Parenthood* explained that a "contrary reading of these anti-SLAPP provisions would lead to the stark collision of the state rules of procedure with the governing Federal Rules of Civil Procedure while in a federal district court." *Id.*

As we continued to strip away various defining features of the anti-SLAPP law when utilized in federal court, members of this court continued to criticize our entire project of allowing anti-SLAPP motions in federal litigation. Writing in 2016, Judge Gould took "issue with circuit precedent permitting defendants in federal court to take advantage of California's anti-SLAPP law," opining that "an anti-SLAPP motion has no proper place in federal court in light of the Federal Rules of Civil Procedure." *Travelers Cas. Ins. Co.*, 831 F.3d at 1186 (Gould, J.). More recently, Judge McKeown similarly expressed concern with our case law, because an anti-SLAPP motion "is wholly grounded in

th[e] state's procedural law, yet we have infused it with substantive significance." *Martinez v. ZoomInfo Techs., Inc.*, 82 F.4th 785, 794 (9th Cir. 2023) (McKeown, J., concurring), *vacated*, 90 F.4th 1042 (mem.) (9th Cir. 2024).

The other circuits, meanwhile, have by now come out firmly against us. *See id.* at 795 (noting that "[o]ur jurisprudence on anti-SLAPP statutes places us in the minority among our sister circuits" because other circuits "do not recognize the applicability of SLAPP statutes' provisions for motions to strike or dismiss"); *Planned Parenthood*, 890 F.3d at 836 (Gould, J., concurring) (explaining that "the use of anti-SLAPP procedure in federal courts has been squarely rejected" in other circuits). At this time, and after considering similar anti-SLAPP laws in other states, the Second, Fifth, Tenth, Eleventh, and D.C. Circuits have all concluded that state anti-SLAPP statutes do not apply in federal court. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (op. of Kavanaugh, J.); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1347 (11th Cir. 2018); *Klocke v. Watson*, 936 F.3d 240, 242 (5th Cir. 2019); *La Liberte v. Reid*, 966 F.3d 79, 87–88 (2d Cir. 2020).

Representative of these decisions is then-Judge Kavanaugh's opinion for the D.C. Circuit in *Abbas*. Relying on the separate writings from Chief Judge Kozinski and Judge Watford in *Makaeff*, *Abbas* held that the District of Columbia's anti-SLAPP statute did not apply in federal court because under *Shady Grove*, "Federal Rules of Civil Procedure 12 and 56 'answer the same question' about the circumstances under which a court must dismiss a case before trial." *Abbas*, 783 F.3d at 1333–34. The D.C. anti-

SLAPP statute could not apply in federal court because it "conflict[ed] with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial." *Id.* at 1334; *see also id.* (citing the separate writings by Chief Judge Kozinski and Judge Watford in *Makaeff*); *Carbone*, 910 F.3d at 1354 (holding that Georgia's anti-SLAPP statute cannot apply in federal court under *Shady Grove* because "the Federal Rules and the Georgia anti-SLAPP statute address the same question: whether a complaint states a valid claim supported by sufficient evidence to warrant a trial on the merits"); *Klocke*, 936 F.3d at 245 (holding that Texas's anti-SLAPP statute does not apply in federal court and "find[ing] most persuasive the reasoning of the D.C. Circuit" in *Abbas*); *La Liberte*, 966 F.3d at 87 ("Reid urges us to follow the Ninth Circuit, which holds that California's anti-SLAPP statute and the Federal Rules 'can exist side by side . . . without conflict.' We disagree—as do a number of Ninth Circuit judges." (quoting *Newsham*, 190 F.3d at 972)). Although they have yet to carry the day in this court, the separate writings of Chief Judge Kozinski and Judge Watford have proven highly influential nationwide, persuading the other circuits that have considered the issue.

Only the First Circuit agrees with us that a state anti-SLAPP statute can apply in federal court. *See Godin v. Schencks*, 629 F.3d 79, 92 (1st Cir. 2010). But it reached that conclusion in 2010, back when we were the only circuit to have weighed in on the issue and before various judges on our court began to express disagreement with our precedent. Our court, like the First Circuit, is thus an outlier. But given our circuit's vastly greater caseload, allowing anti-SLAPP motions to be filed in our district courts has a profoundly greater effect here.

II

A

This case presented a golden opportunity for the en banc court to fix our mistaken precedent and hold that California's anti-SLAPP statute does not apply in federal court. There is really nothing new to think about here. Chief Judge Kozinski, Judge Watford, our sister circuits, and many others have identified the clear path for holding that under *Shady Grove* and *Hanna v. Plumer*, California's anti-SLAPP statute cannot apply in federal court, where the Federal Rules of Civil Procedure reign. There is little I can do to improve upon the sound reasoning of the many judges from this circuit and elsewhere who have weighed in to explain this point. In my respectful view, we do a disservice to the law by keeping our patently incorrect anti-SLAPP case law on the books, while leaving in place a lopsided circuit split in which we spearhead the minority view.

In taking the minimalist approach of holding that the denial of an anti-SLAPP motion is no longer immediately appealable under the collateral order doctrine, the majority opinion leaves anti-SLAPP practice in this circuit even more incoherent than we found it. The four core pillars supporting the anti-SLAPP statute's overarching objective of "resolv[ing] these lawsuits early," *Newport Harbor*, 413 P.3d at 651, are (1) stays of discovery, (2) heightened "probability" of success requirements for plaintiffs, (3) interlocutory appeals, and (4) attorneys' fees for successful anti-SLAPP motions. Our decision in *Metabolife* nixed the first. *See* 264 F.3d at 846. *Planned Parenthood* eliminated the second. *See* 890 F.3d 833–34. Today's decision cancels the third. So we have now stripped away every major procedural aspect of the statute geared toward

the early termination of claims.  There may be other more minor discrepancies that we have yet to resolve between state anti-SLAPP procedure and the Federal Rules, but one can be assured that if and when those issues arise, the Federal Rules will prevail, just as they have in our past cases.  So all that really remains after today's decision is the attorneys' fees provision.

What the majority has therefore left us with is a fee-shifting statute for anti-SLAPP motions that merit this label in name only.  They are really just motions to dismiss under Rule 12(b)(6) or summary judgment motions under Rule 56. They are subject to the same standards as those two types of motions.  *See Planned Parenthood*, 890 F.3d at 833–34. They follow the same discovery processes as those motions, just as the Federal Rules would normally allow.  *See Metabolife*, 264 F.3d at 846.  These types of motions would not have fee-shifting associated with them, absent an attorneys' fees provision in some other relevant substantive state or federal law.  But even though we have—out of necessity to avoid conflict with federal procedural rules— completely reformed the state anti-SLAPP legal standards, the state anti-SLAPP discovery processes (or lack thereof), and the state anti-SLAPP rules for interlocutory appeals, after today's decision, we will still award attorneys' fees to a successful anti-SLAPP movant.

There is no license for this.  It is true that under the *Erie* doctrine, federal courts sitting in diversity apply attorneys' fees provisions that are part of substantive state law.  *See, e.g.*, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 (1975), *overruled by statute on other grounds, as recognized in Lackey v. Stinnie*, 604 U.S. 192, 205 (2025); *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 973 (9th Cir. 2013); *In re Larry's Apartment, L.L.C.*, 249

F.3d 832, 837–39 (9th Cir. 2001).  But even assuming it
would be proper to regard the anti-SLAPP statute's fee-
shifting provision as part of state substantive law, as opposed
to state procedural law, it is wholly improper to apply a state
attorneys' fees provision to a state law that we have
completely rewritten.  The attorneys' fees provision in the
anti-SLAPP statute is part of an integrated statutory scheme.
There is simply no basis for allowing fee-shifting for a
revamped anti-SLAPP law that bears no resemblance to the
statute as enacted.  There is, in effect, no underlying statute
to which the attorneys' fee provision could even apply.

To this point, every other circuit to consider the issue has
held that when a state anti-SLAPP statute cannot apply in
federal court, its attorneys' fees provision is inoperative.  As
then-Judge Kavanaugh explained, when an anti-SLAPP
statute "does not purport to make attorney's fees available to
parties who obtain dismissal by other means, such as under
Federal Rule 12(b)(6)," "attorney's fees under the Anti-
SLAPP Act are not available."  *Abbas*, 783 F.3d at 1337 n.5.
Or as the Fifth Circuit put it, the fee-shifting provisions in an
anti-SLAPP law "are not applicable apart from the burden-
shifting early dismissal framework."  *Klocke*, 936 F.3d at
247 n.6; *see also La Liberte*, 966 F.3d at 88–89 (explaining
that because the California anti-SLAPP statute "awards
attorneys' fees *only* to 'a prevailing [party] *on a special
motion to strike*,'" a plaintiff may not recover fees "under the
anti-SLAPP statute if she later prevails by other means"
(quoting Cal. Civ. Proc. Code § 425.16(c)(1)).

The logic of these decisions applies as well to the current
state of Ninth Circuit case law, placing us in conflict with
our sister circuits.  Federal defendants who prevail on an
anti-SLAPP motion in the Ninth Circuit are not truly
prevailing on that motion as the California legislature

conceived it. Instead, they are winning on some "hybrid
mess" of a motion, *Makaeff*, 715 F.3d at 275 (Paez, J.,
concurring), that, after today's decision, resembles its state
court counterpart even less. The Supreme Court "since 1796
. . . has maintained that 'the Judiciary itself would not create
a general rule, independent of any statute, allowing awards
of attorneys' fees in federal courts.'" *Lackey*, 604 U.S. at
199 (quoting *Alyeska Pipeline*, 421 U.S. at 249). Today's
decision results in that very form of unauthorized fee-
shifting.

There is also every reason to think that the regime that
remains in place after today's decision will lead to attorneys'
fees questions that would never arise under the statute as
enacted. Again, the core features of California's anti-
SLAPP law were designed to "provide a mechanism for the
*early* termination of claims" that fell within the statute's
ambit. *Newport Harbor*, 413 P.3d at 653 (quoting *Lam*, 111
Cal. Rptr. 2d at 589). But with generally no discovery,
defendant-friendly legal standards, and interlocutory
appeals, California ensured that anti-SLAPP motions would
be resolved expeditiously and, as a result, less expensively.
*See id.* at 655 (explaining that the anti-SLAPP statute
provides "a means for the prompt and relatively inexpensive
resolution of lawsuits that threaten free speech").

But now consider the fees issue in federal court. With
discovery, *see Metabolife*, 264 F.3d at 846, more plaintiff-
friendly legal standards, *see Planned Parenthood*, 890 F.3d
at 833–34, and now no interlocutory appeals, the cost of
litigating an anti-SLAPP motion in federal court will surely
be much greater than it would have been in California state
court. The denial of interlocutory appeals, in particular, is
likely to play a major role in increasing litigation costs,
because the effect of those appeals was not only a quick

answer on appeal, but typically a stay of proceedings in district court. Now imagine that an anti-SLAPP motion is denied, there is no interlocutory appeal, and the parties litigate the case to final judgment, only for the court of appeals to conclude years later that the anti-SLAPP motion should have been granted at the outset. How should fees be assessed in that situation? After today's decision, we can expect a wave of new issues relating to outsized fee awards, made possible by the majority's decision to retain the statute's sole remaining core feature—fee-shifting—but to inter the rest.

It would have been far better to avoid these issues entirely by aligning our law with the dominant and clearly correct position that the anti-SLAPP statute does not apply in federal court. The majority opinion is already dismissing stare decisis concerns and overruling decades of past precedent that permitted interlocutory appeals of the denial of anti-SLAPP motions. The effects of today's decision will already be significant. Why not just finish the job? The issue matters not just to prevent judicially unauthorized fee shifting, but because district courts are constantly confronted with the additional burden of parasitical anti-SLAPP motions, which often raise nettlesome questions about the interaction between state and federal procedure. We could have restored the rule of law and made everyone's lives much easier by returning to the basic proposition that unless Congress specifies otherwise, it is the Federal Rules that "govern the procedure in all civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1.

B

There are a few common objections to the majority position that nearly every circuit but this one has adopted.

These objections do not stand up, as the other circuits have rightly concluded.

*First*, some may argue that federal courts should apply state anti-SLAPP statutes because those laws serve the important and beneficial purpose of protecting defendants from lawsuits that threaten their free speech rights. This argument fails because it is not up to us to devise greater procedural protections than the law confers. As the Second Circuit has explained, "[t]he idea that the more stringent requirement of the anti-SLAPP standard is a beneficial 'supplement' to the Federal Rules is a policy argument—and fatal, because the more permissive standards of the Federal Rules likewise reflect policy judgments as to what is sufficient." *La Liberte*, 966 F.3d at 88.

Congress can adjust the rules governing litigation, including the pleading standards. It has done so, for example, for fraud claims, *see* Fed. R. Civ. P. 9(b), and for violations of the securities laws, *see* Private Securities Litigation Reform Act (PSLRA) of 1995, Pub. L. No. 104–67, 109 Stat. 737 (1995); *Tellabs, Inc v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). As the Supreme Court has explained, Congress "has ultimate authority over the Federal Rules of Civil Procedure; it can create exceptions to an individual rule as it sees fit—either by directly amending the rule or by enacting a separate statute overriding it in certain instances." *Shady Grove*, 559 U.S. at 400. In the case of anti-SLAPP statutes, moreover, it is not necessarily all upside. California courts have themselves expressed concern that anti-SLAPP motions "present[ ] the possibility for abuse." *Newport Harbor*, 413 P.3d at 655 (quoting *Platypus Wear, Inc. v. Goldberg*, 83 Cal. Rptr. 3d 95, 103 (Cal. Ct. App. 2008)). It is up to Congress, not the

courts, to decide whether the perceived benefits of an anti-SLAPP statute outweigh the costs.

*Second*, and related, some argue that if we do not apply the anti-SLAPP statute, plaintiffs who want to silence their critics through lawsuits will engage in forum-shopping in federal court. But when "Federal Rules 12 and 56 answer the same question as the Anti-SLAPP Act's special motion to dismiss provision," *Abbas*, 783 F.3d at 1336, that is the end of the matter. Nor can there be any doubt that Rules 12 and 56 are valid under the Rules Enabling Act. *See, e.g.*, *Klocke*, 936 F.3d at 247–48; *Carbone*, 910 F.3d at 1356–57; *Abbas*, 783 F.3d at 1336–37. If forum-shopping is the result of not applying the anti-SLAPP statute in federal court, that is "the inevitable (indeed, one might say the intended) result of a uniform system of federal procedure." *Shady Grove*, 559 U.S. at 416 (plurality op.).

In any event, the concerns of forum-shopping are surely more imagined than real. The anti-SLAPP statute does not create new substantive rights; it protects existing ones. *See Makaeff*, 715 F.3d at 273 (Kozinski, C.J., joined by Paez, J., concurring). There is no reason to believe that federal courts are incapable of dealing with plaintiffs who seek to use litigation to chill speech. *See Los Lobos Renewable Power*, 885 F.3d at 673 n.8 (holding that New Mexico's anti-SLAPP statute does not apply in federal court but cautioning that "[a]nyone who believes that a federal district court is ill-equipped to deal swiftly and harshly with the sort of lawsuits described in [the anti-SLAPP law] is seriously mistaken" and "in for a rude awakening").

Of course, if the forum-shopping concerns were so overriding as to carry the day, then today's decision—and our multi-decade endeavor of paring back the anti-SLAPP

statute when invoked in federal court—are themselves unjustified. To avoid conflicts with federal procedural rules, our case law already weakens the protections of the anti-SLAPP statute for lawsuits filed in federal court. If forum shopping is the predominant concern, the majority should be overruling *Metabolife* and *Planned Parenthood*, not further weakening the anti-SLAPP statute by removing the protections associated with interlocutory appeals. Although it is questionable whether anyone would choose a federal forum based on the anti-SLAPP decisional law alone, the incentives for forum shopping in federal court on this basis already exist, and they will be even stronger after today's decision. But we have never thought those concerns sufficient. And there is no indication in our multi-decade experiment with the anti-SLAPP laws that plaintiffs have specifically selected the federal courts on the theory that they are less protective of free speech interests.

*Third*, and another variation on the above two points, some will argue that what California has done through its anti-SLAPP statute is effectively create a cause of action, akin to abuse of process, which federal courts are bound to respect under *Erie*. But the difficulty here is that California did not create a cause of action; it instead adopted a set of procedures that answer the same question as the Federal Rules of Civil Procedure. Other circuits have had little difficulty rejecting this same argument. As the Eleventh Circuit has explained, "the problem with the argument" is that "the means by which the [anti-SLAPP statute] pursues its special purpose is by *winnowing claims and defenses in the course of litigation*, just like Rules 12 and 56." *Carbone*, 910 F.3d at 1354. It is "irrelevant" that the anti-SLAPP statute seeks to protect speech interests because it "advances that end by imposing a requirement on a plaintiff's

entitlement to maintain a suit over and above the requirements contemplated by the Federal Rules that control the same question." *Id.*; *see also Abbas*, 783 F.3d at 1335 ("Had the D.C. Council simply wanted to permit courts to award attorney's fees to prevailing defendants in these kinds of defamation cases, it easily could have done so. But the D.C. Council instead enacted a new provision that answers the same question about the circumstances under which a court must grant pre-trial judgment to defendants.").

It thus proves nothing to observe that California's anti-SLAPP statute promotes substantive interests. All procedural rules can be said to do that in some way or another. *See Shady Grove*, 559 U.S. at 404 (explaining that "many state rules ostensibly addressed to procedure" could be recharacterized as "substantive," and that "[p]leading standards, for example, often embody policy preferences about the types of claims that should succeed"). Acknowledging the substantive motivations behind the anti-SLAPP statute does not change the fact that it is, as the California Supreme Court described it, "a procedural device." *Kibler v. N. Inyo Cnty. Local Hosp. Dist.*, 138 P.3d 193, 198 (Cal. 2006). But a state procedural device has no place in federal litigation.

C

Drawing on the same three points above, Judge Bennett's concurring opinion would conclude that, stripped down to its fee-shifting provision, California's anti-SLAPP statute applies in federal court. But Judge Bennett's concurrence is mistaken for the reasons I have just explained. And it would only perpetuate the lopsided circuit split that has emerged after nearly every other circuit to address the issue has disagreed with us. Contrary to Judge

Bennett's belief that the other circuits "framed the question differently" than he does, Bennett Concurrence at 19 n.4, the Second, Fifth, Tenth, Eleventh, and D.C. Circuits simply disagree with his reasoning. And three of these circuits have specifically rejected the notion that an anti-SLAPP attorneys' fee provision could carry forward without the rest of the statute. *See La Liberte*, 966 F.3d at 88–89; *Klocke*, 936 F.3d at 247 n.6; *Abbas*, 783 F.3d at 1337 n.5.

The core premise of Judge Bennett's concurrence is that the anti-SLAPP statute "create[s] a substantive right." Bennett Concurrence at 15. But as the Eleventh Circuit explained, "this argument is a nonstarter" because the anti-SLAPP statute "'creates no substantive rights; it merely provides a procedural mechanism for vindicating existing rights.'" *Carbone*, 910 F.3d at 1355 (quoting *Makaeff*, 715 F.3d at 273 (Kozinski, C.J., concurring)); *see also Klocke*, 936 F.3d at 247. Judge Bennett's position is also at odds with the California Supreme Court's own repeated description of the anti-SLAPP statute as "a procedural device," *Kibler*, 138 P.3d at 198, and "procedural statute," *Soukup v. Law Offices of Herbert Hafif*, 139 P.3d 30, 43 (Cal. 2006).

The only reason that Judge Bennett can even suggest otherwise is because our cases have now rejected various aspects of the anti-SLAPP law as inconsistent with the Federal Rules of Civil Procedure. But contrary to his assertion that we have "reconciled" the anti-SLAPP statute with Rules 12 and 56, Bennett Concurrence at 17 n.3, 20–21, 23 n.6, no reconciliation was accomplished, nor was it even possible: we simply rewrote the anti-SLAPP statute wholesale. The fact that we had to do that should have led us to conclude that the anti-SLAPP statute does not apply in federal court at all. It does not justify Judge Bennett's effort

to re-label as substantive a reconstructed, federal-court-only anti-SLAPP statute that looks nothing like the anti-SLAPP statute that applies in California state court. Judge Bennett's position thus has no foothold in the statute he would purport to apply. And we have no authority to order fee-shifting "independent of any statute." *Lackey*, 604 U.S. at 199 (quoting *Alyeska Pipeline*, 421 U.S. at 249).

\* \* \*

We should have held that California's anti-SLAPP statute does not apply in federal court. When the issue presents itself again, which it surely will, I hope we will end our confusing efforts to meld federal and state procedural law. No authority permits us to blend these two bodies of law as we have, an endeavor that has bedeviled federal practice and left in its wake a version of the anti-SLAPP statute that bears no resemblance to the real thing.